# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS; STATE OF LOUISIANA, <br><br> *Plaintiffs*, <br><br> v. <br><br> The UNITED STATES OF AMERICA; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TRACY RENAUD, Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, in her official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> *Defendants*. | Civ. Action No. _____ |

# EXHIBIT B

Policy Number: 11090.1
FEA Number: 306-112-002b

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536



**U.S. Immigration and Customs Enforcement**

February 18, 2021

MEMORANDUM FOR:   All ICE Employees

FROM:   Tae D. Johnson
Acting Director

SUBJECT:   Interim Guidance: Civil Immigration Enforcement and Removal Priorities

<u>Purpose</u>

This memorandum establishes interim guidance in support of the interim civil immigration enforcement and removal priorities that Acting Secretary Pekoske issued on January 20, 2021. Acting Secretary Pekoske issued the interim priorities in his memorandum titled, *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Interim Memo).

This interim guidance is effective immediately. It applies to all U.S. Immigration and Customs Enforcement (ICE) Directorates and Program Offices, and it covers enforcement actions, custody decisions, the execution of final orders of removal, financial expenditures, and strategic planning.

This interim guidance will remain in effect until Secretary Mayorkas issues new enforcement guidelines. The Secretary has informed me that he will issue new guidelines only after consultation with the leadership and workforce of ICE, U.S. Customs and Border Protection, and other Department of Homeland Security (Department) agencies and offices. He anticipates issuing these guidelines in less than 90 days.

I have requested approval of certain revisions to the Interim Memo until the Secretary issues new enforcement guidelines. My requested revisions have been approved, and they are incorporated into this guidance. To the extent this guidance conflicts with the Interim Memo, this guidance controls. As you will read below, the revisions include, but are not limited to: (1) authorization to apprehend presumed priority noncitizens[1] in at-large enforcement actions without advance approval; (2) the inclusion of current qualifying members of criminal gangs and transnational criminal organizations as presumed enforcement priorities; (3) authorization to apprehend

---

[1] For purposes of this memorandum, "noncitizen" means any person as defined in section 101(a)(3) of the Immigration and Nationality Act (INA).

without prior approval other presumed priority noncitizens who are encountered during enforcement operations; (4) how to evaluate whether a noncitizen who is not a presumed priority nevertheless poses a public safety threat and should be apprehended; (5) the further delegation of approval authority; and (6) the importance of providing advance notice of at-large enforcement actions to state and local law enforcement.

Section C of the Interim Memo has been enjoined. This memorandum does not implement, nor take into account, Section C. This memorandum implements Section B (Interim Civil Enforcement Guidelines).

Background

On January 20, 2021, President Biden issued Executive Order (EO) 13993, Revision of Civil Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 25, 2021), which articulated the Administration's baseline values and priorities for the enforcement of the civil immigration laws.

On the same day, Acting Secretary Pekoske issued the Interim Memo. The Interim Memo did four things. First, it directed a comprehensive Department-wide review of civil immigration enforcement policies. Second, it established interim civil immigration enforcement priorities for the Department. Third, it instituted a 100-day pause on certain removals pending the review. Fourth, it rescinded several existing policy memoranda, including two ICE-related memoranda, as inconsistent with EO 13993.[2] The Interim Memo further directed that ICE issue interim guidance implementing the revised enforcement priorities and the removal pause.

On January 26, 2021, the U.S. District Court for the Southern District of Texas issued a temporary restraining order (TRO) enjoining the Department from enforcing and implementing the 100-day removal pause in Section C.

Like other national security and public safety agencies, ICE operates in an environment of limited resources. Due to these limited resources, ICE has always prioritized, and necessarily must prioritize, certain enforcement and removal actions over others.

In addition to resource constraints, several other factors render ICE's mission particularly complex. These factors include ongoing litigation in various fora; the health and safety of the ICE workforce and those in its custody, particularly during the current COVID-19 pandemic; the responsibility to ensure that eligible noncitizens are able to pursue relief from removal under the immigration laws; and the requirements of, and, relationships with, sovereign nations, whose laws and expectations can place additional constraints on ICE's ability to execute final orders of removal.

---

[2] Memorandum from Matthew T. Albence, Exec. Assoc. Dir., ICE, to All ERO Employees, *Implementing the President's Border Security and Interior Immigration Enforcement Policies* (Feb. 21, 2017); Memorandum from Tracy Short, Principal Legal Advisor, ICE, to All OPLA Attorneys, *Guidance to OPLA Attorneys Regarding Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017).

Accordingly, in executing its critical national security, border security, and public safety mission, the Department must exercise its well-established prosecutorial discretion and prioritize its limited resources to most effectively achieve that mission.

<u>Civil Immigration Enforcement and Removal Priorities</u>

In support of the interim priorities, the guidance established in this memorandum shall be applied to all civil immigration enforcement and removal decisions made after the issuance of this memorandum. The civil immigration enforcement and removal decisions include, but are not limited to, the following:[3]

- Deciding whether to issue a detainer, or whether to assume custody of a noncitizen subject to a previously issued detainer;
- Deciding whether to issue, reissue, serve, file, or cancel a Notice to Appear;
- Deciding whether to focus resources only on administrative violations or conduct;
- Deciding whether to stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;
- Deciding whether to detain or release from custody subject to conditions;
- Deciding whether to grant deferred action or parole; and
- Deciding when and under what circumstances to execute final orders of removal.

For ease of reference, the interim priorities identified in the Interim Memo, and as revised by this guidance, are set forth below along with further explanation.

As a preliminary matter, it is vitally important to note that the interim priorities do not require or prohibit the arrest, detention, or removal of any noncitizen. Rather, officers and agents are expected to exercise their discretion thoughtfully, consistent with ICE's important national security, border security, and public safety mission. Enforcement and removal actions that meet the criteria described below are presumed to be a justified allocation of ICE's limited resources. Actions not reflected in the criteria described below may also be justified, but they are subject to advance review as outlined further below.

In determining whether to pursue an action that falls outside the criteria described below, all relevant facts and circumstances regarding the noncitizen should be considered. For instance, officers and agents should consider: whether there are criminal convictions; the seriousness and recency of such convictions, and the sentences imposed; the law enforcement resources that have been spent; whether a threat can be addressed through other means, such as through recourse to criminal law enforcement authorities at the federal, state, or local level, or to public health and other civil authorities at the state or local level; and, other relevant factors (including, for example, the mitigating factors identified on page 5).

---

[3] As discussed above, the Department is enjoined from enforcing the Immediate 100-Day Pause on Removals in the Interim Memo. This following interim guidance should not be read to permit implementation of Section C of the Interim Memo.

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 4 of 7

*Criteria Defining Cases That Are Presumed to be Priorities*

**Priority Category 1: National Security**. A noncitizen is *presumed* to be a national security enforcement and removal priority if:

1) he or she has engaged in or is suspected of engaging in terrorism or terrorism-related activities;
2) he or she has engaged in or is suspected of engaging in espionage or espionage-related activities;[4] or
3) his or her apprehension, arrest, or custody is otherwise necessary to protect the national security of the United States.

In evaluating whether a noncitizen's "apprehension, arrest, or custody is otherwise necessary to protect" national security, officers and agents should determine whether a noncitizen poses a threat to United States sovereignty, territorial integrity, national interests, or institutions. General criminal activity does not amount to a national security threat (as distinguished from a public safety threat) and is discussed below.

**Priority Category 2: Border Security**. A noncitizen is *presumed* to be a border security enforcement and removal priority if:

1) he or she was apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020[5]; or
2) he or she was not physically present in the United States before November 1, 2020.

To be clear, the border security priority includes any noncitizen who unlawfully entered the United States on or after November 1, 2020.

**Priority Category 3: Public Safety**. A noncitizen is *presumed* to be a public safety enforcement and removal priority if he or she poses a threat to public safety and:

1) he or she has been convicted of an aggravated felony as defined in section 101(a)(43) of the INA[6]; or

---

[4] For purposes of the national security enforcement priority, the terms "terrorism or terrorism-related activities" and "espionage or espionage-related activities" should be applied consistent with (1) the definitions of "terrorist activity" and "engage in terrorist activity" in section 212(a)(3)(B)(iii)-(iv) of the INA, and (2) the manner in which the term "espionage" is generally applied in the immigration laws.
[5] The statutory mandates in Section 235 of the INA (regarding asylum seekers) continue to apply to noncitizens.
[6] This criterion tracks Congress's prioritization of aggravated felonies for immigration enforcement actions. Whether an individual has been convicted of an aggravated felony is a complex question that may involve securing and analyzing a host of conviction documents, many of which may not be immediately available to officers and agents. Even when all conviction documents are available, whether a conviction is for an aggravated felony may be a novel question under applicable law. Accordingly, in deciding whether a noncitizen has been convicted of an

    2)    he or she has been convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is not younger than 16 years of age and intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization.

In evaluating whether a noncitizen currently "pose[s] a threat to public safety," officers and agents are to consider the extensiveness, seriousness, and recency of the criminal activity. Officers and agents are to also consider mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available.

Officers are to base their conclusions about intentional participation in an organized criminal gang or transnational criminal organization on reliable evidence and consult with the Field Office Director (FOD) or Special Agent in Charge (SAC) in reaching this conclusion.

Particular attention is to be exercised in cases involving noncitizens who are elderly or are known to be suffering from serious physical or mental illness. Similarly, particular attention is to be exercised with respect to noncitizens who have pending petitions for review on direct appeal from an order of removal; have filed only one motion to reopen removal proceedings, and such a motion either remains pending or is on direct appeal via a petition for review; or have pending applications for immigration relief and are prima facie eligible for such relief. In such cases, execution of removal orders should have a compelling reason and are to have approval from the FOD.

A civil enforcement or removal action that does not meet the above criteria for presumed priority cases will require preapproval as described below.

<u>Enforcement and Removal Actions: Approval, Coordination, and Data Collection</u>

To ensure compliance with this guidance and consistency across geographic areas of responsibility, and to facilitate a dialogue between headquarters and field leadership about the effectiveness of the interim guidance, ICE will require that field offices collect data on the nature and type of enforcement and removal actions they perform. In addition, ICE will require field offices to coordinate their operations and obtain preapproval for enforcement and removal actions that do not meet the above criteria for presumed priority cases. The data and coordination will inform the development of the Secretary's new enforcement guidance.

*No Preapproval Required for Presumed Priority Cases*

Officers and agents need not obtain preapproval for enforcement or removal actions that meet the above criteria for presumed priority cases, beyond what existing policy requires and what a supervisor instructs.

---

aggravated felony for purposes of this memorandum, officers and agents must have a good-faith belief based on either a final administrative determination, available conviction records, or the advice of agency legal counsel.

*Preapproval for Other Priority Cases*

Any civil immigration enforcement or removal actions that do not meet the above criteria for presumed priority cases will require preapproval from the FOD or SAC. In deciding to undertake an enforcement action or removal, the agent or officer must consider, in consultation with his or her leadership, the nature and recency of the noncitizen's convictions, the type and length of sentences imposed, whether the enforcement action is otherwise an appropriate use of ICE's limited resources, and other relevant factors. In requesting this preapproval, the officer or agent must raise a written justification through the chain of command, explaining why the action otherwise constitutes a justified allocation of limited resources, and identify the date, time, and location the enforcement action or removal is expected to take place.

The approval to carry out an enforcement action against a particular noncitizen will not authorize enforcement actions against other noncitizens encountered during an operation if those noncitizens fall outside the presumption criteria identified above. An approval to take an enforcement action against any other noncitizen encountered who is not a presumed priority must be separately secured as described above.

In some cases, exigent circumstances and the demands of public safety will make it impracticable to obtain preapproval for an at-large enforcement action. While it is impossible to preconceive all such circumstances, they generally will be limited to situations where a noncitizen poses an imminent threat to life or an imminent substantial threat to property. If preapproval is impracticable, an officer or agent should conduct the enforcement action and then request approval as described above within 24 hours following the action.[7]

As always, it is important that ICE endeavor to remove noncitizens with final removal orders who have remained in post-order detention for more than 90 days. ICE will continue to review such noncitizens' cases on a regular basis, consistent with existing law and policy. ICE will endeavor to remove such noncitizens consistent with legal requirements and national, border security, and public safety priorities.

Periodically, ICE receives requests to exercise some form of individualized discretion in the interests of law and justice. ICE will create and maintain a system by which personnel can evaluate these individualized requests.

*Notice of At-Large Enforcement Actions*

The execution of an at-large enforcement action should be preceded by notification to the relevant state and local law enforcement agency or agencies. This notification will advance

---

[7] Where approval is sought following the enforcement action due to exigent circumstances, the request shall explain the exigency, where and when the enforcement activity took place, and whether the noncitizen is currently detained. Additionally, when the location of a proposed or completed enforcement action is a courthouse, as defined in ICE Directive 11072.1: Civil Immigration Enforcement Actions Inside Courthouses (Jan. 10, 2018, or as superseded), or a sensitive location, as defined in ICE Directive No. 10029.2, Enforcement Actions at or Focused on Sensitive Locations (Oct. 24, 2011, or as superseded), that should be explicitly highlighted in the request.

public safety and help ensure that planned immigration enforcement actions do not improperly interfere with state and local law enforcement investigations and actions.

*Weekly Reporting of All Enforcement and Removal Actions*

The Director will review all enforcement actions to ensure compliance with this guidance and consistency across geographic areas of responsibility and to facilitate a dialogue between headquarters and field leadership about the effectiveness of the interim priorities.

Each Friday, the Executive Associate Directors for Enforcement and Removal Operations and Homeland Security Investigations will compile and provide to the Office of the Director, the Office of the Deputy Director, and the Office of Policy and Planning (OPP), a written report: (1) identifying each enforcement action taken in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the action; and (3) identifying the date, time, and location of the action.

In addition, each Friday the Executive Associate Director for Enforcement and Removal Operations will provide to the Office of the Director, the Office of the Deputy Director, and OPP, a written report: (1) identifying each removal in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the removal; and (3) identifying the date, time, and location of the removal.

These reporting requirements will be assessed periodically during this interim period to ensure that they are both productive and manageable.

The weekly reports will be made available to the Office of the Secretary.

Questions

Questions regarding this interim guidance or the Interim Memo should be directed to OPP through the chain of command and Directorate or Program Office leadership. Answers to frequently asked policy questions will be published on OPP's inSight page on an ongoing basis. Please note, however, that case-specific questions should generally be addressed by Directorate or Program Office leadership.

No Private Right Statement

These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.