**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| STATE OF TEXAS; STATE OF LOUISIANA, | Civ. Action No. 6:21-cv-16 |
| *Plaintiffs*, | |
| v. | |
| The UNITED STATES OF AMERICA; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TRACY RENAUD, Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, in her official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR A PRELIMINARY INJUNCTION**

TABLE OF CONTENTS

Table of Contents ............................................................................................................... ii

Table of Authorities ......................................................................................................... iii

Introduction ......................................................................................................................... 1

Summary of the Argument ................................................................................................ 1

Argument ............................................................................................................................. 2

    I.    The Memoranda Violate the Administrative Procedure Act ................................. 2

        A.    Defendants' Failure to Detain Criminal Aliens Violates Section 1226(c) .............................................................................................. 2

        B.    Defendants' Failure to Detain Aliens with Final Orders of Removal Violates Section 1231(a)(2) ....................................................... 7

        C.    The Memoranda Are Arbitrary and Capricious ........................................ 8

        D.    The Memoranda Are Procedurally Invalid ................................................ 10

    II.    Defendants Are Not Taking Care that the Laws Be Faithfully Executed ........... 11

    III.    The Memoranda Violate the Agreements ............................................................ 13

        A.    DHS Legitimately Entered into the Agreements ...................................... 14

        B.    The Agreements Are Valid and Enforceable in This Court ....................... 16

    IV.    No Procedural Issue Prevents This Court's Review ............................................ 17

        A.    Texas and Louisiana Have Standing ....................................................... 18

        B.    The Memoranda Are Final Agency Action .............................................. 20

        C.    The Memoranda Are Reviewable .............................................................. 21

    V.    The Non-Merits Factors Favor a Preliminary Injunction ................................... 24

        A.    Texas and Louisiana Face Irreparable Harm. ........................................... 25

        B.    An Injunction Would Not Harm Defendants or the Public ....................... 25

    VI.    Both Mandatory and Prohibitory Relief Are Appropriate Nationwide ............... 27

        A.    Plaintiffs Are Entitled to Relief under 5 U.S.C. § 706(1) ........................ 27

        B.    Relief Should Be Nationwide ................................................................... 27

Conclusion ......................................................................................................................... 29

Certificate of Word Count ................................................................................................ 31

Certificate of Service ........................................................................................................ 31

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Exceptional Child Center, Inc.,*
  575 U.S. 320 (2015)................................................................................12

*Chamber of Commerce of U.S. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ...............................................................17

*Dalton v. Specter,*
  511 U.S. 462 (1994).................................................................................11

*Demore v. Kim,*
  538 U.S. 510 (2003).................................................................................10

*DHS v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020).....................................................................9, 21, 24

*Doe v. United States,*
  37 Fed. Cl. 74 (1996) ..............................................................................16

*E. Bay Sanctuary Covenant v. Garland,*
  994 F.3d 962 (9th Cir. 2020) ...............................................................27, 28

*East Bay Sanctuary Covenant v. Barr,*
  934 F.3d 1026 (9th Cir. 2019) ................................................................27

*Florida v. United States,*
  No. 8:21-cv-541, 2021 WL 1985058 (M.D. Fla. May 18, 2021) ...........20

*Georgia Railroad & Banking Co. v. Redwine,*
  342 U.S. 299 (1952).................................................................................17

*Hollis v. Lynch,*
  827 F.3d 436 (5th Cir. 2016) ....................................................................3

*INS v. St. Cyr,*
  533 U.S. 289 (2001).................................................................................21

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018).................................................................................3

*Kania v. United States,*
  650 F.2d 264 (Ct. Cl. 1981) ....................................................................16

*Kendall v. United States ex rel. Stokes,*
   37 U.S. (12 Pet.) 524 (1838) ........................................................................... 12, 13

*Larson v. Domestic & Foreign Commerce Corp.,*
   337 U.S. 682 (1949) ................................................................................................ 17

*Make the Rd. N.Y. v. Pompeo,*
   475 F. Supp. 3d 232 (S.D.N.Y. 2020) .................................................................... 11

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ......................................................................................... 19, 20

*Mississippi v. Johnson,*
   71 U.S. (4 Wall.) 475, 499 (1867) .......................................................................... 11

*Morton v. Ruiz,*
   415 U.S. 199 (1974) ................................................................................................ 15

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare,*
   781 F.3d 182 (5th Cir. 2015) .................................................................................. 19

*Nielsen v. Preap,*
   139 S. Ct. 954 (2019) ...................................................................................... 1, 3, 5

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) .................................................................................................. 27

*Oglala Sioux Tribe of Indians v. Andrus,*
   603 F.2d 707 (8th Cir. 1979) .................................................................................. 15

*Singh v. U.S. Dep't of Justice,*
   461 F.3d 290 (2d Cir. 2006) ................................................................................... 15

*Sylvain v. Attorney Gen. of U.S.,*
   714 F.3d 150 (3d Cir. 2013) .................................................................................. 6, 8

*Texas v. EEOC,*
   933 F.3d 433 (5th Cir. 2019) .................................................................................. 19

*Texas v. United States,*
   106 F.3d 661 (5th Cir. 1997) .................................................................................. 12

*Texas v. United States,*
   328 F. Supp. 3d 662 (S.D. Tex. 2018) .............................................................. 10, 11

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015) ..................................................................... *passim*

*Texas v. United States*,
    No. 6:21-cv-3, 2021 WL 723856 (S.D. Tex. Feb. 23, 2021)........................................... *passim*

*Texas v. United States*,
    No. 6-21-cv-3, 2021 WL 247877 (S.D. Tex. Jan. 26, 2021) ...........................................23, 28

*U.S. Telecom Ass'n v. FCC*,
    359 F.3d 554 (D.C. Cir. 2004) ...........................................................................................14

*United States v. Midwest Oil Co.*,
    236 U.S. 459 (1915) ...........................................................................................................13

*United States v. Smith*,
    27 F. Cas. 1192 (C.C.D.N.Y. 1806) (Paterson, J.)..............................................................13

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    139 S. Ct. 361 (2018) .........................................................................................................24

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ....................................................................................................3, 7, 23

**Statutes**

5 U.S.C.
    § 553..................................................................................................................................14
    § 701(a)(2) .........................................................................................................................24
    § 706(1)..............................................................................................................................27
    § 706(2)(A) ...............................................................................................................6, 23, 24

6 U.S.C.
    § 202(5)..............................................................................................................................14
    § 361(b)(4) .........................................................................................................................13

8 U.S.C.
    § 1103(a)(3) .......................................................................................................................14
    § 1226(a)....................................................................................................................3, 4, 5
    § 1226(c).................................................................................................................... *passim*
    § 1226(c)(1) .........................................................................................................................3
    § 1231(a)(2) .............................................................................................................. *passim*
    § 1231(h).....................................................................................................................22, 23
    § 1252(b)(9).......................................................................................................................21

28 U.S.C.
    § 1491................................................................................................................................16
    § 2241................................................................................................................................23

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............................................................................................................4

*Pending*, BLACK'S LAW DICTIONARY (11th ed. 2019)....................................................5

U.S. Const. art. I, § 8.....................................................................................................28

**INTRODUCTION**

Defendants are refusing to take custody of dangerous criminal aliens upon release from state custody. They do not dispute that fact. Instead, they argue that they have no obligation to do so—despite the plain language of the INA—and that, even if they did, there would be nothing this Court could do about it.

Defendants theorize an executive branch unbound by the rule of law. On Defendants' theory, Congress could never write a statute clear enough to constrain executive discretion over immigration enforcement. Nor, according to Defendants, is there any role for the courts. Defendants seem to believe that nothing they do is subject to judicial review, even if it is unlawful.

That is not our system. This Court has already rejected Defendants' efforts to avoid judicial review. *See Texas v. United States*, No. 6:21-cv-3, 2021 WL 723856 (S.D. Tex. Feb. 23, 2021). And their recycled arguments are no more persuasive this time.

When Congress sets policy priorities by statute, the Executive Branch cannot disregard them. Even if the Executive would otherwise have discretion, Congress can constrain or even remove that discretion at its pleasure. "It is undisputed that Congress may mandate that the Executive Branch detain certain noncitizens during removal proceedings or before removal." *Nielsen v. Preap*, 139 S. Ct. 954, 973 (2019) (Kavanaugh, J., concurring).

Congress has mandated detention, but the Executive Branch is disregarding that mandate. And it has done so arbitrarily, without even attempting to justify releasing dangerous criminal aliens into American communities. This Court should issue a preliminary injunction to vindicate important congressional commands and protect public safety.

**SUMMARY OF THE ARGUMENT**

The January 20 Memorandum and the February 18 Memorandum are unlawful for multiple independent reasons. First, they substantively and procedurally violate the APA. Second, they are

1

inconsistent with the President's constitutional obligation to take care that the laws are faithfully executed. Third, they violate the Agreements that DHS signed with both Texas and Louisiana.

No procedural objection should prevent the Court from reaching those merits issues. Texas and Louisiana have standing for the same reasons courts have routinely recognized state standing in recent immigration cases. The challenged memoranda are final agency action reviewable under the APA, but even if they were not, Plaintiffs' non-APA claims would still be properly before the Court.

For these reasons, Plaintiffs are likely to prevail on the merits. In addition, a preliminary injunction would redress irreparable harm to Plaintiffs and promote the public interest without harming any legitimate interests of Defendants. The Court should grant Plaintiffs' Motion for Preliminary Injunction.

ARGUMENT

## I.    The Memoranda Violate the Administrative Procedure Act

The January 20 and February 18 Memoranda violate the APA in four ways. First, they run afoul of the mandatory-detention provision in Section 1226(c). Second, they are inconsistent with the mandatory-detention provision in Section 1231(a)(2). Third, they are arbitrary and capricious. Fourth, they were issued without the necessary notice-and-comment procedures.

### A.    Defendants' Failure to Detain Criminal Aliens Violates Section 1226(c)

#### 1.    Section 1226(c) Imposes a Mandatory Duty

Section 1226(c) provides that "[t]he Attorney General shall take into custody any alien who" meets certain criteria, 8 U.S.C. § 1226(c), but Defendants argue it does not "impose a mandatory duty to detain any noncitizen." ECF 42 at 22. Defendants' position contradicts both binding precedent and their own previous positions. *See* ECF 18 at 13–14.

The Supreme Court has regularly recognized that Section 1226(c) creates a mandatory

2

duty. *See Preap*, 139 S. Ct. at 966 ("The Secretary *must* arrest those aliens guilty of a predicate offense."); *id.* at 969 (describing "the Secretary's obligation to" detain criminal aliens); *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) ("mandates detention"); *id.* at 849 ("obligates the Attorney General to 'take into custody' certain aliens"); *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001) ("mandates detention of certain criminal aliens").

Understating things, Defendants concede that "various courts have described the statutes at issue here as 'mandatory'" but characterize those statements as "pure dicta." As an initial matter, lower federal courts "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (internal quotation marks omitted). That rule applies here.

In any event, the Supreme Court's repeated interpretations of Section 1226(c) are not dicta. In *Preap*, for example, aliens demanded bond hearings. 139 S. Ct. at 958–59. But the Supreme Court held that the aliens were not entitled to bond hearings because they were covered by Section 1226(c)'s mandate that "[t]he Secretary *must* arrest" and "may *not* release" certain aliens. *Id.* at 966. In other words, a bond hearing was not required because the federal government lacked discretion to release the aliens on bond regardless of any hearing. If the federal government were not obligated to detain aliens covered by Section 1226(c), then there would have been no reason the aliens could not have availed themselves of bond hearings under Section 1226(a). Thus, the Supreme Court's description of Section 1226(c) was not dicta.

Even setting that binding precedent to one side, the text, structure, and context of Section 1226 show that Defendants' duty is mandatory. First, Section 1226(c) uses mandatory language. It says, "The Attorney General *shall* take into custody" covered aliens. 8 U.S.C. § 1226(c)(1) (emphasis added). Contrary to Defendants' argument, *see* ECF 42 at 22–24, this is not a bare

3

"shall" bereft of any other "manifestation of legislative intent." *Texas*, 2021 WL 723856, at *34.[1]
The textual contrast between the discretionary "may be arrested and detained" in Section 1226(a)
and the mandatory "shall take into custody" in Section 1226(c) is further evidence. *See* Antonin
Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (explaining
that the "entirety" of a legal instrument "provides the context for each of its parts").

Second, if Section 1226(c) were not mandatory, then there would be no reason for it to
exist. Section 1226(a) independently authorizes discretionary detention. *See* 8 U.S.C. § 1226(a).
There would be no reason for Section 1226(c) to separately authorize discretionary detention for
a specified subset of the aliens already covered by Section 1226(a). Defendants' interpretation
wrongly renders Section 1226(c) superfluous. *See* Scalia & Garner, *Reading Law* at 174
(explaining that no provision "should needlessly be given an interpretation that causes it . . . to
have no consequence").

Third, Defendants' interpretation of Section 1226(c) cannot explain the history and context
of the statute. Congress used Section 1226(c) to confront and remedy the Executive Branch's
failure to detain dangerous criminal aliens. *See* ECF 18 at 2–3. If Section 1226(c) were
discretionary, as Defendants argue, it would not serve those purposes, and there would be no
explanation for why Congress enacted it when it did. Thus, Section 1226(c)'s use of "shall" is
mandatory because "the statute's manifest purpose is to protect the public or private interests of
innocent third parties." *Texas*, 2021 WL 723856, at *35.

---

[1] On the day of filing, counsel discovered that Westlaw had altered the citation for this opinion.
The original citation, 2021 WL 723856, stopped working. Counsel has contacted Westlaw and
hopes the issue will be resolved quickly. A new Westlaw citation, 2021 WL 2096669, now contains
an unpaginated version of the opinion. If the issue with the original Westlaw citation is not resolved
quickly, and the Court would find it helpful, counsel would be happy to file new briefs with a
different form of citation.

Next, Defendants argue that Section 1226(c) cannot mean what it says. Resisting the statute's plan meaning, they contend that Section 1226(c)'s provision calling for detention "when the alien is released" from criminal custody (like Section "1231(a)(2)'s provision stating that DHS 'shall' detain covered aliens as of 'the date the alien is released'") could "not realistically contemplate—and certainly does not command—the *immediate* arrest of all covered noncitizens." ECF 42 at 27; *see also id.* at 23. Defendants rely on *Preap* for this proposition, but it undermines their argument.

*Preap* recognized that Section 1226(c)'s "when . . . released" language means exactly what it says: "it clarifies when the duty to arrest is triggered: upon release from criminal custody." *Preap*, 139 S. Ct. at 969. Of course, *Preap* held that, if the federal government failed to meet its detention obligation immediately, the statute did not prohibit it from doing so later. *See id.* at 965. But that does not mean that the federal government is free to disregard Section 1226(c)'s command to detain covered aliens upon their release from criminal custody. *Preap*'s better-late-than-never approach to detention does not obviate Defendants' obligation to act in a timely fashion. Defendants' argument to the contrary "confuses what the Secretary is obligated to do with the consequences that follow if the Secretary fails (for whatever reason) to fulfill that obligation." *Id.* at 969.

Finally, Defendants appear to argue that Section 1226(c) is *de facto* discretionary because "detention under § 1226(c) is authorized only 'pending a decision' on removal" and "the Secretary undeniably has broad discretion to decide whether it makes sense to pursue removal at all." ECF 42 at 14 (some internal quotation marks omitted). Even if Defendants' premises were right, their conclusion would not follow. Detention "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a), means that the alien would be detained from "when the alien is

released," *id.* § 1226(c), "until" Defendants decided whether to remove him. *Pending*, BLACK'S LAW DICTIONARY (11th ed. 2019). It would not permit Defendants to forgo detention of the alien before making a decision about whether to remove the individual alien in question.

If Defendants could eliminate their duty to detain criminal aliens simply by ignoring those aliens, it "would lead to an outcome contrary to the statute's design." *Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150, 160 (3d Cir. 2013). It would "reintroduce[] discretion into the process and bestow[] a windfall upon dangerous criminals." *Id.* at 161. But "Congress eliminated th[at] discretion," in part because "immigration officers often underestimate th[e] risks" an alien will abscond or pose a "danger to the public." *Id.* at 161 n.11.

### 2.    The Challenged Memoranda Violate Section 1226(c)

Defendants do not deny that they are not "tak[ing] into custody" numerous aliens covered by Section 1226(c). Indeed, they do not even claim that they are trying to do so. Instead, Defendants fall back on the argument that the January 20 and February 18 Memoranda do not prohibit the detention of covered criminal aliens. *See* ECF 42 at 26.

But the words on the face of the challenged memoranda are not controlling. *See Texas v. United States*, 809 F.3d 134, 171–72 (5th Cir. 2015). The January 20 and February 18 Memoranda, as implemented, are in fact causing violations of Section 1226(c). Current ICE officials have "attributed" the "shift regarding detainers" "to the new 'enforcement priorities' established by memoranda during the Biden Administration." ECF 46 ¶ 17. And that is not surprising. As the former Acting Director of ICE explained, by imposing "the requirement that field officers seek pre-approval for" detentions "not included in the enumerated enforcement priorities," "the memoranda effectively instruct ICE enforcement staff to forego undertaking" those detentions. ECF 19-4 ¶ 36. He explained that the reduction in detainer requests for aliens covered by Section 1226(c) was "a direct result of the memoranda." *Id.* ¶ 41.

The process of requiring higher-level executive approval to detain criminal aliens covered by Section 1226(c) is "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Congress has mandated that criminal aliens be detained. *See supra* Part I.A.1. If the executive-branch supervisor approves the detention, then the approval process has not changed anything. If the executive-branch supervisor does not approve the detention, then the approval process has resulted in a violation of Section 1226(c). Thus, the approval process serves no purpose but causing violations of a congressional command.

### B.   Defendants' Failure to Detain Aliens with Final Orders of Removal Violates Section 1231(a)(2)

Section 1231(a)(2) is mandatory for the same reasons that Section 1226(c) is. First, binding precedent says so. "After entry of a final removal order and during the 90-day removal period, . . . aliens *must* be held in custody." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)) (emphasis added). This Court has said so too. *See Texas*, 2021 WL 723856, at *36 (rejecting as "unavailing" federal defendants' argument against "reading 'shall' as mandatory in the first sentence" of Section 1231(a)(2)).

Textually, the statute's use of "shall" is mandatory on its face. 8 U.S.C. § 1231(a)(2). And structurally, the consistent usage of a mandatory "shall" "in other parts of section 1231 are yet further indication that the 'shall' in" in this provision "bears the same meaning, for 'a word or phrase is presumed to bear the same meaning throughout text.'" *Texas*, 2021 WL 723856, at *36 (quoting Scalia & Garner, *Reading Law* at 170). Finally, "the statute's manifest purpose is to protect the public or private interests of innocent third parties." *Id.* at *35.

Defendants' response is to repeat their previous argument that interpreting Section 1231(a)(2)'s first sentence to create a mandatory duty cannot be reconciled with Section 1231(a)(2)'s second sentence. *See* ECF 42 at 28. But this Court has already reconciled the two

sentences by explaining that "[t]he first clause mandates the act of *detaining*" while "[t]he second clause prohibits the *release* of certain individuals." *Texas*, 2021 WL 723856, at *36.

In light of Section 1231(a)(2)'s mandatory nature, there is no doubt that Defendants are violating it. They do not dispute that they are not detaining aliens covered by the provision (*i.e.*, those with final orders of removal during the removal period). And as above with Section 1226(c), unrebutted evidence establishes that Defendants' implementation of the challenged memoranda is causing them to violate Section 1231(a)(2). *See supra* Part I.A.2. The January 20 and February 18 Memoranda erect barriers to compliance with Section 1231(a)(2) that should be set aside under the APA. *See id.*

### C.     The Memoranda Are Arbitrary and Capricious

Plaintiffs' motion argued that the challenged memoranda are arbitrary and capricious because they failed to consider non-detention's effect on recidivism, on removal, and on the States, as well as to consider more limited policies. *See* ECF 18 at 19–22. Defendants' responses cannot justify the January 20 and February 18 Memoranda.

First, Defendants argue that they did "consider the effects of recidivism in issuing the Priority Framework" because the February 18 Memorandum allows federal officers applying its criteria to consider "the extensiveness, seriousness, and recency of the criminal activity." ECF 42 at 30 (quoting ECF 19-2 at 5). That is an irrelevant half-truth. It is only half true because, although federal agents can consider those factors, no "threat to public safety" suffices to satisfy the memorandum's criteria. An alien must *both* "pose[] a threat to public safety" *and* have "been convicted of an aggravated felony as defined in section 10l(a)(43) of the INA" or have certain affiliations with a criminal gang. ECF 19-2 at 4–5. So Defendants' list of "priorities" purposefully omits aliens who, by their own definition, "pose[] a threat to public safety." *Id.*

Defendants' assertion is also irrelevant because it addresses the factors a federal agent can

consider when applying the challenged memoranda, not the factors Defendants considered when issuing the challenged memoranda. Those are very different concepts, as Congress recognized when it "eliminated" Defendants' "discretion" because "immigration officers often underestimate" the "risks" posed by criminal aliens. *Sylvain*, 714 F.3d at 161 n.11. Neither memorandum contains any explanation for why Defendants did not consider the risks of recidivism sufficient to justify including criminal aliens covered by Section 1226(c) or Section 1231(a)(2) in their list of "priorities."

Second, Defendants argue that the effect of non-detention on removals is irrelevant because ICE can still remove any aliens "who, in ICE's view, need to be removed." ECF 42 at 31. But that dodges the key issue. Reducing ICE's ability to remove criminal aliens is a disadvantage of Defendants' policy, and the challenged memoranda give no hint that Defendants were even aware of that disadvantage. Much less do the January 20 and February 18 Memoranda explain why that disadvantage is outweighed by other advantages.

Third, Defendants dispute that they were "required to expressly evaluate the costs to each State in the Priority Framework." ECF 42 at 31. But Defendants not only did not consider "each State" but also did not consider the States collectively, or even note that States might be affected by their decisions. This Court has already rejected Defendants' argument. *See Texas*, 2021 WL 723856, at *42; *see also DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1914 (2020) (describing lost revenue for "States and local governments" as one of several "certainly noteworthy concerns" that DHS failed to consider, rendering the rescission of DACA arbitrary and capricious).

Fourth, Defendants argue that Plaintiffs "fail[ed] to identify" a sufficient alternative policy that Defendants should have considered. ECF 42 at 32. But Plaintiffs specifically suggested that Defendants should have considered including two specific groups: "criminal aliens and aliens with

final orders of removal." ECF 18 at 21. Those are not obscure suggestions. They are "within the ambit of the" challenged memoranda in light of their professed focus on public safety and border security. *Regents of the Univ. of Cal.*, 140 S. Ct. at 1913; *see* ECF 19-1 at 2; ECF 19-2 at 4.

Finally, Defendants argue that they included aliens "convicted of aggravated felonies" but not other criminal aliens because "the former category presumptively presents a more significant threat to public safety." ECF 42 at 29–30. As an initial matter, that cannot explain Defendants' choice because, under the challenged memoranda, whether an alien "poses a threat to public safety" is a separate inquiry from whether he "has been convicted of an aggravated felony as defined in section 10l(a)(43) of the INA." ECF 19-2 at 4. In any event, Defendants' *ipse dixit* does not explain why they disagreed with (or disregarded) Congress's judgment that criminal aliens' "convictions" are "relevant to future dangerousness." *Demore v. Kim*, 538 U.S. 510, 525 n.9 (2003).

### D.     The Memoranda Are Procedurally Invalid

Defendants do not dispute that the January 20 and February 18 Memoranda did not undergo notice-and-comment rulemaking. They argue such procedures were unnecessary, despite the fact that exceptions to the notice-and-comment requirement are "narrowly construed." ECF 18 at 23 (quoting *Texas*, 809 F.3d at 171). This Court's previous analysis controls here as well.

First, the January 20 and February 18 Memoranda are not policy statements. Instead, they are substantive rules because they affect the rights and obligations of not only Defendants but also aliens. *See Texas*, 2021 WL 723856, at *45. The memoranda also affect the rights and obligations of Plaintiffs because they increase Plaintiffs' federally imposed financial obligations. *See, e.g.*, ECF 18 at 9–10; ECF 19-7 ¶ 7. "[P]lac[ing] a cost on the states" is a sign that the challenged memoranda are not policy statements. *Texas*, 809 F.3d at 173 n.137; *see also Texas v. United*

*States*, 328 F. Supp. 3d 662, 731 (S.D. Tex. 2018) (finding DACA was a substantive rule because it "requires states to spend money on various social services").

Moreover, the challenged memoranda cannot be considered mere statements of policy because they have an immediate, binding effect on federal agents. *See* ECF 19-2 at 1 ("effective immediately"); *Texas* 2021 WL 723856, at *45 n.51. They purport to establish DHS's "priorities," and those "priorities shall apply" to a wide variety of enforcement activities. *See* ECF 19-1 at 2. The priorities purport to be sufficiently binding that an official "conduct[s] a periodic review of enforcement actions to ensure consistency with the priorities set forth in" the memoranda, *id.* at 3, and that ICE created a "case review" process that allows aliens to ensure they are not subject to enforcement actions inconsistent with "ICE's priorities." ECF 19-16.

Second, the challenged memoranda are substantive rather than procedural. They satisfy the substantial impact test because they "impact[] DHS's statutory obligation[s]" to detain covered aliens. *Texas*, 2021 WL 723856, at *47. They also "change[] the substantive standards by which DHS determines whether" to detain aliens. *Id.* at *48. And those standards reflect "a substantive value judgment," *Texas*, 809 F.3d at 176–77; *Texas*, 328 F. Supp. 3d at 728–29, as Defendants seem to concede. *See* ECF 42 at 31 (explaining that the memoranda allow Defendants to implement "ICE's view" about which aliens "need to be removed"). The memoranda therefore "cannot be considered procedural." *Texas* 809 F.3d at 177; *see also Texas*, 328 F. Supp. 3d at 729.

## II.   Defendants Are Not Taking Care that the Laws Be Faithfully Executed

Misunderstanding the nature of Plaintiffs' constitutional claim, Defendants argue that it "simply alleg[es] that the President has exceeded his statutory authority" and therefore cannot succeed under the Take Care Clause. *Dalton v. Specter,* 511 U.S. 462, 473 (1994); *see* ECF 42 at 40. But Plaintiffs' claim is not "that the President simply did not fully comply with a congressionally prescribed process" but "that the President's actions affirmatively displaced a

11

congressionally mandate[.]" *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 258 (S.D.N.Y. 2020). It therefore implicates "constitutional separation of powers concerns not present in *Dalton*" and should be "appropriately considered as [a] constitutional claim[] subject to judicial review." *Id.* at 258–59.

Defendants cite *Mississippi v. Johnson*, but that case noted that courts cannot issue orders directing the President's "exercise of judgment." 71 U.S. (4 Wall.) 475, 499 (1867). But Plaintiffs have not sought such an order. They have instead sought an injunction prohibiting implementation of unlawful memoranda and requiring compliance with non-discretionary statutory duties. Because Congress has removed any discretion the Executive Branch might have previously had to decline detention in these circumstances, there is no "exercise of judgment" with which an injunction could interfere.

Defendants cite *Texas v. United States,* 106 F.3d 661, 667 (5th Cir. 1997) for the proposition that "[r]eal or perceived inadequate enforcement of immigration laws does not constitute a reviewable abdication of duty," ECF 42 at 41, but in that case the State did not challenge a specific agency action, but the entire programmatic scheme of enforcement. The court found "no workable standard against which to judge the agency's exercise of discretion." *Id.* at 667. In this case, however, the specific agency actions are the memoranda, and the workable standards are the mandates set by Congress in Sections 1226(c) and 1231(a)(2).

Defendants dismiss *Armstrong v. Exceptional Child Center, Inc*., because it held that "the Supremacy Clause is not the source of federal rights, and certainly does not create a cause of action." ECF 42 at 40 (citing 575 U.S. 320, 324 (2015)). But *Armstrong* also discussed the "long history of judicial review of illegal executive action" that does not rely on the Supremacy Clause.

12

575 U.S. at 327–28. Plaintiffs already explained that their constitutional claim is based on a cause of action at equity. *See* ECF 18 at 26.

Courts can and do enforce the presidential duty to faithfully execute congressional commands through relief granted against his subordinates. In *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838), the Postmaster General refused to pay a bill Congress had specifically appropriated funds to pay. The Court held that the Postmaster General could be compelled by mandamus to "execute" the law. The Court rejected the Postmaster General's claim that only the President could compel him to act:

> This is a doctrine that cannot receive the sanction of this court. It would be vesting in the President a dispensing power, which has no countenance for its support in any part of the constitution; and is asserting a principle, which, if carried out in its results, to all cases falling within it, would be clothing the President with a power entirely to control the legislation of congress, and paralyze the administration of justice.
>
> To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible.

*Id*. at 613; *see also United States v. Smith*, 27 F. Cas. 1192, 1230 (C.C.D.N.Y. 1806) (Paterson, J.) (recognizing that the Take Care Clause entails that "[t]he [P]resident of the United States cannot control [an act of Congress], nor dispense with its execution"); *United States v. Midwest Oil Co*., 236 U.S. 459, 505 (1915) ("The Constitution does not confer upon [the President] any power to enact laws or to suspend or repeal such as the Congress enacts").

## III.   The Memoranda Violate the Agreements

Defendants make no attempt to argue that they have not violated the Agreements they entered into with Texas and Louisiana. Instead, they attack the legitimacy of the Agreements themselves.

## A.    DHS Legitimately Entered into the Agreements

Defendants maintain that DHS lacked statutory authority to enter into the Agreements. ECH 42 at 38. But this is not so: Congress has granted DHS broad authority to implement cooperative policies with the States. Congress specifically authorized DHS to "develop a process for receiving meaningful input from State and local government to assist the development of the national strategy for combating terrorism and other homeland security activities." 6 U.S.C. § 361(b)(4). The notice-and-comment process for receiving input created in the Agreements provides a legitimate mechanism for receiving that meaningful input. It should be no surprise that DHS's chosen process for receiving "meaningful input" mirrors the notice-and-comment process that Congress created for members of the public to provide meaningful input in analogous situations. *See* 5 U.S.C. § 553.

More generally, the Secretary of DHS is empowered to "perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter," 8 U.S.C. § 1103(a)(3), and to "[e]stablis[h] national immigration enforcement policies and priorities," 6 U.S.C. § 202(5). In other contexts, Defendants emphasize the breadth of their powers. But here, they ignore these sources of statutory authority. *See* ECF 42 at 38–39.

Defendants hyperbolically contend that DHS contracted away its sovereign authority to the States, *see* ECF 42 at 38, but the federal government maintains its authority over immigration policy. The Agreements do not grant the States a veto over federal immigration policy or substantively limit Defendants' authority. They are analogous to the APA's notice-and-comment requirements, which no one contends are an abdication of federal sovereignty to States, interest groups, and individuals merely because those procedures delay agency action.

Defendants also cite *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004), as prohibiting agency "subdelegations to outside parties." ECF 42 at 39. But the agreements at issue

14

here are not prohibited subdelegations. Contrasting illicit subdelegations of agency power with permitted cooperative arrangements, the court "recognize[d] three specific types of legitimate outside party input into agency decision-making processes: (1) establishing a reasonable condition for granting federal approval; (2) fact gathering; and (3) advice giving." *U.S. Telecom Ass'n*, 359 F.3d at 566. The court explained that "a federal agency may turn to an outside entity for advice and policy recommendations, provided the agency makes the final decisions itself." *Id.* at 568. Under the Agreements, DHS continues to "make[] the final decisions itself." It simply follows a process for receiving "advice and policy recommendations" from the States.

Agencies frequently adopt procedural rules not required by statute, and these are enforced by the federal judiciary. *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (overturning agency action in part because the agency had failed to comply with an informal rule detailing internal procedures that agency was to follow); *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 295 (2d Cir. 2006) (holding that INS regulations permit consideration of factors relevant to extreme hardship that statute did not make relevant); *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 717 (8th Cir. 1979) (Bureau of Indian Affairs personnel decision reversed when agency failed to consult with tribe before transferring federal agent from one area office to another in violation of agency commitment to engage in such consultation). Agencies can legitimately bind themselves to more rigorous procedures, including by agreeing to consult with relevant stakeholders. And when an agency fails to live up to its commitments, federal courts enforce them.

The manner that DHS entered into the Agreements was also consistent with the APA. Defendants' drive-by, footnoted assertion that the Agreements were subject to notice-and-comment rulemaking is wrong because they do not "constrain[] the agency from making future changes to immigration policy." ECF 42 at 39 n.20. But Defendants' argument highlights the

breadth of the notice-and-comment requirement, which supports Plaintiffs' argument that the January 20 and February 18 Memoranda are procedurally invalid. *See supra* Part I.D.

**B.      The Agreements Are Valid and Enforceable in This Court**

Defendants contradictorily claim both (1) that Plaintiffs have an "adequate remedy" in the Court of Federal Claims—a claim under the Tucker Act's waiver of sovereign immunity—and (2) that the Tucker Act would not allow Plaintiffs to file their claim in the Court of Federal Claims. *See* ECF 42 at 37. Defendants are only partly right: Plaintiffs could not sue in the Court of Federal Claims. As a result, they have no adequate remedy without the APA, and nothing precludes this Court from hearing their claim.

Under the Tucker Act, contract actions against the federal government seeking money damages over $10,000 are within the exclusive jurisdiction of the Court of Federal Claims. 28 U.S.C. § 1491. However, the Court of Federal Claims' "jurisdiction over contract claims turns on whether the Government was acting in its sovereign or proprietary capacity when it entered into the contract or agreement at issue." *Doe v. United States*, 37 Fed. Cl. 74, 77–78 (1996). "The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981). "[T]he principal class of contract case" covered by the Tucker Act is limited to "the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." *Id.* The Agreements at issue here are nothing like an agency's contract with a supplier of office supplies. They involve DHS receiving input on the exercise of the federal government's sovereign authority over immigration. This case is not within the jurisdiction of the Court of Federal Claims.

Sovereign immunity is not a bar here. Plaintiffs are not seeking money damages at all. Nor, contrary to Defendants' assertion, *see* ECF 42 at 36–37, are they seeking specific performance to affirmatively require DHS to provide notice and follow the procedures in the Agreements. Rather, they seek the standard remedies for unlawful agency action, holding unlawful and setting aside the challenged memoranda. *See* ECF 1 at 28.

The distinction between relief "ordering the cessation of the conduct complained of" and relief "requir[ing] affirmative action by the sovereign" is the basis for the long-standing rule that *ultra vires* suits against federal officers (and analogous *Ex parte Young* suits against state officers) do not implicate sovereign immunity. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949). "[I]f the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit. . . . [T]here is no sovereign immunity to waive—it never attached in the first place." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996).

In *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 304 (1952), the Court found that an injunction against the assessment and collection of a tax was consistent with sovereign immunity. This relief disregarded the action as a nullity. An injunction against collection, which was permissible, was contrasted with specific performance, which was not: "Appellant in this case merely seeks the cessation of appellee's allegedly unconstitutional conduct and does not request affirmative action by the State." *Id.* at 304 n.15.

The remedies sought here—setting aside as null the agency actions that failed to comply with the terms of the Agreements—are the standard remedies for unlawful agency action. Defendants present no valid reason this Court cannot consider them.

## IV.    No Procedural Issue Prevents This Court's Review

Nothing precludes judicial review here. Plaintiffs have standing, and the January 20 and

February 18 Memoranda are final agency action reviewable under the APA.

## A.   Texas and Louisiana Have Standing

Texas and Louisiana asserted theories of standing that this Court has previously accepted. *See* ECF 18 at 28–30. Defendants do not dispute that States' financial costs stemming from illegal aliens can qualify as injuries in fact. Instead, they appear to challenge causation and redressability.

First, Defendants argue that the States' financial costs are not attributable to the challenged memoranda because "it is possible that the Priority Framework" will actually be good for Texas and Louisiana. ECF 42 at 9. But no one disputes that Defendants have already imposed costs on the States by refusing to take custody of particular aliens. *See* ECF 19-6 ¶¶ 6–8; ECF 46 ¶ 12. And no one disputes that "ICE officials attributed [those refusals] to the new 'enforcement priorities' established by memoranda during the Biden Administration." ECF 46 ¶ 17. So Defendants do not deny that Plaintiffs face costs traceable to the January 20 and February 18 Memoranda.

Defendants' theory is that those costs are outweighed because "it is possible that" the challenged memoranda will result in "a net reduction in crimes." ECF 42 at 9. As an initial matter, Defendants' speculation about what "is possible" is not evidence sufficient to rebut Plaintiffs' showing of standing. Indeed, the evidence in the record shows that there will not be "a net reduction in crimes" because Defendants are radically decreasing immigration enforcement, not simply shifting ICE resources from one set of aliens to another. That is why the number of "ICE initial book-ins" has decreased so dramatically since the challenged memoranda took effect. ECF 18 at 7–8.

In any event, a potential reduction in other crimes committed by other aliens cannot offset the costs Texas and Louisiana face from continuing to detain and monitor the criminal aliens in their custody. "Weighing those costs and benefits is precisely the type of 'accounting exercise,' in which we cannot engage." *Texas*, 809 F.3d at 156 (citation omitted). Defendants' speculation does

18

not concern benefits "of the same type" or "from the same transaction" as the costs Plaintiffs' incur. *Id.* at 155. In the DAPA case, the Fifth Circuit held that "the increase in vehicle registration and the decrease in uninsured motorists" could not offset Texas's costs in issuing driver's licenses, even though they could involve the same aliens, because they "are based on the independent decisions of DAPA beneficiaries and are not a direct result of the issuance of licenses." *Id.* at 156. The same logic applies here: To the extent one group of aliens commits fewer crimes, that would be based on the independent decisions of third parties and not a direct result of Texas and Louisiana detaining or monitoring a different group of aliens.

Second, Defendants claim that a favorable ruling from this Court might not redress Plaintiffs' injuries. *See* ECF 42 at 11. On the contrary, an injunction prohibiting Defendants from implementing the memoranda would likely redress Plaintiffs' injuries in light of the unrebutted evidence that "ICE officials attributed [ICE's shift regarding detainers] to the new 'enforcement priorities' established by memoranda." ECF 46 ¶ 17. An injunction mandating that Defendants take custody of aliens covered by Section 1226(c) or Section 1231(a) would certainly redress Plaintiffs' injuries. Defendants only counterargument seems to be that such relief is improper on the merits. *See* ECF 42 at 11 (citing ECF 42 "section VI.b"). But whether relief is appropriate on the merits does not affect redressability. The Court should "assume, for purposes of the standing analysis, that Texas is correct on the merits of its claim." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019); *see also N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("[W]hen considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim.").

In any event, Plaintiffs are entitled to "'special solicitude' in satisfying [their] burden to demonstrate . . . traceability and redressability." *Texas*, 2021 WL 723856, at *10. Defendants

respond that special solicitude does not help with showing an injury in fact. *See* ECF 42 at 10–11 n.7. But Plaintiffs have undisputed costs that qualify as injuries in fact. Whether the challenged agency action will increase those costs is a question of traceability, and that is an area in which States are entitled to special solicitude. *See Massachusetts v. EPA*, 549 U.S. 497, 522–25 (2007) (treating the costs of global warming as injuries and addressing whether agency action would increase those costs under traceability).

Finally, Defendants do not appear to dispute that Plaintiffs have standing for their notice-and-comment claim. *See* ECF 42 at 11 n.8. In that claim, Plaintiffs seek to vindicate "a procedural right," so they have "standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts*, 549 U.S. at 518. Here, "[e]njoining [the memoranda] based on the procedural APA claim could prompt DHS to reconsider the [memoranda], which is all a plaintiff must show when asserting a procedural right." *Texas*, 809 F.3d at 161. As Defendants admit, another federal court found that the State of Florida had standing to bring similar claims. *See Florida v. United States*, No. 8:21-cv-541, 2021 WL 1985058, at *8 (M.D. Fla. May 18, 2021) (holding that Florida had standing based on "[t]he probation costs to the State for overseeing these noncitizens on supervised release"); ECF 42-7 at 18.

### B.    The Memoranda Are Final Agency Action

Plaintiffs' motion argued that the challenged memoranda satisfy the first element of final agency action "because they have already gone into effect." ECF 18 at 31. Defendants' response does not challenge that conclusion.

For the second element—whether the January 20 and February 18 Memoranda affect anyone's rights or obligations—Defendants contradict this Court's previous analysis. *See* ECF 42 at 12–14. This Court held that the 100-day pause was final agency action for two reasons. First, it

purported to "alter[] DHS's obligation under" the INA. *Texas*, 2021 WL 723856, at *32. Second, it "affect[ed] the rights of" aliens because it "guaranteed that numerous detained individuals subject to a final order of removal would" be released as a result. *Id.*

The same is true here. As explained above, the challenged memoranda are inconsistent with, and therefore purport to alter, Defendants' statutory obligations. *See* supra Part I.A–B. In addition, the January 20 and February 18 Memoranda guarantee that numerous aliens will not be taken into federal custody. It also has legal consequences for Plaintiffs, who will be legally compelled to spend more money. *See, e.g.*, ECF 18 at 9–10; ECF 19-7 ¶ 7. Defendants characterize the memoranda's consequences as "practical" rather than "legal," ECF 42 at 13, but the effects are legal for immigration officers, whose powers and duties have been altered; for aliens, who will either be taken into custody or not; and for States, who will incur federally imposed financial obligations. The memoranda affect rights and obligations for purposes of finality for the same reasons that they affect rights and obligations for purposes of Plaintiffs' notice-and-comment claim. *See supra* Part I.D.

## C.     The Memoranda Are Reviewable

Defendants argue that the challenged memoranda are unreviewable under the APA. That is wrong for the reasons explained below, but it is also important to note that Defendants do not dispute that reviewability poses no obstacle to Plaintiffs' claims based on the lack of notice-and-comment rulemaking, the Constitution, or the Agreements. *See* ECF 18 at 32–33.

### 1.     No Statute Precludes Review

Defendants invoke three statutes, but none of them precludes review here. First, Defendants invoke 8 U.S.C. § 1252(b)(9). *See* ECF 42 at 16–18. It channels review of issues "arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter." But Section 1252(b)(9) "applies only '[w]ith respect to review of an order of removal

under subsection (a)(1),'" *INS v. St. Cyr*, 533 U.S. 289, 313 (2001) (quoting 8 U.S.C. § 1252(b));
*see also Regents of the Univ. of Cal.*, 140 S. Ct. at 1907. It has no application here. As this Court
has previously explained, Section 1252(b)(9) is "irrelevant" because "Texas is not challenging a
final order of removal, nor is it challenging any aspect of removal proceedings an individual has
undergone." *Texas*, 2021 WL 723856, at *30. Plaintiffs' claims challenge Defendants' failure to
detain aliens subject to mandatory detention, not Defendants' issuance of final orders of removal
to particular aliens.

Defendants contend that congressional authorization for aliens to challenge final orders of
removal against them implicitly forbids States from challenging federal agency action related to
detention of aliens. *See* ECF 42 at 17–18. But the connection between those two types of claims is
too tenuous to support an inference that Congress meant to bar the claims at issue here. That is
especially so in light of Defendants' "heavy burden" to present "clear and convincing evidence"
to overcome "the general presumption favoring judicial review of administrative action." *Texas*,
809 F.3d at 163–64.

Second, Defendants argue that Section 1226(e) bars Plaintiffs' claim that the memoranda
are contrary to Section 1226(c). *See* ECF 42 at 18–19. As Plaintiffs already explained, the Supreme
Court has held that Section 1226(e) "applies only to 'discretionary' decisions," not to "lawsuits
over 'the extent of the Government's detention authority.'" ECF 18 at 32. Defendants do not
dispute that principle. Instead, they argue that whether to detain an alien under Section 1226(c) is
"discretionary." ECF 42 at 18. That is not right for the reasons explained above. *See supra* Part
I.A.

Third, Defendants argue that Section 1231(h) precludes Plaintiffs' claim that the
memoranda are contrary to Section 1231(a)(2). Rejecting Defendants' argument, this Court has

already held that Section 1231(h) applies only to "the alien involved in the immigration removal proceeding detailed in that specific section." *Texas*, 2021 WL 723856, at *27. In the interests of brevity, Plaintiffs will not repeat the Court's detailed analysis, *see id.* at *23–*29, but suffice to say, Plaintiffs agree.

Moreover, even if Section 1231(h) applied to Texas and Louisiana, it would not preclude them from proceeding with a claim under the APA. *See Zadvydas*, 533 U.S. at 687–88 (holding that Section 1231(h) "does not deprive an alien of the right to rely on 28 U.S.C. § 2241 to challenge detention that is without statutory authority"); *Texas v. United States*, No. 6-21-cv-3, 2021 WL 247877, at *4 (S.D. Tex. Jan. 26, 2021) (holding that Section 1231(h) did not prohibit Texas from bringing an APA claim against agency action inconsistent with Section 1231(a)(1)(A)). After all, an APA claim does not require the plaintiff to show that another statute "create[s] any substantive or procedural right or benefit that is legally enforceable." 8 U.S.C. § 1231(h). It is enough to show that "agency action" is "not in accordance with law," regardless of whether that law creates rights. 5 U.S.C. § 706(2)(A).

Finally, Defendants bootstrap their argument about Section 1231(h) into an argument about the zone of interests. *See* ECF 42 at 21–22. Plaintiffs fit within the zone of interests both because Defendants are wrong about Section 1231(h) and for the reasons this Court has already explained. *See Texas*, 2021 WL 723856, at *23–*29. The States' interests in not spending scarce resources on criminal aliens are well "within the zone of interests of the INA." *Texas*, 809 F.3d at 163. The test is, after all, not "especially demanding." *Id.* at 162.

### 2. Defendants Do Not Have Discretion to Disregard Mandatory-Detention Provisions or Act Arbitrarily

As in the previous case, "Defendants lean heavily on a long line of cases espousing the uncontroversial proposition that the Executive wields tremendous discretion in the area of

immigration law." *Texas*, 2021 WL 723856, at *37. But those cases do not change the principle that "the Executive—and thus, the Attorney General or the Secretary of DHS—must exercise any discretion accorded it by statute *in the manner which Congress has prescribed*." *Id.* at *38. Because Sections 1226(c) and 1231 limit Defendants' discretion, they cannot claim that violations of those provisions are "committed to agency discretion." *Id.*

Defendants have two responses. First, they argue that the INA does not limit their discretion. *See* ECF 42 at 14. Second, Defendants contend that the challenged memoranda are not inconsistent with a mandatory duty to detain the aliens covered by those provisions. *See id.* at 15. Defendants are wrong for the reasons explained above on the merits. *See supra* Part I.A–B.

Moreover, even if Plaintiffs were wrong about the meaning of Sections 1226(c) and 1231(a)(2), this still would not be one of "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quotation omitted). That an agency has some discretion is not enough to make its action unreviewable under the APA. If it were, courts would never be able to "hold unlawful and set aside agency action . . . found to be . . . an abuse of discretion," as the APA itself requires. 5 U.S.C. § 706(2)(A). "To give effect to § 706(2)(A) and to honor the presumption of review," the Supreme Court has "read the exception in § 701(a)(2) quite narrowly." *Weyerhaeuser*, 139 S. Ct. at 370. As this Court recently demonstrated, "meaningful standards" exist for determining whether the January 20 and February 18 Memoranda are arbitrary and capricious, for example. *See Texas*, 2021 WL 723856, at *39–*42; *see also Regents of the Univ. of Cal.*, 140 S. Ct. at 1910–15.

## V.    The Non-Merits Factors Favor a Preliminary Injunction

Defendants dismiss Plaintiffs' irreparable injuries as speculative, ECF 42 at 25, arguing there is insufficient traceability from the memoranda to any increased financial burden on

Plaintiffs. Defendants further contend that such injuries cannot outweigh the "severe burden" an injunction would impose on "core Article II authority": prosecutorial discretion. *Id.* at 55. But this Court has already rejected similar arguments. Increased financial costs incurred by Texas's detention and education systems constitute concrete and irreparable harm. *See Texas*, 2021 WL 723856, at *12, *48. Further, this Court found that any restraint on Defendants' unlawful exercise of prosecutorial discretion could not outweigh the harm facing Texas. *Id.* at *50 ("[S]uch concerns are 'outweighed by the major financial losses' Texas will face.") (citing *Texas*, 809 F.3d at 187).

## A.    Texas and Louisiana Face Irreparable Harm

Plaintiffs previously explained why their injuries are irreparable. *See* ECF 18 at 33–34. Defendants do not appear to dispute those arguments. Instead, they combine their discussion of irreparable injury with their arguments about standing in an effort to suggest that Plaintiffs suffer no injuries at all. *See* ECF 42 at 8–11. Because Defendants are wrong about standing, they are wrong about irreparable injury as well. *See supra* Part IV.A. And in light of Defendants' failure to contest Plaintiffs' standing for their notice-and-comment claim, *see* ECF 42 11 n.8, it seems that Defendants also do not contest irreparable injury for that claim.

## B.    An Injunction Would Not Harm Defendants or the Public

Defendants assert that an injunction would be a "severe burden on core Article II authority" because it would restrain their prosecutorial discretion. *See* ECF 42 at 41. This Court has rejected this argument in a previous case, and it fails again here. Defendants do not have "absolute discretion in immigration enforcement." *Texas*, 2021 WL 723856, at *51. What discretion Defendants have is inapplicable here. As explained above, Congress has set its own priorities that the Executive Branch must follow. *See supra* Part I.A–B. Of course, Defendants also lack discretion to act arbitrarily or without following notice-and-comment procedures. *See supra* Part I.C–D.

Because the memoranda are unlawful, Defendants have no legitimate interest in enforcing them. *See* ECF 18 at 34–35. Further, there is no injury to Defendants' Article II authority because here Congress has precluded the exercise of prosecutorial discretion. An injunction would only serve to ensure Defendants make policy priorities within the boundaries of the law as enacted by Congress. Indeed, an injunction also serves the public interest because "'the public is served when the law is followed,' and the public will indeed be served if DHS is enjoined from suspending the law," *Texas*, 2021 WL 723856, at *51 (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)), and "[t]he public interest is 'always' served by the execution of removal orders." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

Defendants plead poverty by suggesting they lack the resources to enforce the law as Congress requires, *see* ECF 42 at 42, but as the former Acting Director of ICE explained, "ICE has sufficient resources to maintain higher levels of enforcement." ECF 19-4 ¶ 39. "'Limited resources' cannot justify or explain the decreased level of enforcement stemming from the January 20 and February 18 memorand[a]." *Id.*

To the extent the Court credits Defendants' concerns, it could certainly tailor an injunction. Any tailoring would of course depend on the Court's merits rulings, but numerous options exist. For example, an injunction prohibiting implementation of the memoranda would not compel Defendants to make a dramatic break with recent practice, as they suggest. It would simply restore the status quo ante the issuance of the unlawful memoranda. Similarly, an injunction prohibiting Defendants from implementing the portions of the memoranda that require higher-level approval for detention of aliens covered by Sections 1226(c) and 1231(a)(2) would both improve (though not guarantee) compliance with federal law and reduce the managerial resources required from Defendants.

## VI.     Both Mandatory and Prohibitory Relief Are Appropriate Nationwide

Defendants attempt to artificially limit the relief available to remedy their unlawful conduct. *See* ECF 42 at 43–47. But this Court has the authority to issue mandatory relief, prohibitory relief, or both. That relief should extend nationwide for the same reasons courts have granted nationwide relief in similar immigration cases. *See* ECF 18 at 35–36.

### A.     Plaintiffs Are Entitled to Relief under 5 U.S.C. § 706(1)

Defendants argue that it would be improper for the Court to mandate that DHS issue detainers because no statute requires DHS to issue detainers at all. *See* ECF 42 at 44–45. Defendants attack a straw man—Plaintiffs seek not an injunction ordering DHS to issue detainers but to "take custody of criminal aliens" in circumstances required by Congress, ECF 18 at 18. That is a "discrete agency action that [they are] required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Of course, issuing detainers to state and local jails and prisons is the typical (and efficient) method of performing this duty. If DHS wants to take criminal aliens into custody by some other method, such as having ICE agents camp outside state detention facilities to arrest criminal aliens upon their release, that would still be a significant improvement over the status quo.

### B.     Relief Should Be Nationwide

Defendants also argue that any injunctive relief should be geographically limited to Texas and Louisiana. *See* ECF 42 at 45–47. Citing the motions panel decision in *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026 (9th Cir. 2019), Defendants argue that multiple lawsuits in different courts challenging the same governmental action, as exists here, counsels against nationwide relief. *See* ECF 42 at 46. But the later Ninth Circuit merits panel *affirmed* the nationwide injunction in that case. It explained that the APA supports nationwide relief. "Section 706(2) does not tell a circuit court to 'set aside' unlawful agency action only within the geographic

boundaries of that circuit. Vacatur of an agency rule prevents its application to all those who would otherwise be subject to its operation." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020). The Court also recognized that "cases implicating immigration policy have a particularly strong claim for uniform, nationwide relief" and that "[t]he Fifth Circuit . . . agrees with the Ninth Circuit that nationwide injunctions are uniquely appropriate in immigration cases." *Id.*

Of course, this Court has previously issued a nationwide injunction against Defendants' immigration policies based on the evidence in the record of the mobility of aliens across different States and because of the controlling precedent of the Fifth Circuit. *Texas*, 2021 WL 723856, at *53; *see also Texas*, 809 F.3d at 188 ("[A] geographically limited injunction would be ineffective because [aliens] would be free to move among states."); *Texas*, 2021 WL 247877, at *6–*8.

Defendants attempt to distinguish this Court's prior injunction on two grounds. First, they argue that "the Priority Framework requires individualized determinations," so "the purported need for uniformity in immigration is inapplicable here." ECF 42 at 46. But that conflates the fact that *outcomes* will never be uniform across aliens (because the facts will differ from case to case) with the need for "a uniform *rule*" to be applied in all cases. U.S. Const. art. I, § 8 (emphasis added).

Second, Defendants argue that, as a matter of "basic logic," aliens held in other States would be unlikely to locate to Texas or Louisiana upon their release if they would be more likely to be subject to federal detention in those two States based on a geographically limited injunction. ECF 42 at 47. But that "basic logic" is inapplicable. Even the mandatory relief Plaintiffs seek would not force Defendants to improve their arrests of aliens at large in the community. It would require Defendants to take custody of aliens being released from criminal custody. Thus, an alien

released from criminal custody in New Mexico, would not fear moving across the border to Texas, as Defendants speculate, unless he anticipated, for example, committing a crime covered by Section 1226(c), being caught, serving time, and being released, all during the pendency of a preliminary injunction, of which he would have to be aware. Even if that were true of some criminal aliens—Defendants submit no evidence that it is—it would not be true of all criminal aliens who move across State lines. Defendants' general skepticism about aliens moving across State lines contradicts the evidence in the record, *see* ECF 19-21–19-23, and the Fifth Circuit's previous reliance on the fact that aliens "would be free to move among states," a point for which it did not require evidence. *See Texas*, 809 F.3d at 188.

## CONCLUSION

The State of Texas and the State of Louisiana respectfully request that the Court grant their Motion for Preliminary Injunction.

Date: May 25, 2021                     Respectfully submitted.

KEN PAXTON                             /s/Patrick K. Sweeten
Attorney General of Texas              PATRICK K. SWEETEN
                                       Deputy Attorney General for Special Litigation
BRENT WEBSTER                          Attorney-in-Charge
First Assistant Attorney General       Texas Bar No. 00798537
                                       Southern District of Texas Bar No. 1829509
JUDD E. STONE II
Solicitor General                      WILLIAM T. THOMPSON
                                       Deputy Chief, Special Litigation Unit
                                       Texas Bar No. 24088531
                                       Southern District of Texas Bar No. 3053077

                                       RYAN D. WALTERS
                                       Special Counsel, Special Litigation Unit
                                       Texas Bar No. 24105085
                                       Southern District of Texas Bar No. 3369185

                                       OFFICE OF THE ATTORNEY GENERAL
                                       SPECIAL LITIGATION UNIT
                                       P.O. Box 12548 (MC-009)
                                       Austin, Texas 78711-2548
                                       Tel.: (512) 463-2100
                                       Fax: (512) 936-0545
                                       patrick.sweeten@oag.texas.gov
                                       will.thompson@oag.texas.gov
                                       ryan.walters@oag.texas.gov

                                       COUNSEL FOR PLAINTIFF STATE OF TEXAS

JEFF LANDRY
LOUISIANA ATTORNEY GENERAL

*/s/Elizabeth B. Murrill*
ELIZABETH B. MURRILL
Solicitor General
JOSEPH S. ST. JOHN
Deputy Solicitor General

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

COUNSEL FOR PLAINTIFF STATE OF LOUISIANA

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in Plaintiff's Motion for Preliminary Injunction, exclusive of those sections designated for omission, is 9,218 as registered by Microsoft Word.

*/s/Patrick K. Sweeten*
PATRICK K. SWEETEN

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 25, 2021, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Patrick K. Sweeten*
PATRICK K. SWEETEN