UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA<br><br>               Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>               Defendants. | No. 6:21-cv-00016 |

**DEFENDANTS' ADVISORY
IN RESPONSE TO THE COURT'S QUESTION CONCERNING THE
APPROPRIATENESS OF AN EVIDENTIARY HEARING**

On July 2, 2021, the Court requested that the parties address "whether an evidentiary hearing is appropriate" in this matter. *See* Minute Order, July 2, 2021. As explained below, an evidentiary hearing in connection with Plaintiffs' motion for a preliminary injunction based on allegations in a separate complaint is inappropriate and unwarranted. Neither party has requested an evidentiary hearing—or any discovery—in connection with the preliminary injunction motion, and the parties have proceeded with a schedule on the basis of the record developed by the parties at bar. The Court should issue a ruling on the preliminary injunction motion based on the record as currently constituted.

Should the Court conclude otherwise, Defendants would request sufficient time to prepare for any such evidentiary hearing. In order to properly frame the issues, Defendants may require and seek discovery (written and oral) in anticipation of any hearing, and may need to identify potential rebuttal witnesses. Moreover, potential scheduling conflicts for both counsel and witnesses warrant consideration before this Court should schedule any such hearing.

**I. An evidentiary hearing would be both legally unjustified and factually irrelevant.**

**a. This Court's consideration of Plaintiffs' Motion for Preliminary Injunction should be limited to the current record.**

At the status conference of July 2, 2021, Texas and Louisiana expressly disavowed seeking production of the administrative record, let alone seeking discovery. *See* Minute Order, July 2, 2021. The record for this Court's consideration of Plaintiffs' motion for preliminary injunction should, therefore, be closed. Defendants should not be subject to an evidentiary hearing based on untested factual allegations brought in a separate lawsuit brought by third parties and filed after the record before this court has been submitted.

Even if Texas and Louisiana were now to seek to rely on the allegations raised in *Coe v. Biden*, Civil Action No. 3:21-cv-00168 (S.D. Tex.), an evidentiary hearing would be inappropriate. First, as to the merits, in challenges to agency actions, such as this one, the evidentiary record is presumptively limited to the administrative record. Putting aside whether any threshold arguments Defendants have raised apply,[1] *see generally* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. (ECF No. 42), this case is a challenge to agency action. Judicial review of agency action is limited to "the whole record or those parts of it cited by the party." 5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorio*, 470 U.S. 729, 743-44 (1985). Plaintiffs have disavowed seeking production of the administrative record—the only evidence they could presumably seek in the case—during these preliminary injunction proceedings. There is no basis in this posture to then consider matters

---

[1] The Supreme Court has cautioned that serious questions going to jurisdiction or other justiciability doctrines, such as those raised in Defendants' opposition to Plaintiffs' motion for preliminary injunction, must be "take[n] into account in assessing the burdens of discovery." *See United States v. U.S. Dist. Court for Dist. of Oregon*, 139 S. Ct. 1 (2018); *see also In re United States*, 138 S. Ct. 443, 445 (2017). That same should apply in considering the burdens of an evidentiary hearing.

*beyond* the administrative record. Rather, to the extent Plaintiffs can overcome Defendants' threshold arguments, this Court may only consider this matter as presented by the memoranda challenged by Plaintiffs in this case. *See Camp v. Pitts*, 411 U.S. 138, 143 (1972) (holding that when there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding").

A court reviewing agency action under the APA is thus not typically "permitted to consider evidence outside the administrative record." *State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988); *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (Higginbotham, J.) (finding that information and documents that Plaintiff seeks *beyond* the administrative record "are legally irrelevant, and therefore are not discoverable under Fed. R. Civ. P. 26"). To the extent Texas and Louisiana were to argue that they meet the high burden required for this Court to consider extra-record evidence, they would first have to make that argument in the context of the administrative record and whether the administrative record is complete. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) (noting that the order permitting discovery was "premature" before the administrative record had been completed); *id.* at 2580 (Thomas, J., concurring in part and dissenting in part) (noting that 8 justices agreed on this point).

The impropriety of considering extra-record evidence without consideration of the administrative record extends to when a plaintiffs wishes to submit extra-record evidence on its own and not obtained through discovery. *See Ramos v. Wolf*, 975 F.3d 872, 901 (9th Cir. 2020) (R. Nelson, J., concurring) (stating that the district court committed "error by relying on what both parties recognize as significant extra-record evidence in assessing Plaintiffs' APA procedural claim, including internal emails, a declaration from a former USCIS official, congressional testimony, and press call minutes, among other things"). Thus, the consideration of extra-record

evidence on the merits in this context, whether through discovery or an evidentiary hearing, is inappropriate. Given that Plaintiffs have not even sought the production of the administrative record in these proceedings, and certainly have not established why that record might be insufficient, it would be legally improper for this Court to conduct an evidentiary hearing to resolve the merits of Plaintiffs' motion, much less a hearing on factual allegations presented in another civil action currently pending before a different judicial officer. To the extent this Court seeks a fuller record to resolve Plaintiffs' motion for a preliminary injunction, it should instead order production of the administrative record.

It would also be improper for this Court to conduct an evidentiary hearing to resolve whether Plaintiffs have demonstrated irreparable harm, or even standing, necessary for a preliminary injunction. Texas and Louisiana have not relied on any of the allegations in *Coe* for their standing or irreparable harm. Rather, they have relied on their own declarants and evidence in support of their motion for preliminary injunction. It is *Plaintiffs'* burden to establish standing and irreparable harm. The mere filing of another action, by other parties, does not provide grounds to re-open the record in this action, thereby granting Plaintiffs a second bite at the proverbial apple. And even if Plaintiffs were given such an opportunity to re-open the record to amend their complaint and motion for preliminary injunction, Defendants should have an opportunity to brief those allegations, including their relevance, before this Court decides whether to proceed with any evidentiary hearing.

Accordingly, this Court should decline to conduct an evidentiary hearing.

### b. An evidentiary hearing would unnecessarily complicate separate litigation and would not provide probative value.

For separate reasons sounding in comity, the Court should not conduct discovery concerning allegations in a separate lawsuit that is now the subject of a preliminary injunction

motion currently being overseen by another federal judge. *See Coe v. Biden*, Pls.' Mot. for Prelim Inj. Relief (ECF No. 7). To the extent those allegations are subject to scrutiny, through discovery or otherwise, such matters should arise in that action. Defendants do not take a position at this time whether *Coe* should be consolidated with the present matter, but the presiding judge in *Coe* should be the one to decide whether there needs to be factual development in that case. Even if *Coe* is eventually transferred to this Court, the question of whether factual development is proper should be decided in the context of that case. Before addressing that question, there would need to be several threshold matters resolved—including the brazen request by plaintiffs in that case for Defendants' counsel to not share an anticipated declaration *with* DHS even though the declaration purportedly makes allegations *against* DHS. *See Coe v. Biden*, Pls.' Mot. for Leave to File Affidavit Under Seal (ECF No. 8) at 2 ("Plaintiffs respectfully request that the Court grant Plaintiffs leave to file the Affidavit of the Federal Police Foundation under seal, and that the Court thereby prohibit counsel for Defendants from providing that Affidavit to anyone in the Department of Homeland Security"). Thus, the presiding judge in *Coe* should first hear from the parties about how that case should proceed, including whether any factual development is warranted and how it should proceed.

Regardless, an evidentiary hearing focused on the *Coe* allegations would not prove useful in deciding the motion for preliminary injunction in the present matter. At best, the testimony of a few sheriffs and ICE line officers would provide post-issuance anecdotes based on their personal experiences with the challenged enforcement guidance. But there is no indication that such testimony would be representative of how ICE is in fact applying the interim guidance at large, much less whether the decision to issue the guidance was lawful on the whole. *See generally* Pls.' Prelim. Inj. Mot. (ECF No. 18). By the terms of the memoranda, specific experiences are likely to

vary between field offices. *See* "Interim Guidance: Civil Enforcement and Removal Priorities" ("ICE Interim Guidance"), ECF 42-2, at 6 (providing that Field Office Directors and Special Agents-in-Charge are given authority for supervisory approval for enforcement actions that do not meet the criteria for presumed priorities). Even within a field office, different agents or different sheriffs interacting with ICE could have varied experiences.

The imprudence of a narrow inquiry into the anecdotal allegations raised in *Coe* is easily demonstrated by even a cursory glance at DHS's national outreach since the interim guidance issued.[2] In considering the civil immigration enforcement priorities that will supersede the interim guidance, *see* Defendants' Advisory (ECF No. 63) (noting "Defendants' current expectation is that the Secretary will issue new immigration enforcement priorities by the end of August or the beginning of September"), the Secretary of Homeland Security has sought a wide range of feedback about the priorities, including the implementation of the interim priorities. Specifically, DHS and ICE officials have engaged in listening sessions with approximately 30 groups, including nonprofit organizations, academics, law enforcement agencies (e.g., the National Sheriffs' Association and the Southwest Border Sheriffs' Coalition), and state and local governments. Further, the Secretary so far has held a listening session with ICE field office directors and special agents-in-charge from across the country, and has traveled to several ICE field offices to engage

---

[2] The recitations in this paragraph of what DHS has undertaken in consideration of the revised priorities has been conveyed by DHS to undersigned counsel. Eventually, the outreach DHS has undertaken in issuing its revised priorities will be included in the administrative record for those revised priorities, subject to any applicable privilege, should they ever be subject to litigation. Given the breadth of that outreach, Defendants are not in a position to produce any such administrative record—which would be a substantial undertaking—nor have they completed the necessary deliberative process that will precede the issuance of the revised priorities. Nevertheless, Defendants considered that this type of information would be of assistance to the Court in assessing the propriety of conducting an evidentiary hearing, and convey it in that context.

in-person with rank-and-file employees and other field personnel to learn of their experiences. In contrast to this holistic policy assessment, a sample of anecdotes by a few sheriffs and line ICE officers —as presented as allegations in just-filed pleadings in another action — would not be representative either of the guidance on the whole, or of the ongoing process DHS is itself undertaking to assess the programmatic, policy, and operational, successes and failures of the current interim guidance. *See* Declaration of Thomas Decker, Acting Assistant Director for Field Operations for Enforcement and Removal Operations (ERO) component of ICE (May 18, 2021), ECF No. 42-6, ¶ 15 ("The interim guidance issued by Acting Director Johnson seeks to facilitate a dialogue between ICE's field offices, senior leadership, and DHS HQ, about what DHS's immigration enforcement priorities should be, and how they should be implemented.").

In sum, an evidentiary hearing would be legally improper, could unnecessarily complicate proceedings in different litigation, and would not have probative value.

## II. Defendants would need sufficient time to prepare for any evidentiary hearing.

To the extent this Court determines that an evidentiary hearing is warranted, notwithstanding the arguments to the contrary, Defendants would need enough time to prepare. Before conducting an evidentiary hearing, and after having an understanding of who would testify, Defendants would likely want to obtain written discovery on the allegations that the witnesses would present at an evidentiary hearing, including the scope of that testimony and its relation to the preliminary injunction motion. Defendants would likely also want to depose the witnesses who intend to testify and consider whether they would want to call any rebuttal witnesses.

Defendants should not be prejudiced by the lack of any opportunity to test the *Coe* allegations through discovery, especially when Plaintiffs did not make or rely upon these allegations in the first place. Any scheduling of any hearing should await the development and

testing of these facts, whether through discovery or other means. That is particularly true here given that any such discovery of non-parties could be complicated by the necessity of issuing subpoenas and that some of these individuals, if not all of them, may not even be within the subpoena power of this Court; three of the four plaintiff sheriffs in *Coe* appear to reside in the Western District of Texas and the fourth in the Laredo Division of the Southern District of Texas. *See* Fed. R. Civ. Pr. 45(c).

Finally, the scheduling of any evidentiary hearing should account for the schedule of counsel and witnesses. For example, undersigned counsel, the attorney-in-charge in this matter, has a longstanding family vacation planned for the final week of July and is unable to travel during the first week of August because he needs to stay with his children while his wife will be out-of-town caring for a family member undergoing a medical procedure. Defendants, however, note that a hearing even in mid-August would be insufficient time for Defendants to properly prepare, and instead aver again that the scheduling of any hearing should be deferred until the pre-hearing discovery is completed.

Accordingly, should this Court proceed with an evidentiary hearing, Defendants should be given a sufficient time to prepare and address the allegations, while accounting for scheduling conflicts for both counsel and witnesses.

Dated: July 9, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

 */s/ Adam Kirschner*
ADAM D. KIRSCHNER

-8-

Attorney-in-charge
IL Bar. No. 6286601
Senior Trial Counsel
BRIAN C. ROSEN-SHAUD
ME Bar No. 006018
MICHAEL F. KNAPP
CA Bar No. 314104
KUNTAL CHOLERA
DC Bar No. 1031523
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 353-9265
Fax: (202) 616-8460
Email:  Adam.Kirschner@usdoj.gov
           Brian.C.Rosen-Shaud@usdoj.gov
           Michael.F.Knapp@usdoj.gov
           Kuntal.Cholera@usdoj.gov

<u>Mailing Address</u>:
Post Office Box 883
Washington, D.C. 20044

<u>Courier Address</u>
1100 L Street NW, Room 11020
Washington, D.C. 20005

EREZ REUVENI
CA Bar No. 264124
Assistant Director
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
202-307-4293 (telephone)
Email:  Erez.R.Reuveni@usdoj.gov

*Counsel for Defendants*


DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
State Bar No. 10131415
S.D. I.D. 7959
Southern District of Texas

>1000 Louisiana, Suite 2300 Houston, TX 77002
>Tel: (713) 567-9000
>Fax: (713) 718-3300
>Daniel.Hu@usdoj.gov
>
>*Local Counsel*

## CERTIFICATE OF COMPLIANCE

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 2417, as counted by Microsoft Word.

>*/s/ Adam D. Kirschner*
>ADAM D. KIRSCHNER

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 9, 2021.

>*/s/ Adam D. Kirschner*
>ADAM D. KIRSCHNER