# Exhibit J

FOR OFFICIAL USE ONLY // DELIBERATIVE // DRAFT

Office of the Director

U.S. Department of Homeland Security
500 12th Street, SW
Washington, DC 20536



| | |
|---|---|
| MEMORANDUM FOR: | Tae D. Johnson<br>Acting Director |
| THROUGH: | Matthew C. Allen<br>Senior Official Performing the Duties of the Deputy Director |
| FROM: | Cammilla Wamsley<br>Principal Policy Advisor |
| SUBJECT: | Listening Sessions for Final Priorities |

Background

ICE held a series of listening sessions with the Field Office Directors (FODs) and Special Agents in Charge (SACs) to obtain feedback on the interim enforcement and removal guidance. The Acting Director requested the attendees provide candid feedback to improve upon the interim guidance. During the sessions, the participants identified areas of concern and methods to address those concerns.

Concern One:

Participants reported a general level of confusion with the aggravated felony priority due to the different interpretations from Circuit Court rulings of what constitutes an aggravated felony. The participants recommended the final guidance provide lists of appropriate crimes applicable nationwide. These lists should include the types of qualifying crimes involving force or violence, such as murder, armed burglary, rape, and sex offences. Participants opined that such lists provide a better structure and is better understood by employees who can apply lists more consistently in multiple locations.

Concern Two:

The interim guidance is silent regarding prosecutions. While ICE generally applies the interim guidance to cases presented for prosecutions to the U.S. Attorney's Office, there are many cases presented by Customs and Border Protection (CBP) wherein noncitizens are convicted of crimes involving illegal reentry who complete their sentence and are released from criminal custody. A significant portion of these individuals are outside of the priorities, which has caused some confusions with our federal partners. There was no consensus on the way forward, but two

FOR OFFICIAL USE ONLY // DELIBERATIVE // DRAFT

themes emerged. The first is that ICE accepts and processes these individuals appropriately. The second is that the final guidance should apply equally to CBP and ICE and include prosecutions.

Concern Three:

Participants identified ongoing concerns with the conviction requirement in the interim guidance and pointed to charge bargains applied by state and local partners. Participants reported that obtaining the police reports related to the convictions often indicates a more serious set of circumstances occurred. Additionally, participants reported that ICE's past practice is to work with state and local partners to reduce the burden of criminal court using immigration removal processes. In essence, ICE uses Title 8 as a mechanism to address criminal conduct in the administrative realm.

This paradigm led to more cooperation in some locations, especially in towns and municipalities with smaller budgets. These locations work with ICE to address crimes that many state and local partners deem public safety risks, such as driving under the influence, domestic violence, and gang affiliation. Participants reported these locations are concerned about the fiscal impact. Further, locations on the Southwest Border typically return individuals on the same day ICE accepts custody.

Other locations in larger cities and municipalities reported the exact opposite result. These locations reported a general decline in local cooperation with ICE over the course of time. In many locations, state and local law enforcement agencies already do not provide ICE with information on arrests. The participants reported the focus on convictions may improve local relationships leading to robust partnerships with ICE. The focus on criminal convictions will likely combat the idea of ICE as a rogue agency and revamp ICE's public image.

Concern Four:

Participants raised concerns with cases that fall in the other priority for which the government has a vested interest in immigration proceedings. Participants identified cases with a national security nexus for which information cannot be introduced in the immigration realm, but other evidence exists and is used for removal. Other concerns related to noncitizens with multiple removals, passport or visa fraud, or long-term cases ordered removed. Finally, participants identified concerns with cooperating with foreign governments arrest warrants issued via an INTERPOL red notice. Participants wanted to highlight the continued cooperation with foreign governments could be negatively impacted if ICE ceases this practice. Participants opined that the final guidance should provide examples to assist in the identification of cases falling under other priority cases.