# Exhibit K



For Official Use Only—Deliberative

# DHS Enforcement Priorities
## Stakeholder Outreach April 6-9, 2021

On April 6-9, ICE Acting Director Tae Johnson, CBP Acting Commissioner Troy Miller, and USCIS Acting Director Tracy Renaud held four stakeholder outreach "listening sessions," each with a combination of local government or law enforcement groups.

These listening sessions involved: on April 5, the National Sheriffs' Association and Southwest Border Sheriffs' Coalition; on April 6, the National Association of Police Organizations, the Major City Chiefs Association, and the International Association of Chiefs of Police; on April 7, the U.S. Conference of Mayors and the National Association of Counties; on April 8, the Law Enforcement Immigration Task Force.

At the beginning of these listening sessions, ICE Chief of Staff Timothy Perry proffered five open-ended prompts to spur discussion:

- In your communities, what is the most important public safety issue?

- How does civil immigration enforcement support the public safety mission of your constituents? What would you like ICE, CBP, and USCIS to do to better support that mission?

- Have you noticed anything about our current enforcement practices that you would want to see changed?

- How is the relationship between your constituents and DHS components, and how can that relationship be improved?

- If you were drafting the final guidelines, what would you include and what would you take out?

While offering these prompts, Mr. Perry emphasized that all comments or reactions were welcome, whether encompassed by the prompts or not. This memorandum consolidates the most salient points raised in all the discussions.

### Public safety needs and priorities

Much of the discussion focused on what criminal history or other derogatory information should drive civil immigration enforcement actions. In addition to felony crimes of violence, the participating members identified domestic violence (DV), sex offenses, and child abuse cases as crimes that DHS should also prioritize. Many participating law enforcement officers requested that ICE prioritize the removal of those convicted of DV since the removal would better address

For Official Use Only—Deliberative

the risks to the victim. These participants agreed that DV is a difficult area to police and that it is likely there will be concerns from the social services side of the house, but that the locals will work with these social service industry members to provide services for the victim. The participants requested DHS help state and local law enforcement to get the victims out of the situation by removing perpetrators who are convicted (and for some locations, simply charged) with DV. While participants did acknowledge there could be a chilling effect, some believed the benefits outweighed the concerns.

Another crime with cross-cutting interest involved gang participation. Some participants pointed out that gangs are heavily involved in local crime and the crimes committed involve very violent circumstances. Those participants requested the DHS guidance focus on proper vetting of individuals to better identify gang ties. Conversely, other participants did not identify gang membership as a particular concern.

Crimes involving illicit substances and driving under the influence had less emphasis than crimes of violence but were a common theme. The participants identified concerns with the aggravated felony language in the current policy and the difficulty for state and local partners to understand those factors as well as explain it to local groups. The participants pointed out that in different locations, there is likely to be varying levels of interest in immigration related activities and that this does not readily lend to a one-size-fits-all viewpoint and that there should be some flexibility built out in order to address cases through the lens of totality of the circumstances.

**Future Enforcement Priorities**

The participants agreed that future enforcement priorities should identify the crimes considered a priority for immigration enforcement in a clear manner. Most preferred the development of a list of crimes, as opposed to the "aggravated felony" language, so that law enforcement and the public can better understand what crimes the focus of immigration enforcement are. This clarity would also contribute to the overall ICE mission since federal, state, and local partners would better be able to assist in messaging in simpler terms with their respective communities. In turn, many participants pointed out that this method should help people in the communities who either lack status or whose family member lacks status to engage with local law enforcement more readily. The participants pointed out that local police often build community relations through a multitude of arenas and discretion is key to local law enforcement.

The most common themes recommended for enforcement priorities included sexual assault crimes, crimes against children, gang and drug activities, violent crimes, and property crimes for repeat offenders. Further, the participants recommended aged convictions should be discretionary or ICE should place a hard cap along the lines of a statute of limitations.
The participants recommended that ICE review the criminal records of individuals in their entirety to calibrate criminal backgrounds and recidivism when deciding appropriate enforcement decisions. The participants advised that a scalable approach may be warranted for different type of cases which may not rise to ICE priorities but are nevertheless a concern for public safety (e.g. misdemeanor domestic violence). The participants recommended the future priorities allow for discretion and that ICE view local law enforcement through the lens of increasing state and local partnership to address any chilling effects (which could extend to many crimes).

The participants pointed out that the delay in immigration outcomes from the immigration court system contributes to the situation wherein people without immigration status are residing in their communities. This delay, coupled with a lack of ICE engagement with state and local leaders and community leaders, disincentives these members of the community to come forward to report crimes either as a witness or a victim. Alternatively, some of the participants pointed out a desire to leverage immigration proceedings for use in criminal investigations.

There was a noted interest among law enforcement partners near the Southwest Border to be more involved in the development of the future priorities. These locations reported that they are more strongly impacted than other locations due to their proximity to the border. This group also requested ICE provide advance notification and approval on policies relating to removals, transfers, and placements.

## Worksite Enforcement or Large-Scale Enforcement Actions

The participants requested that ICE consider how a "sweep" affects communities and the relationships. Participants requested that the enforcement priorities include a requirement for ICE to notify local officials about large-scale enforcement actions in communities. The participants reported a preference to plan for a holistic response to address the needs of the local community, including the appropriate preparation for social service officials. State and local partners need time to plan for appropriate social service interventions and follow-ups and coordinate investigative efforts. The participants pointed out that without these notification protocols, it is difficult if not impossible to overcome the concerns community members have with their law enforcement agencies partnering with ICE.

This vein of discussion highlighted that the current guidance may lack sufficient specificity for individuals with special vulnerabilities, such as parents of small children and human trafficking victims.

## Border Security

Smaller community officials (which include law enforcement with large rural areas to police) request the border security priority be revisited to balance the ICE priorities with the viewpoint of their constituents who express fear of those noncitizens CBP releases from the border. These smaller communities point to resource concerns as another factor that ICE should consider for the updated enforcement priorities, such as the requirement to rescue noncitizens who are lost in rural areas along the border with very little access to water. Enforcement priorities should look closely at factors impacting communities and consider whether a re-strategy is necessary. State and local officials located at or near the Southwest Border also raised concerns with COVID-19 testing for individuals DHS released from custody on the border. These officials pointed out the more robust notifications to state and local officials could assist in managing their community members uncertainty and fears.

These state and local officials located at or near the Southwest Border advised that border security priority must address federal responsibilities and set out clear expectations for what state and local leaders should be responsible for. Those officials pointed out concerns from the local

community about the people who are being released and a lack of transparent communication about these releases. Further, these officials reported an uptick in criminal activity associated with the current priorities and reported concerns with the balance between local law enforcement and border security.

Conversely, participants in larger metropolitan areas located some distance from the border requested ICE reconsider the hard date of October 1, 2020. Participants raised concerns that if the updated priorities were in play for extended time, people who have settled in their communities who become entrenched in their communities will still meet the border security priority. This group opined that the priority concentrate on the resources necessary, review all aggravating and mitigating factors, or establish a rolling timeframe that better defines the border security as a near term priority (e.g. two weeks, 12 months) instead of an exact date.

## Communication

The overwhelming outtake from the groups was that ICE needs to engage in a meaningful, robust manner with local communities to build trust. The groups pointed out that communication is key because there is a pervasive fear in some communities regarding ICE's enforcement actions in their locations. One location reported that community reports and questions regarding ICE enforcement required the opening of a hotline to address the rumors in the communities.
State and local leaders opined that ICE should develop a strategy to inform community members about the ICE priorities to ensure proper understanding of the implementation. This communication should include methods to ensure that community members do not feel unduly targeted by immigration enforcement.

State and local leaders pointed out that partnering with ICE contributes to a chilling effect for victims and witnesses coming forward to report crimes. State and local partners pointed out that ICE needs to engage transparently to educate the public so that they are not afraid to call the local police because of a fear of deportation. State enforcement pointed out that the U visa process is pivotal in many cases and availability and training options should be strengthened. These groups also identified a training gap with their local staff and that ICE should improve communication with federal, state, and local officials to better understand the types of immigration benefits available to victims and witnesses of crimes. Therefore, ICE should develop communication strategies that address the perceived notions that the ICE enforcement priorities includes crime victims and witnesses. The participants advised that ICE should consider issuing public statements to the effect that ICE will not prioritize individuals with minor criminality, especially when those individuals are assisting state and local authorities.

Finally, state and local leaders pointed out that they are best situated to be ambassadors to the public regarding ICE priorities. Local LEOs are generally not well-equipped to answer their community members questions regarding immigration laws. Many partners reported an interest in ICE providing a unified message in an easily digestible format intended for line-officers to advise the public about the ICE priorities. As such, ICE should consider helping local officers understand immigration policy and the ICE procedures, where possible. ICE should provide training for state and local law enforcement on the updated guidance so our partner law enforcement agencies can better speak to the work of ICE, the ICE priorities for enforcement, and ICE's overall mission.

**Participants**
National Sheriffs' Association
Southwest Border Sheriffs' Coalition
National Association of Police Organizations
International Association of Chiefs of Police
Major Cities Chiefs Association
U.S. Conference of Mayors
National Association of Counties
Law Enforcement Immigration Task Force

\*\*\*

Representatives from:

Office of Mayor, Orange County, Florida
Office of the Mayor, Mesa, Arizona
Office of the Mayor, San Diego, California
Office of Mayor, Los Angeles, California
Office of the Mayor, Salt Lake City, Utah
Office of Commissioner, Providence, Rhode Island
Office of Commissioner, El Paso County, Texas
Office of Commissioner, Charlotte County, Florida
Office of Commissioner, Hennepin County, Minnesota
Office of Commissioner, Palm Beach County, Florida
Office of the City Manager, Mesa, Arizona
New Mexico Association of Counties, Santa Fe, New Mexico
Office of the New Americans, El Paso County, Texas
Los Angeles Police Department, Los Angeles, California
Mesa Police Department, Mesa, Arizona
Las Vegas Metropolitan Police Department, Las Vegas, Nevada
Long Beach Police Department, Long Beach, California
Office of Community Services, El Paso County, Texas
Marshalltown Police Department, Marshalltown, Iowa
Polk County Sherriff's Department, Des Moines, Iowa

AR_DHSP_00000101