# Exhibit N

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 6:21-cv-00016<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF**
**MONICA BURKE**

I, Monica Burke, declare the following under 28 U.S.C. § 1746:

1. I presently serve as Acting Assistant Director of Custody Management Division (CMD), Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS or Department). I have served in this capacity since August 2, 2021. I started my career at ICE in the Office of the Principal Legal Advisor, ERO Law Division (EROLD) in 2011. I was a Section Chief and Deputy Division Chief in EROLD. Prior to my current position, I was the Deputy Assistant Director for Custody Programs within CMD from March 2020 to August 2021.

2. CMD provides policy and oversight for the administrative custody of ICE's highly transient and diverse population of immigration detainees. CMD is composed of two divisions – the Oversight Compliance and Acquisitions Division (OCAD) and the Custody Programs Division (CPD).

3. As the Assistant Director, I am responsible for the effective and proficient performance of these divisions and their various units, including the oversight of compliance with ICE's detention standards and conditions of confinement at ICE detention facilities generally. I am further responsible for managing ICE detention operations efficiently and effectively to provide for the safety, security, and care of an average of about 25,000 detainees daily at approximately 200 facilities nationwide.

4. This declaration is based on my personal knowledge and experience and information provided to me in my official capacity.

5. I have read and am familiar with the declaration of Thomas Homan submitted by Plaintiffs in this case.

6. If the court's order required ICE to arrest, take into custody, and detain all known noncitizens subject to detention under section 1226(c) or section 1231(a)(2) without the ability to prioritize the most serious offenders, ICE would need to contract and pay for orders of magnitude more detention beds than it currently possesses, especially when accounting for limitations required by the ongoing COVID-19 pandemic and pandemic guidance.

7. As an initial matter, reprogramming or transferring funds would not address the significant obstacles to identifying additional appropriate detention space. Over the past month, I have been working to identify additional beds and I am familiar with the many

challenges associated with this effort. Finding and contracting for additional detention beds is a complicated process that requires several months per facility. First, ICE must identify available facilities. Second, ICE must conduct multiple preoccupancy inspections to ensure the facility is suitable for civil immigration detainees. Third, ICE negotiates with the detention provider and awards the contract that must be funded.

8. This process is complicated by the fact that detention providers are facing challenges in hiring appropriate staff, especially medical staff, and after staff are identified, ICE needs several weeks to ensure that they have appropriate clearances.

9. Notably, some facilities have terminated their contracts with ICE during the pandemic. Further, civil immigration detention requires a heightened standard of care and Congress has regularly required DHS to monitor facilities and discontinue agreements under certain circumstances. Available facilities are also impacted by state laws prohibiting ICE detention. Further, ICE detention space is limited by ongoing litigation that enjoins ICE from using some of its detention capacity.

10. Based on the funding and operational challenges, I believe that ICE cannot readily add sufficient bedspace to accommodate the orders of magnitude of additional noncitizens that would need to be detained were the court to order it.

11. Any significant reprogramming or transferring of funds would also damage other important DHS priorities and programs. This could include funds appropriated to support important programs like Fugitive Operations and the Transportation and Removal program. Beyond the custody sphere, there are many other significant programs within DHS and ICE that could be jeopardized by a court ordered mandate to reallocate funds without regard to the department's overall mission.

AR_DHSP_00006076

This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

Signed on this 23rd day of August 2021.

MONICA S BURKE
Digitally signed by MONICA S BURKE
Date: 2021.08.23 09:40:53 -04'00'

Monica Burke
Acting Assistant Director
U.S. Immigration and Customs Enforcement