**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| STATE OF TEXAS; STATE OF LOUISIANA, | Civ. Action No. 6:21-cv-16 |
| *Plaintiffs*, | |
| v. | |
| The UNITED STATES OF AMERICA; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TRACY RENAUD, Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, in her official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO POSTPONE
THE EFFECTIVE DATE OF AGENCY ACTION OR, IN THE ALTERNATIVE,
FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iii

I.   The Court should not adopt the motions panel's reasoning when
     evaluating the challenge to the September 30 Memorandum. ................... 2

     A.   This Court is not bound by the reasoning in the motions panel's
          stay opinion. ...................................................................................... 2

     B.   The motions panel's opinion is erroneous and should not persuade
          the Court to alter its approach to the relevant issues. ...................... 3

          1.   The motions panel erred in concluding that Sections 1226(c)
               and 1231(a)(2) are not mandatory. ......................................... 7

          2.   The motions panel erred in concluding that Defendants'
               mandatory duties to detain aliens under Sections 1226(c) and
               1231(a)(2) are committed to agency discretion by law ............ 8

          3.   The motions panel erred by failing to evaluate whether the
               memoranda were arbitrary and capricious. ............................ 9

          4.   The motions panel erred by failing to evaluate whether the
               memoranda were procedurally invalid. ................................. 10

II.  The September 30 Memorandum is arbitrary and capricious. ................. 12

     A.   The agency action itself must demonstrate reasoned
          decisionmaking. ................................................................................ 12

     B.   The Considerations Memo does not cure the September 30
          Memorandum's lack of reasoned decisionmaking. ........................... 12

III. Violating federal statutes is not taking care that the laws are
     faithfully executed. ............................................................................... 14

IV.  No procedural issue prevents this Court's review. ................................. 17

     A.   Texas and Louisiana Have Standing. ................................................ 17

     B.   The September 30 Memorandum is final agency action. ................. 19

     C.   The September 30 Memorandum is reviewable. ............................... 21

V.   Texas and Louisiana will suffer irreparable harm if the September
     30 Memorandum were to become effective. ............................................ 21

VI.  Postponing the effective date of, or preliminarily enjoining, the
     September 30 Memorandum would not harm Defendants or the
     public. ................................................................................................... 22

VII. The scope of relief should not be limited. ............................................. 22

Conclusion .......................................................................................................... 23

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Mississippi v. Johnson,*
71 U.S. (4 Wall.) 475, 499 (1867) ........................................................ 15

*Am. Med. Ass'n v. Reno*,
57 F.3d 1129, 1134 (D.C. Cir. 1995) .................................................... 11

*Am. Sch. of Magnetic Healing v. McAnnulty,*
187 U.S. 94, 108 (1902) ........................................................................ 11

*Avoyelles Sportsmen's League, Inc. v. Marsh,*
715 F.2d 897, 908 (5th Cir. 1983) ........................................................ 11

*Bennett v. Spear,*
520 U.S. 154, 169 (1997) ................................................................ 17, 19

*Chamber of Com. of U.S. v. Reich,*
74 F.3d 1322, 1327–32 (D.C. Cir. 1996) .............................................. 11

*Competitive Enter. Inst. v. NHTSA,*
901 F.2d 107, 113 (D.C. Cir. 1990) ..................................................... 18

*Dalton v. Specter,*
511 U.S. 462, 473 (1994) ................................................................ 14, 16

*Dart v. United States,*
848 F.2d 217, 224 (D.C. Cir. 1988) ..................................................... 11

*Demore v. Kim,*
538 U.S. 510, 518–20 (2003) ............................................................. 6, 8

*Dep't of Com. v. New York,*
139 S. Ct. 2551, 2569 (2019) ................................................................ 9

*DHS v. Regents of the Univ. of Cal.,*
140 S. Ct. 1891, 1905 (2020) ........................................................... 8, 12

*Duncan v. Walker,*
533 U.S. 167, 174 (2001) ....................................................................... 5

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
762 F.2d 464, 472 (5th Cir. 1985) ....................................................... 22

*Franklin v. Mass.,*
    505 U.S. 788, 796–97 (1992) .................................................................. 20

*Heckler v. Chaney,*
    470 U.S. 821, 833 (1985) .................................................................. 9, 21

*In re Aiken Cnty.,*
    725 F.3d 225, 266 (D.C. Cir. 2013) .......................................................... 9

*Jennings v. Rodriguez,*
    138 S. Ct. 830, 837 (2018) ...................................................................... 5

*Johnson v. Guzman Chavez,*
    141 S. Ct. 2271, 2281 (2021) .................................................................. 6

*Kendall v. United States ex rel. Stokes,*
    37 U.S. (12 Pet.) 524, 613 (1838) ............................................................ 15

*Kingdomware Techs,. Inc. v. United States,*
    136 S. Ct. 1969, 1977 (2016) .................................................................. 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118, 134 n.6 (2014) .................................................................. 17

*Lincoln v. Vigil,*
    508 U.S. 182, 195 (1993) ........................................................................ 11

*Maine Cmty. Health Options v. United States,*
    140 S. Ct. 1308, 1320 (2020) .................................................................. 4

*Make the Rd. N.Y. v. Pompeo,*
    475 F. Supp. 3d 232, 258 (S.D.N.Y. 2020) ........................................... 14, 16

*Michigan v. EPA,*
    576 U.S. 743, 750 (2015) ........................................................................ 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29, 43 (1983) ............................................................................ 10

*Nielsen v. Preap,*
    139 S. Ct. 954, 959 (2019) .............................................................. 6, 7, 8

*OCA-Greater Houston v. Texas,*
    867 F.3d 604, 612 (5th Cir. 2017) .......................................................... 18

*ODonnell v. Salgado,*
    913 F.3d 479 (5th Cir. 2019) ............................................................ 2, 3

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
   140 S. Ct. 2183, 2191 (2020) .................................................................. 16

*Sierra Club v. EPA*,
   939 F.3d 649, 664 & n.75 (5th Cir. 2019) ............................................. 10

*Sierra Club v. Trump*,
   929 F.3d 670, 696 (9th Cir. 2019) ........................................................ 14

*Stark v. Wickard*,
   321 U.S. 288, 310 (1944) ...................................................................... 11

*Texas v. Biden ("Texas MPP")*,
   10 F.4th 538, 551 (5th Cir. 2021) (per curiam) ................................. 9, 13

*Texas v. Biden*,
   No. 2:21-cv-67, — F. Supp. 3d —, 2021 WL 3603341, at *18 (N.D. Tex. Aug. 13,
   2021) (Kacsmaryk, J.) ........................................................................... 13

*Texas v. EEOC*,
   933 F.3d 433, 442 (5th Cir. 2019) ........................................................ 20

*Texas v. United States*,
   106 F.3d 661, 667 (5th Cir. 1997) ........................................................ 15

*Texas v. United States*,
   14 F.4th 332, 341 (5th Cir. 2021) ................................................ 1, 3, 7, 9

*Texas v. United States*,
   328 F. Supp. 3d 662, 701–02 (S.D. Tex. 2018) ..................................... 18

*Texas v. United States ("Texas DAPA")*,
   809 F.3d 134, 176 n.145 (2015) ................................................. 11, 12, 19

*Texas v. United States*,
   86 F. Supp. 3d 591, 669 (S.D. Tex. 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015) ..... 12

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ................................................................................ 6

*Trevino v. Davis*,
   861 F.3d 545, 548 n.1 (5th Cir. 2017) (Smith, J.) .................................. 2

*TRW Inc. v. Andrews*,
   534 U.S. 19, 31 (2001) ............................................................................ 5

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590, 597 (2016) .......................................................... 19

*Util. Air. Regul. Grp. v. EPA*,
  573 U.S. 302, 327 (2014) .......................................................... 16

*Warth v. Seldin*,
  422 U.S. 490, 501–02 (1975) .................................................... 17

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  139 S. Ct. 361, 370 (2018) ......................................................... 9

## Statutes

5 U.S.C. § 701 ........................................................................... 8, 21

8 U.S.C. § 1226 ....................................................................... *passim*

8 U.S.C. § 1231 ....................................................................... *passim*

8 U.S.C. § 1232 ....................................................................... *passim*

## Other Authorities

Antonin Scalia & Bryan A. Garner,
  *Reading Law* 174 (2012) ............................................................ 5

Jonathan F. Mitchell,
  *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1016 (2018) ........................... 23

## Constitutional Provisions

U.S. Const. art. II, § 3 ............................................................... 16

Defendants' opposition to the motion to stay the September 30 Memorandum mostly recycles their arguments that this Court rejected in granting a preliminary injunction. *See* ECF 111 (Motion); ECF 122 (Response). But they do raise two novel arguments: (1) that the Fifth Circuit motions panel's partial stay of the preliminary injunction makes obsolete the Court's rulings on reviewability and the States' substantive claims; and (2) that some differences between the September 30 Memorandum and earlier memoranda—primarily a supposed increase in case-by-case discretion for enforcement actions—are enough to cure what the Court has already determined to be unlawful agency action. Both arguments are wrong.

The analysis and reasoning in the Court's preliminary-injunction opinion is sound, and the Court should continue to follow it. The Fifth Circuit opinion is by a motions panel and therefore does not bind this Court; more importantly, the reasoning it employed is out of step with binding precedent. And the differences between the September 30 Memorandum and the earlier memoranda are not enough to change the result from this Court's preliminary injunction—the September 30 Memorandum has the same effect of removing discretion from immigration officers to, as Congress mandated, "take into custody" or detain certain aliens being released from State custody.

The motions panel concluded that the "injunction will go into effect to the extent it prevents DHS and ICE officials from relying on the memos to refuse to detain aliens described in [section] 1226(c)(1) against whom detainers have been lodged or aliens who fall under section 1231(a)(1)(A) because they have been ordered removed." *Texas v. United States*, 14 F.4th 332, 341 (5th Cir. 2021). But the September 30 Memorandum directly contradicts the motions panel's instructions. Its application of "mitigating factors that militate in favor of declining enforcement action" to "apprehension of aliens" and reference to "[t]he gravity of an apprehension

and removal on a noncitizen's life," ECF 122-1 at 3, 1, 4, ensures that Defendants will continue to rescind already-issued detainers unless this Court acts.

Because Defendants' failure to detain dangerous criminal aliens will irreparably injure Texas and Louisiana, Plaintiffs respectfully request that the Court postpone the effective date of the September 30 Memorandum before it goes into effect on November 29, or, in the alternative, preliminarily enjoin it.

## I.   The Court should not adopt the motions panel's reasoning when evaluating the challenge to the September 30 Memorandum.

### A. This Court is not bound by the reasoning in the motions panel's stay opinion.

Defendants rely on a single case to argue that a district court is bound by stay opinions of a motions panel. ECF 122 at 2, 19 (citing *ODonnell v. Salgado*, 913 F.3d 479 (5th Cir. 2019)). But the phrase they quote as support—that "the published opinion granting the stay is this court's last statement on the matter and, like all published opinions, binds the districts courts in this circuit," *ODonnell*, 913 F.3d at 482—is torn from context and does not apply.

*ODonnell* involved parties who obtained a stay, voluntarily dismissed their appeal, and then asked the Fifth Circuit to vacate its stay opinion. 913 F.3d at 481. The court rejected that request, and the untruncated quote from the opinion shows the misleading nature of Defendants' use of it:

> It is true, as the motion for vacatur states, that "a merits panel is not bound by a motions panel," *Trevino v. Davis*, 861 F.3d 545, 548 n.1 (5th Cir. 2017) (Smith, J.), but that is irrelevant because there is not, and never will be, a merits panel. As a result of the dismissal, the published opinion granting the stay is this court's last statement on the matter and, like all published opinions, binds the district courts in this circuit.

*Id.* at 482. *ODonnell*'s reference to that case's previous stay opinion as "th[e] court's *last* statement on the matter" does not mean, as Defendants suggest, its *most recent* statement on the matter. Rather, because the appeal was dismissed, the stay opinion was the court's *final* statement on the matter—not subject to further evaluation by the court because nothing remained to be done to dispose of the case.

The situation here could not be more different. Not only is there a live appeal on the merits pending before the Fifth Circuit, but there is also a pending petition for *en banc* review of the motions panel's stay order. The stay opinion is a tentative determination subject to plenary review by the Fifth Circuit, and this Court is not bound by its reasoning.

## B. The motions panel's opinion is erroneous and should not persuade the Court to alter its approach to the relevant issues.

The motions panel believed that "[t]he central merits issue" in this case "is whether Congress has interfered with immigration officials' traditional discretion to decide when to remove someone." *Texas*, 14 F.4th at 336. It then held that at least some of the agency actions set out in the memoranda are committed to agency discretion by law, *id.* at 338–40; that the Defendants' discretion as to whom to initiate removal proceedings against necessarily limits who must be detained for purposes of 1226(c), *id.* at 336–38; and that, in the immigration-enforcement context, "shall" does not mean "must." *Id.* at 337–40. This conclusion, however, was wrong, and that error infected the entire opinion, including the panel's choice not to address this Court's conclusion that the memoranda are arbitrary and capricious and substantively unlawful for failure to go through notice-and-comment procedures. Plain meaning, the statutory structure, and Supreme Court precedent demonstrate that Sections 1226(c) and 1231(a)(2) are mandatory.

Both Section 1226(c) and 1231(a)(2) create mandatory requirements to detain the aliens they cover, as this Court correctly concluded. ECF 79 at 61–100, 105.

3

"The first sign that the statute impose[s] an obligation is its mandatory language: 'shall.'" *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320 (2020). "Unlike the word 'may,' which implies discretion, the word 'shall' usually con notes a requirement." *Id.* (quoting *Kingdomware Techs,. Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016)). Section 1226(c) states that "[t]he Attorney General *shall* take into custody any alien who" has committed certain crimes "when the alien is released" from criminal custody. 8 U.S.C. § 1226(c) (emphasis added). And Section 1231(a)(2) provides that "the Attorney General *shall* detain" an alien with a final order of removal "[d]uring the removal period." *Id.* § 1231(a)(2) (emphasis added).

The "mandatory nature" of Sections 1226(c) and 1231(a)(2) are "underscore[d] by "adjacent provisions." *Maine Cmty. Health Options*, 140 S. Ct. at 1320. "'When', as is the case here, Congress 'distinguishes between "may" and "shall," it is generally clear that 'shall' imposes a mandatory duty.'" *Id.* (quoting *Kingdomware*, 136 S. Ct. at 1977). The INA generally—and Sections 1226 and 1231 specifically—use both "may" and "shall," demonstrating that Congress distinguished between discretionary acts and mandatory ones. By deliberately using the mandatory "shall," Congress made detaining the aliens covered by Sections 1226(c) and 1231(a)(2)a requirement.

The mandatory nature of the duty to detain is further supported by the structure of Section 1226. Section 1226's first two subsections grant discretionary powers. Under Subsection (a), "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). After that arrest and detention, the Attorney General "*may*" either "continue to detain the arrested alien" or "*may* release the alien" on "bond" or "conditional parole." *Id.* § 1226(a)(1)–(2) (emphases added). And under Subsection (b), that "bond or parole" "may" be "revoke[d]" "at any time[.]" *Id.* § 1226(b).

4

But unlike those two subsections, Subsection (c) both imposes a mandate and tempers that mandate with discretionary authority. "The Attorney General *shall* take into custody" criminal aliens "when the alien is released." *Id.* § 1226(c)(1) (emphasis added). Yet the "Attorney General *may* release" these criminal aliens under narrowly proscribed circumstances, including determining that "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2) (emphasis added).

Were Section 1226(c) discretionary, it would do nothing. Section 1226(a) already provides discretion to detain aliens; a separate discretionary power to detain criminal aliens would be superfluous. And were Section 1226(c)(1) discretionary, there would be no need for Section 1226(c)(2) to narrowly proscribe the circumstances where criminal aliens may be released from custody: if there were no requirement to detain in the first instance, there would be no need to limit release. The Defendants' reading of Section 1226 would violate the cardinal principle that a statute should be construed so that none of it is rendered superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law* 174 (2012) (surplusage canon).

The Supreme Court has repeatedly confirmed this interpretation, describing Section 1226(c) and Section 1231(a)(2) as mandatory.[1] "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (emphasis in original). Because "Congress has decided" that the Section 1226(a) "procedure is too risky in some instances" it "adopted a special rule for aliens who have committed certain dangerous crimes and

---

[1]   The motions panel noted that these Supreme Court cases have arisen when "detainees subject to enforcement action were seeking their release." *Texas*, 14 F.4th at 338. But there is little reason to believe that Defendants can rely on the commands in these provisions when seeking to detain aliens at Congress's direction but not when they would rather not follow those same instructions.

those with connections to terrorism." *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019). These criminal aliens "must be arrested 'when [they are] released' from custody on criminal charges." *Id.; see also id.* at 960 ("Congress *mandated* that aliens who were thought to pose a heightened risk be arrested and detained without a chance to apply for release on bond or parole." (emphasis added)). And as the Supreme Court has further explained, Congress adopted these special procedures because of the serious harms that criminal aliens may cause if not detained, including their high rates of recidivism. *Demore v. Kim*, 538 U.S. 510, 518–20 (2003).

The same is true for Section 1232(a)(2). Just last term, the Supreme Court confirmed that "[d]uring the removal period, detention is mandatory." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2281 (2021).

The Supreme Court's decision in *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), is not to the contrary. First, *Castle Rock* merely explained that in the face of "a well established tradition of police discretion . . . coexist[ing] with apparently mandatory arrest statutes," "a true mandate of police action would require some stronger indication from the Colorado Legislature than" the use of "shall." *Id.* at 760–761. In Section 1226, on the other hand, Congress deliberately employed both "may" and "shall" to create a reticulated scheme of both discretionary and mandatory detention. If Section 1226(c) does not create a mandatory duty in the context of that scheme—by requiring that Defendants "shall detain" criminal aliens when released from criminal custody while separately allowing that other aliens *may* be detained—it is difficult to imagine how Congress could create a mandatory detention scheme at all.

Second, *Castle Rock* repeatedly refers to the problem of arrest in "cases in which the offender is not present to be arrested." *Id.* at 762. But Congress specifically avoided that problem here by mandating criminal aliens be detained "when the alien is released" from criminal custody. 8 U.S.C. § 1226(c)(1)(D). And the record in this

case demonstrates that Defendants have refused to take into custody and detain aliens subject to Section 1226(c) who are in the States' custody. *See*, *e.g.*, ECF 115-3 & Ex. 1. Nothing in the September 30 Memorandum changes this.

### 1. The motions panel erred in concluding that Sections 1226(c) and 1231(a)(2) are not mandatory.

The motions panel misapprehended that "[t]he central merits issue is whether Congress has interfered with immigration officials' traditional discretion to decide when to remove someone." *Texas*, 14 F.4th at 336. It then proceeded to analyze whether Sections 1226(c) and 1231(a)(2) "eliminate immigration officials' 'broad discretion' to decide who should face enforcement action in the first place." *Id.* at 337. This was a mistake; whatever their outermost scope, both Sections 1226(c) and 1231(a)(2) straightforwardly require apprehension—"taking into custody"—and continued detention of the aliens they cover.

As an initial matter, it makes little sense to think of Section 1231(a)(2) as the motions panel did—because an alien subject to it is definitionally in "the removal period," which occurs only after "an alien is ordered removed." 8 U.S.C. § 1231(a)(2), (a)(1)(A). By the time Section 1231(a)(2) is implicated, the decision to institute removal proceedings has already been made.

Moreover, as a matter of text and Supreme Court precedent, Section 1226(c) mandates detention for a criminal alien "when the alien is released" from criminal custody. 8 U.S.C. § 1226(c)(1)(D). The phrase "when the alien is released" triggers Defendants' mandatory duty to detain an alien, not, as the panel believed, the beginning of removal proceedings. *Contra Texas*, 14 F.4th at 336–38.

This interpretation is confirmed by Supreme Court precedent. In *Nielsen*, the Court explained that Section 1226(c) "provides that the Secretary 'shall take' into custody an 'alien' having certain characteristics and that the Secretary *must* do this 'when the alien is released' from criminal custody." 139 S. Ct. at 964 (emphasis

added). As the Supreme Court plainly stated: "The Secretary *must* arrest those aliens guilty of the predicate offense[s]" described in Section 1226(c). *Id.* at 966 (emphasis in original). And even the *Nielsen* dissent agreed that the duty to detain was mandatory. *Id.* at 976 (Section 1226(c) "requires the Secretary of Homeland Security to take those aliens into custody 'when . . . released' from prison. . . .") (Breyer, J., dissenting). *See also id.* at 973 ("Congress has in fact mandated detention of certain noncitizens who have been in criminal custody") (Kavanaugh, J., concurring);.

There is nothing odd—as the motions panel believed—about Section 1226(c)'s requiring Defendants to detain criminal aliens when they are released from criminal custody. After all, "Congress enacted mandatory detention precisely out of concern that . . . 'deportable criminal aliens who are not detained' might 'continue to engage in crime [or] fail to appear for their removal hearings.'" *Id.* at 968 (quoting *Demore*, 538 U.S. at 513). And as the Supreme Court recognized, Congress was also concerned simply with reducing crime; it made the decision to mandate detention against a backdrop of high recidivism rates among such aliens. *Demore*, 538 U.S. at 518–20. And whether or not Section 1226(c) itself requires Defendants to institute removal proceedings, their obligation to detain criminal aliens may well inform their decisions concerning whether to institute deportation proceedings in the first instance.

### 2. The motions panel erred in concluding that Defendants' mandatory duties to detain aliens under Sections 1226(c) and 1231(a)(2) are committed to agency discretion by law.

The Administrative Procedure Act creates a "basic presumption of judicial review for one suffering legal wrong because of agency action." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (cleaned up). While the APA exempts actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), "to honor the presumption of review," the Supreme Court has "read the exception in § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute

is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (internal quotation marks omitted).

First, because Defendants' duty to detain the aliens covered by Sections 1226(c) and 1231(a)(2) is mandatory, the choice of whether to detain necessarily cannot be committed to agency discretion by law. The motions panel erred in concluding otherwise, because it evaluated whether instituting removal proceedings, rather than detaining aliens who must be detained by statute, was committed to agency discretion by law. *Texas*, 14 F.4th at 336–38.

Second, this is not a case where there is "no law to apply." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019). "Even a statute that 'leave[s] much to [an agency's] discretion' does not necessarily 'leave [that] discretion unbounded.'" *Texas v. Biden*, 10 F.4th 538, 551 (5th Cir. 2021) (per curiam) ("*Texas MPP*") (quoting *Dep't of Com.*, 139 S. Ct. at 2567–68). And here, the law that applies is clear. Sections 1226(c) and 1231(a)(2) mandate detention of covered aliens. For the same reasons that the memoranda evaluated by this Court and the motions panel violated this clear law, the September 30 Memorandum does too. "Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers." *Heckler v. Chaney*, 470 U.S. 821, 833 (1985). "Put another way, prosecutorial discretion encompasses the discretion not to enforce a law against private parties; it does not encompass the discretion not to follow a law imposing a mandate or prohibition on the Executive Branch." *In re Aiken Cnty.*, 725 F.3d 225, 266 (D.C. Cir. 2013).

### 3. The motions panel erred by failing to evaluate whether the memoranda were arbitrary and capricious.

Because the motions panel evaluated whether initiating removal proceedings—rather than detaining aliens that must be detained by statute—was

committed to agency discretion, it did not address this Court's conclusion that the memoranda were arbitrary and capricious. ECF 79 at 105–27.

As this Court concluded, the memoranda "enumerate[] quite a few factors that make the Government's 'mission particularly complex,'" but "fail to establish any rational connection or logical link between any of these factors and the new guidance" because they do "not disclose how or why any of these enumerated factual considerations are connected to the policies the Government ultimately pursued." ECF 79 at 110. They therefore failed to "articulate a satisfactory explanation for [their] action[s] including a 'rational connection between the facts found and the choice made.'" *Sierra Club v. EPA*, 939 F.3d 649, 664 & n.75 (5th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). This Court correctly identified this problem with nearly every factor identified by the memoranda, ECF 79 at 110–12, and further correctly concluded that the memoranda were unlawful for failure to consider other significant factors, including "the prospect of recidivism," *id.* at 116, "State costs and expenses," *id.* at 120–23, and "policies 'that would have retained congressionally mandated detention of criminal aliens and aliens with final orders of removal.'" *Id.* at 124–25.

"[A]gency action is lawful only if it rests on a consideration of the relevant factors." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted). But because it cut its analysis short, the motions panel did not even consider this Court's reasoned analysis.

### 4. The motions panel erred by failing to evaluate whether the memoranda were procedurally invalid.

The motions panel further did not pass on this Court's conclusion that the memoranda were procedurally invalid because they did not go through notice-and-comment procedures. ECF 79 at 127–46. The motions panel appeared not to address this portion of this Court's ruling because it viewed the decision to institute removal

proceedings as committed to agency discretion. As discussed above, that conclusion answers the wrong question. "[U]nder the APA the ultimate availability of substantive judicial review is distinct from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply." *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995) (citing *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993)). Thus, even if the decision to detain aliens was committed to agency discretion by law, that would not insulate that decision from the notice-and-comment requirements of the APA. The motions panel failed to even address that argument.

Even if review under the APA were not available because the substantive decision was committed to agency discretion, Plaintiffs have an equitable cause of action against federal officials for violating the law. There is a long history of federal courts granting relief on such claims. *See, e.g.*, *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902); *Stark v. Wickard*, 321 U.S. 288, 310 (1944). "Nothing in the subsequent enactment of the APA altered the *McAnnulty* doctrine of review. It does not repeal the review of *ultra vires* actions recognized long before, in *McAnnulty*." *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988). "When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Id.* Thus, Plaintiffs can bring a "non-statutory review action," and courts have authority to review federal executive action that violates statutory commands. *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327–32 (D.C. Cir. 1996).

Moreover, the September 30 Memorandum is substantive because it "produce[s] . . . significant effects on [Texas's] interests" and "narrowly constrict[s] the discretion of agency officials by largely determining the issue addressed." *Texas v. United States*, 809 F.3d 134, 176 n.145 (5th Cir. 2015) ("*Texas DAPA*") (quoting *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908 (5th Cir. 1983)). By preventing immigration officials from taking into custody and detaining criminal

aliens without considering the mitigating factors and without a thorough pre-enforcement investigation, combined with after-the-fact review, the September 30 Memorandum removes their discretion. *See Texas v. United States*, 86 F. Supp. 3d 591, 669 (S.D. Tex. 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015) ("Despite the DAPA memorandum's use of phrases such as 'case-by-case basis' and 'discretion,' it is clear from the record that the only discretion that has been or will be exercised is that already exercised by Secretary Johnson in enacting the DAPA program and establishing the criteria therein. That criteria is binding.").

The September 30 Memorandum also "forces the state to choose between spending millions of dollars [on services for illegal aliens] and amending its statutes." *Texas DAPA*, 809 F.3d at 176.

## II.   The September 30 Memorandum is arbitrary and capricious.

### A. The agency action itself must demonstrate reasoned decisionmaking.

"An agency must defend its actions based on the reasons it gave *when it acted*." *Regents*, 140 S. Ct. at 1909 (emphasis added). But as discussed in Plaintiffs' Motion, the September 30 Memorandum continues the same failure as the previous memoranda: it has no discussion evaluating the relevant factors that this Court previously found to be necessary considerations for rational decisionmaking. ECF 111 at 32–36; ECF 79 at 114–127. Defendants do not contest this omission from the September 30 Memorandum.

### B. The Considerations Memo does not cure the September 30 Memorandum's lack of reasoned decisionmaking.

Nor does pointing to a document in the administrative record plug the holes in the September 30 Memorandum. The "Considerations Memo," ECF 122-7—an unattributed document dated the same day as the September 30 Memorandum was issued, and not publicly available anywhere—is not the agency action that is

evaluated for reasoned decisionmaking, but is part of the administrative record that must provide the basis for the factfinding and reasoned decisionmaking in the agency action.

A comparison to a recent immigration case shows the correct relationship between the agency action and the administrative record. In the litigation challenging the termination of the Migrant Protection Protocols ("MPP"), the district court found that DHS failed to consider the relevant factor of a previous DHS study finding benefits to the program. *Texas v. Biden*, No. 2:21-cv-67, — F. Supp. 3d —, 2021 WL 3603341, at *18 (N.D. Tex. Aug. 13, 2021) (Kacsmaryk, J.). The agency action evaluated was a June 1 memorandum terminating MPP and the court reasoned that it "never once mentions these benefits." *Id*. at *18. That the neglected study was contained in the administrative record was not sufficient to find that DHS had considered it. The Fifth Circuit, denying a stay of the injunction against terminating MPP, supported this reasoning by finding "the June 1 Memorandum did not expressly mention, let alone meaningfully discuss" the DHS study in the administrative record. *Texas MPP*, 10 F.4th at 554.

The September 30 Memorandum never addresses the findings in the Considerations Memo and never even references that document's existence. Compare that to DHS's recent attempt to terminate MPP yet again. That agency action explicitly addressed the benefits of MPP and incorporated a detailed "considerations memo" of its own. *See* Ex. Y, Mem. from Alejandro Mayorkas, *Termination of Migrant Protection Protocols*, at 4 (Oct. 29, 2021) ("For the reasons detailed more fully in the attached memorandum, the contents of which are adopted and incorporated into the decision contained here, I am hereby terminating MPP."), available at https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf.; Ex. Z, Dept. of Homeland Sec., *Explanation of the Decision to Terminate the Migrant Protection Protocols* (Oct. 29, 2021),

13

https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-justification-memo.pdf. These two documents were published together on DHS's website. *See* https://www.dhs.gov/publication/migrant-protection-protocols-termination-memo.

Merely having a document in the administrative record is not sufficient to demonstrate that the agency considered it. The September 30 Memorandum contains no reference to the Considerations Memo or the factors it considered, and the Considerations Memo was not published. It is merely a document in the administrative record. The September 30 Memorandum is therefore arbitrary and capricious for failing to consider the relevant factors.

## III.  Violating federal statutes is not taking care that the laws are faithfully executed.

Misunderstanding the nature of Plaintiffs' constitutional claim, Defendants argue that it "collapses into their argument that the Secretary's enforcement prioritization exceeds his statutory authority" and therefore cannot succeed under the Take Care Clause. ECF 122 at 45 (citing *Dalton v. Specter,* 511 U.S. 462, 473 (1994)). While "[t]he *Dalton* Court made clear that not every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution, [it] by no means found that action in excess of statutory authority can *never* violate the Constitution or give rise to a constitutional claim." *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 258 (S.D.N.Y. 2020) (quoting *Sierra Club v. Trump*, 929 F.3d 670, 696 (9th Cir. 2019)) (cleaned up).

Plaintiffs' claim here is not "that the President simply did not fully comply with a congressionally prescribed process" but "that the President's actions affirmatively displaced a congressionally mandate[.]" *Make the Rd.*, 475 F. Supp. 3d at 258. It therefore implicates "constitutional separation of powers concerns not present in

*Dalton*" and should be "appropriately considered as [a] constitutional claim[] subject to judicial review." *Id.* at 258–59.

Defendants cite *Mississippi v. Johnson*, but that case noted that courts cannot issue orders directing the President's "exercise of judgment." 71 U.S. (4 Wall.) 475, 499 (1867). Plaintiffs have not sought such an order. They have instead sought an injunction prohibiting implementation of an unlawful policy and requiring compliance with non-discretionary statutory duties. Because Congress has removed any discretion the Executive Branch might have previously had to decline detention in these circumstances, there is no "exercise of judgment" with which an injunction could interfere.

Defendants cite *Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) for the proposition that "[r]eal or perceived inadequate enforcement of immigration laws does not constitute a reviewable abdication of duty," ECF 122 at 47. In that case, however, the State did not challenge a specific agency action, but the entire programmatic scheme of enforcement. The court found "no workable standard against which to judge the agency's exercise of discretion." 106 F.3d at 667. In this case, however, the specific agency action is the September 30 Memorandum, and the workable standards are the mandates set by Congress in Sections 1226(c) and 1231(a)(2).

Further, courts can and do enforce the presidential duty to faithfully execute congressional commands through relief granted against his subordinates. Because the September 30 Memorandum necessarily causes Defendants to violate the law, its issuance is a claim of "a dispensing power, which has no countenance for its support in any part of the constitution." *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 613 (1838). "To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible." *Id.*

Nor is it possible for the Take Care Clause to apply only to the president and not to subordinate executive officials such as Defendants. ECF 122 at 46. because the President's subordinates are necessarily exercising the President's power:

> Under our Constitution, the "executive Power"—all of it—is "vested in a President," who must "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; *id.*, § 3. Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance.

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020). The President and those who work for him in the Executive Branch are obligated to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The September 30 Memorandum violates that constitutional obligation.

As explained above, the September 30 Memorandum contradicts 8 U.S.C. § 1226(c) and 8 U.S.C. § 1231(a)(2). Preventing immigration officers from following statutory detention mandates, by definition, falls short of faithfully executing the laws. "The Executive Branch may not instruct its officers to enforce a statute in a manner contrary to the law itself." ECF 79 at 3 (citing *Util. Air. Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014)).

It is true that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton*, 511 U.S. at 473. But much more than simply exceeding statutory authority has occurred here. Rather, DHS's actions have "affirmatively displaced a congressional mandate." *Make the Rd.*, 475 F. Supp. 3d at 258–59.

16

## IV.   No procedural issue prevents this Court's review.

### A. Texas and Louisiana Have Standing.

The Fifth Circuit motions panel did nothing to undermine this Court's prior determination as to Plaintiffs' standing. ECF 79 at 20–46. Defendants' violations of federal law cause concrete injuries.

Defendants set forth new arguments as to the September 30 Memorandum. They argue that there is no redressability because "[d]eferring implementation of the [September 30 Memorandum] would prolong th[e] interim guidance and the States have not made any showing why they need the interim guidance to remain in place to prevent any injury," ECF 122 at 14, and that the discretion the September 30 Memorandum grants immigration officials to consider aggravating and mitigating factors makes it unlikely that that guidance increases any harm to Plaintiffs. *Id*. at 14–15. But of course, Plaintiffs continue to challenge the previous memoranda as well, and the baseline for evaluating harm is compared to an enforcement regime following congressional mandatory detention of criminal aliens that is violated by the previous memoranda and the September 30 Memorandum's discretionary schemes. when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of its legal claim. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) (assuming factual allegations and legal theory of complaint for purposes of standing analysis).

Because "[p]roximate causation is not a requirement" for standing, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); challenged conduct need not be the only step—or even "the very last step"—in the causal chain, *Bennett v. Spear*, 520 U.S. 154, 169 (1997). And "[f]or standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test. This is true even in cases where the injury hinges on the reactions of the third parties . . . to the agency's conduct.*"*

17

*Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113 (D.C. Cir. 1990) (citations omitted). That enjoining or postponing the effective date of the September 30 memorandum may remove only one source of harm to Plaintiffs does not deny them standing.

Defendants also quibble with the total amounts of injuries Texas shows that it suffers from expenditures for illegal aliens in the State. ECF 122 at 15–17. But "[t]he injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an identifiable trifle. . . . The injury in fact requirement under Article III is qualitative, not quantitative, in nature." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (cleaned up). Faced with a nearly identical argument to that made by Defendants here, Judge Hanen found that Texas had standing to challenge the Deferred Action for Childhood Arrivals program:

> Though the Defendant-Intervenors lodge attacks against the evidence supporting each type of cost—education, healthcare, and law-enforcement services—the Court need not address those arguments line-by-line because the States only must show *some* injury, as opposed to a "substantial" injury. . . .
>
> For standing purposes, Texas need not plead damages from a particular individual when it pleads and has proof that it is being damaged by the entire program. In the scope of a program the size of DACA, with over 115,000 recipients in Texas alone, it is virtually certain that at least some DACA recipients utilize the emergency Medicaid services Texas is required to provide them.

*Texas v. United States*, 328 F. Supp. 3d 662, 701–02 (S.D. Tex. 2018); *see also Texas MPP*, 10 F.4th at 548 ("at least some MPP-caused immigrants will certainly seek educational and healthcare services from the state."). Similarly, it is "virtually certain" that at least some aliens who would have been subject to mandatory detention would utilize state services as a result of the September 30 Memorandum

allowing numerous mitigating factors against taking them into custody and detaining them.

Finally, the Fifth Circuit has already rejected Defendants' argument that the economic benefits that may stem from the implementation of the September 30 Memorandum outweigh any injuries caused by it, ECF 122 at 15–17, at least when it comes to standing. *See Texas DAPA*, 809 F.3d at 155–56 ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant."). Thus, this Court need not and cannot engage in the type of "accounting exercise" that Defendants suggest. *Id*. at 156.

## B.     The September 30 Memorandum is final agency action.

The Fifth Circuit motions panel did not question this Court's determination that the prior memoranda were final agency actions, and this Court's reasoning on that issue, ECF 79 at 53–61, applies equally to the September 30 Memorandum. For agency action to be final, "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citing *Bennett*, 520 U.S. at 177–78).

The September 30 Memorandum satisfies both conditions. Defendants "do not dispute" that it consummated their decisionmaking process. ECF 122 at 24 n.10. But they maintain that two features of the September 30 Memorandum make it one from which no legal consequences flow: the lack of a preapproval process up the chain of command, and removal of categorical distinctions between "presumed priorities" and other priorities." ECF 122 at 22. Neither distinction is relevant here.

First, the September 30 Memorandum requires that "personnel should, to the fullest extent possible, obtain and review the entire criminal and administrative record and other investigative information to learn of the totality of the facts and circumstances of the conduct at issue." ECF 122-1 at 4. This is due to "the gravity of an apprehension and removal on a noncitizen's life." *Id.* at 4. Combined with the thorough "review process" "involv[ing] the relevant chains of command" at the back end, *id.* at 6, this will have a similar effect on enforcement as the previous memoranda. ECF 115-4 at ¶¶ 45–48.

Second, the discretion purportedly vested in immigration officials is illusory. The September 30 memorandum states that "[t]his guidance is Department-wide. Agency leaders as to whom this guidance is relevant to their operations will implement this guidance accordingly." ECF 122-1 at 7. There is no discretion to refuse to consider mitigating factors before engaging in enforcement actions. And it precludes immigration officials from using "[t]he fact an individual is a removable noncitizen . . . alone [as] the basis of an enforcement action against them," *id.* at 2, and prohibits determining whether an enforcement action is warranted "according to bright lines or categories," *id.* at 3, such as congressionally mandated custody and detention.

Defendants ignore the principle that "where agency action withdraws an entity's previously-held discretion, that action alters the legal regime, binds the entity, and thus qualifies as final agency action" under the APA. *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019) (quotation omitted). The September 30 Memorandum, as the previous memoranda, removes the discretion that immigration officials had previously—to enforce the immigration laws without being required to consider the mitigating factors not required by statute. *See Franklin v. Mass.*, 505 U.S. 788, 796–97 (1992) ("To determine when an agency action is final, we have looked to, among

other things, whether its impact 'is sufficiently direct and immediate' and has a 'direct effect on . . . day-to-day business.'") (cleaned up).

## C.   The September 30 Memorandum is reviewable.

The motions panel did nothing to cast doubt on this Court's reasoning in the preliminary injunction order that no "statutes preclude judicial review" under 5 U.S.C. § 701(a)(1). ECF 79 at 47–53. This Court has already examined the specific statutory bars to review invoked by Defendants, and the analysis here is the same. *See id.*

The Court must consider the motions panel's reasoning on whether the Defendants duties to take into custody and detain criminal aliens and aliens with final removal order are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This Court has already analyzed this aspect in detail, ECF 79 at 61–103, and Plaintiffs have already explained above why the motions panel's reasoning on this issue is wrong. "Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers." *Heckler*, 470 U.S. at 833.

All of Plaintiffs' claims are reviewable for the reasons explained above. But even if Section 701(a) (2) barred certain claims, it would not preclude the Court from considering Counts IV (based on a lack of notice-and-comment rulemaking), and V (based on the Take Care Clause). Plaintiffs' claims based on the Constitution and for *ultra vires* action—due to proceeding contrary to statutorily required notice-and-comment rulemaking—are properly before the Court even without the APA, so Section 701 is not an obstacle to those claims.

## V.   Texas and Louisiana will suffer irreparable harm if the September 30 Memorandum were to become effective.

Nothing in the motions panel's stay opinion disturbs this Court's determination on irreparable injury in the challenge to the previous memoranda,

ECF 79 at 144–46, and there is no distinction in the September 30 Memorandum that would change this. Texas and Louisiana face irreparable injuries as they will incur financial costs they cannot recover. "[W]hen the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

## VI.   Postponing the effective date of, or preliminarily enjoining, the September 30 Memorandum would not harm Defendants or the public.

Defendants face no harm from the postponement of the effective date of, or preliminarily enjoining, the September 30 Memorandum. This Court's reasoning remains sound regarding the September 30 Memorandum. ECF 79 at 147–51. Defendants put forth nothing new against this prong for relief, save for reliance on the motions panel's flawed reasoning that inherent executive discretion in initiating removal proceedings would be harmed by an injunction. ECF 122 at 47–49. Their previously articulated argument that an injunction would result in lack of bedspace for prioritized alien detainees, *id.* at 48, remains a red herring, *see* ECF 85, 85-1 (Declaration of Tom Homan). This Court denied a stay of its preliminary injunction in the face of these arguments once, ECF 90; there is no reason for it to change course now.

## VII.   The scope of relief should not be limited.

The motions panel partially upheld this Court's preliminary injunction and did not disturb its nationwide application. There is no reason that this Court's reasoning that the preliminary injunction should be nationwide wouldn't apply here. ECF 79 at 151–155.

Regardless, the primary relief sought here is to postpone the effective date of the September 30 Memorandum through 5 U.S.C. § 705. If the Court were to grant

relief under that provision, the geographic scope of relief will not need to be considered. Unlike injunctive relief that merely precludes enforcement of an agency action, a stay under Section 705 acts on the agency action itself:

> Preliminary relief under section 705 differs from a preliminary injunction, which blocks the executive from enforcing a law but does not postpone the effective date of the law itself. Section 705, by contrast, empowers courts to delay the effective date of the challenged agency action. So preliminary relief under section 705 will immunize those who violate the challenged agency action from subsequent penalties—even if the courts wind up approving the agency's action in the end—because the agency action is formally suspended by the court's preliminary relief.

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1016 (2018); *see also id.* at 950–51. This Court should take this more direct route and postpone the effective date of the September 30 Memorandum.

## Conclusion

The State of Texas and the State of Louisiana respectfully request that the Court postpone the effective date of the September 30 Memorandum—before it becomes effective on November 29—to allow review on the merits or, in the alternative, preliminarily enjoin Defendants from implementing the September 30 Memorandum nationwide.

Date: November 19, 2021

Respectfully submitted,

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Judd E. Stone II
Solicitor General

Patrick K. Sweeten
Deputy Attorney General for Special
Litigation
*Attorney-in-Charge*
Texas Bar No. 00798537
Southern District of Texas Bar No. 1829509

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Texas Bar No. 24088531
Sothern District of Texas Bar No. 3053077

*/s/Ryan D. Walters*
RYAN D. WALTERS
Special Counsel, Special Litigation Unit
Texas Bar No. 24105085
Southern District of Texas Bar No. 3369185

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

**COUNSEL FOR PLAINTIFF STATE OF TEXAS**

JEFF LANDRY
Louisiana Attorney General

ELIZABETH B. MURRILL
Solicitor General

JOSEPH F. ST. JOHN
Deputy Solicitor General

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

**COUNSEL FOR PLAINTIFF STATE OF LOUISIANA**

## CERTIFICATE OF WORD COUNT

I certify that the total number of words in this document, exclusive of those sections designated for omission, is 7,098 as registered by Microsoft Word.

*/s/Ryan D. Walters*
RYAN D. WALTERS

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 19, 2021, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS