*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

May 27, 2021

MEMORANDUM FOR:    All OPLA Attorneys

FROM:    John D. Trasviña
Principal Legal Advisor

JOHN D
TRASVINA

Digitally signed by JOHN D.
TRASVINA
Date: 2021.05.27 07:04:19 -07'00'

SUBJECT:    Interim Guidance to OPLA Attorneys Regarding Civil
Immigration Enforcement and Removal Policies and Priorities

On January 20, 2021, President Biden issued Executive Order (EO) 13993, Revision of Civil
Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 20, 2021), which
articulated foundational values and priorities for the Administration with respect to the
enforcement of the civil immigration laws. On the same day, then-Acting Secretary of Homeland
Security David Pekoske issued a memorandum titled, *Review of and Interim Revision to Civil
Immigration Enforcement and Removal Policies and Priorities* (Interim Memorandum).

The Interim Memorandum did four things. First, it directed a comprehensive Department of
Homeland Security (DHS or Department)-wide review of civil immigration enforcement
policies. Second, it established interim civil immigration enforcement priorities for the
Department. Third, it instituted a 100-day pause on certain removals pending the review.[1]
Fourth, it rescinded several existing policy memoranda, including a prior U.S. Immigration and
Customs Enforcement (ICE) Office of the Principal Legal Advisor (OPLA) memorandum, as
inconsistent with EO 13993.[2] The Interim Memorandum further directed that ICE issue interim
guidance implementing the revised enforcement priorities and the removal pause.

On February 18, 2021, ICE Acting Director Tae D. Johnson issued ICE Directive No. 11090.1,

---

[1] On January 26, 2021, a federal district court issued a temporary restraining order (TRO) enjoining DHS and its
components from enforcing and implementing Section C of the Interim Memorandum titled, *Immediate 100-Day
Pause on Removals. See Texas v. United States*, --- F. Supp. 3d ---, 2021 WL 247877 (S.D. Tex. 2021); *see also
Texas v. United States*, 2021 WL 411441 (S.D. Tex. Feb. 8, 2021) (extending TRO to February 23, 2021). On
February 23, 2021, the district court issued an order preliminarily enjoining DHS from "enforcing and implementing
the policies described in . . . Section C." *Texas v. United States*, 2021 WL 723856 (S.D. Tex. Feb. 23, 2021). In
light of the expiration of the 100-day period described in Section C, that case has been dismissed as moot. Similarly,
in light of the preliminary injunction, and the fact that the 100-day period described in the Interim Memorandum has
now expired, this interim OPLA guidance does not implement Section C of the Interim Memorandum.

[2] The Interim Memorandum revoked, as inconsistent with EO 13993, the memorandum from former Principal Legal
Advisor Tracy Short, *Guidance to OPLA Attorneys Regarding the Implementation of the President's Executive
Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017). OPLA attorneys should no
longer apply that prior guidance.

www.ice.gov

FOR OFFICIAL USE ONLY

DEFENDANTS'
EXHIBIT

AR-010

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 2 of 13

*Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Johnson
Memorandum). And, on May 27, 2021, Acting General Counsel Joseph B. Maher issued a
memorandum titled, *Implementing Interim Civil Immigration Enforcement Policies and
Priorities* (Maher Memorandum). In accordance with these memoranda, and pending the
outcome of the Secretary's review and any resulting policy guidance, I am providing this
additional interim direction to OPLA attorneys to guide them in appropriately executing the
Department's and ICE's interim enforcement and removal priorities and exercising prosecutorial
discretion.

Prosecutorial discretion is an indispensable feature of any functioning legal system. The exercise
of prosecutorial discretion, where appropriate, can preserve limited government resources,
achieve just and fair outcomes in individual cases, and advance the Department's mission of
administering and enforcing the immigration laws of the United States in a smart and sensible
way that promotes public confidence. In performing their duties, including through
implementation of this memorandum, OPLA attorneys should remain mindful that
"[i]mmigration enforcement obligations do not consist only of initiating and conducting prompt
proceedings that lead to removals at any cost. Rather, as has been said, the government wins
when justice is done."[3] As a result, they are both authorized by law and expected to exercise
discretion in accordance with the factors and considerations set forth in the Interim
Memorandum, the Johnson Memorandum, the Maher Memorandum, and in this guidance at all
stages of the enforcement process and at the earliest moment practicable in order to best
conserve prosecutorial resources and in recognition of the important interests at stake.

## I.    Enforcement and Removal Priority Cases

The Johnson Memorandum identifies three categories of cases that are presumed to be
enforcement and removal priorities for ICE personnel. Subject to preapproval from supervisory
personnel, other civil immigration enforcement or removal actions also may be deemed
priorities. OPLA attorneys assigned to handle exclusion, deportation, and removal proceedings
are directed to prioritize agency resources consistent with those presumed priorities and other
matters approved as priorities under the Johnson Memorandum or by their Chief Counsel. The
presumed priority categories are:

1.    **National Security**. Noncitizens[4] who have engaged in or are suspected of

---

[3] *Matter of S-M-J-*, 21 I&N Dec. 722, 727 (BIA 1997) (en banc). In remarks delivered at the Second Annual
Conference of United States Attorneys more than 80 years ago, Attorney General Robert H. Jackson said, "[n]othing
better can come out of this meeting of law enforcement officers than a rededication to the spirit of fair play and
decency that should animate the federal prosecutor. Your positions are of such independence and importance that
while you are being diligent, strict, and vigorous in law enforcement you can also afford to be just. Although the
government technically loses its case, it has really won if justice has been done." Robert H. Jackson, *The Federal
Prosecutor*, 24 J. AM. JUD. SOC'Y 18, 18-19 (1940).

[4] Consistent with ICE guidance, this memorandum uses the word "noncitizen" to refer to individuals described in
section 101(a)(3) of the Immigration and Nationality Act (INA). *See* Memorandum from Tae Johnson, ICE Acting
Director, *Updated Terminology for Communications and Materials* (Apr. 19, 2021). OPLA attorneys should
familiarize themselves with this ICE guidance and use the appropriate terminology set forth therein when engaged in
outreach efforts, drafting internal documents, and communicating with stakeholders, partners, and the general

**FOR OFFICIAL USE ONLY**

terrorism or espionage or terrorism-related or espionage-related activities, or whose apprehension, arrest, or custody, is otherwise necessary to protect the national security of the United States.[5]

2. **Border Security**. Noncitizens who were apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020, or who were not physically present in the United States before November 1, 2020.

3. **Public Safety**. Noncitizens who have been convicted of an "aggravated felony," as that term is defined in section 101(a)(43) of the Immigration and Nationality Act (INA), or who have been convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or who are not younger than 16 years of age and intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization; **and** are determined to pose a threat to public safety.[6]

Neither the presumed priorities nor the guidance regarding other priority cases subject to preapproval are intended to require or prohibit taking or maintaining a civil immigration enforcement or removal action against any individual noncitizen. Rather, OPLA attorneys are expected to exercise their discretion thoughtfully, consistent with ICE's important national security, border security, and public safety mission. Civil immigration enforcement and removal efforts involving a noncitizen whose case fits within the three areas just listed are presumed to be a justified allocation of ICE's limited resources. Enforcement and removal efforts may also be justified in other cases, under appropriate circumstances.[7] Prioritization of finite agency

---

public. Formal legal terminology (e.g., "alien," "alienage") should continue to be used by OPLA attorneys when appearing before judicial and quasi-judicial tribunals, and when quoting or citing to sources of legal authority or other official documents like immigration forms.

[5] For purposes of the national security presumed enforcement priority, the terms "terrorism or espionage" and "terrorism-related or espionage-related activities" should be applied consistent with (1) the definitions of "terrorist activity" and "engage in terrorist activity" in section 212(a)(3)(B)(iii)-(iv) of the INA, and (2) the manner in which the term "espionage" is generally applied in the immigration laws. In evaluating whether a noncitizen's "apprehension, arrest, and/or custody, or removal is otherwise necessary to protect" national security, officers and agents should determine whether a noncitizen poses a threat to United States sovereignty, territorial integrity, national interests, or institutions. General criminal activity does not amount to a national security threat.

[6] In evaluating whether a noncitizen currently "pose[s] a threat to public safety," consideration should be given to the extensiveness, seriousness, and recency of the criminal activity, as well as to mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available. *See* Johnson Memorandum at 5.

[7] As reflected in the Johnson Memorandum, Field Office Director (FOD) or Special Agent in Charge (SAC) approval is generally required in advance of civil immigration enforcement or removal actions taken by ICE officers and agents in cases *other than* presumed priority cases. Where exigent circumstances and public safety concerns make it impracticable to obtain pre-approval for an at-large enforcement action (e.g., where a noncitizen poses an imminent threat to life or an imminent substantial threat to property), approval should be requested within 24 hours following the action. *See* Johnson Memorandum at 6.

**FOR OFFICIAL USE ONLY**

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 4 of 13

resources is a consideration in all civil immigration enforcement and removal decisions, including but not limited to the following:

- Deciding whether to issue a detainer, or whether to assume custody of a noncitizen subject to a previously issued detainer;

- Deciding whether to issue, reissue, serve, file, or cancel a Notice to Appear (NTA);

- Deciding whether to focus resources only on administrative violations or conduct;

- Deciding whether to stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;

- Deciding whether to detain or release from custody subject to conditions or on the individual's own recognizance;

- Deciding whether to settle, dismiss, oppose or join in a motion on a case, narrow the issues in dispute through stipulation, or pursue appeal in removal proceedings;

- Deciding when and under what circumstances to execute final orders of removal; and

- Deciding whether to grant deferred action or parole.

This non-exhaustive list of civil immigration enforcement and removal decisions identifies opportunities at every stage of the process to ensure the most just, fair, and legally appropriate outcome, whether that outcome is a grant of relief, an order of removal, or an exercise of discretion that allows the noncitizen to pursue immigration benefits outside the context of removal proceedings. This memorandum provides interim guidance regarding the following enforcement decisions within OPLA's purview: filing or canceling an NTA; moving to administratively close or continue proceedings; moving to dismiss proceedings; pursuing appeal; joining in a motion to grant relief or to reopen or remand removal proceedings and entering stipulations; and taking a position in bond proceedings, as discussed below.[8] While discretion may be exercised at any stage of the process and changed circumstances for an individual denied prosecutorial discretion at one stage may warrant reconsideration at a later stage, discretion generally should be exercised at the earliest point possible, once relevant facts have been established to properly inform the decision.

---

[8] While resources should be allocated to the presumed priorities enumerated above, "nothing in [the Interim M]emorandum prohibits the apprehension or detention of individuals unlawfully in the United States who are not identified as priorities herein." Interim Memorandum at 3. *See also* Johnson Memorandum at 3 ("[I]t is vitally important to note that the interim priorities do not require or prohibit the arrest, detention, or removal of any noncitizen."); Maher Memorandum at 3 ("Neither the presumed priorities nor the guidance regarding other priority cases subject to preapproval are intended to require or prohibit taking or maintaining a civil immigration enforcement action against an individual noncitizen."). OPLA may dedicate its resources to pursuing enforcement action against a noncitizen who does not fall into one of the presumed enforcement priorities where the FOD or SAC has approved taking enforcement action in the case, where the NTA-issuing agency has exercised its own discretion to prioritize the noncitizen for enforcement under the Interim Memorandum, or where the Chief Counsel, in their discretion, decides that OPLA resources should be committed to the case.

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 5 of 13

This memorandum is intended to provide guidance pending completion of the DHS-wide comprehensive review of civil immigration enforcement and removal policies and practices contemplated in the Interim Memorandum. To that end, additional guidance will be forthcoming.

## II.     Prosecutorial Discretion

OPLA will continue to fulfill its statutory responsibility as DHS's representative before the Executive Office for Immigration Review (EOIR) with respect to exclusion, deportation, and removal proceedings. *See* 6 U.S.C. § 252(c). In that capacity, prosecutorial discretion plays an important role in OPLA's enforcement decision making. The following general guidance on prosecutorial discretion should inform how OPLA attorneys apply the enforcement priorities of DHS and ICE.

OPLA attorneys may exercise prosecutorial discretion in proceedings before EOIR, subject to direction from their chain of command and applicable guidance from DHS. In exercising such discretion, OPLA attorneys will adhere to the enduring principles that apply to all of their activities: upholding the rule of law; discharging duties ethically in accordance with the law and professional standards of conduct; following the guidelines and strategic directives of senior leadership; and exercising considered judgment and doing justice in individual cases, consistent with DHS and ICE priorities.

Prosecutorial discretion is the longstanding authority of an agency charged with enforcing the law to decide where to focus its resources and whether or how to enforce, or not to enforce, the law against an individual. In the context of OPLA's role in the administration and enforcement of the immigration laws, prosecutorial discretion arises at different stages of the removal process, takes different forms, and applies to a variety of determinations. As the Supreme Court explained more than two decades ago when discussing the removal process, "[a]t each stage the Executive has discretion to abandon the endeavor . . . ."[9]

OPLA's policy is to exercise prosecutorial discretion in a manner that furthers the security of the United States and the faithful and just execution of the immigration laws, consistent with DHS's and ICE's enforcement and removal priorities. While prosecutorial discretion is not a formal program or benefit offered by OPLA, OPLA attorneys are empowered to exercise prosecutorial discretion in their assigned duties consistent with this guidance. Among other decisions, the exercise of discretion also generally includes whether to assign an attorney to represent the department in a particular case. *See* 8 C.F.R. § 1240.2(b) (creating expectation that DHS will assign counsel to cases involving mental competency, noncitizen minors, and contested removability, but that otherwise, "in his or her discretion, whenever he or she deems such assignment necessary or advantageous, the General Counsel *may* assign a [DHS] attorney to any other case at any stage of the proceeding") (emphasis added). OPLA Chief Counsel are permitted to exercise this discretion on my behalf, in appropriate consultation with their chain of command.

In determining whether to exercise prosecutorial discretion, OPLA should consider relevant aggravating and mitigating factors. Relevant mitigating factors may include a noncitizen's length

---

[9] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999).

FOR OFFICIAL USE ONLY

AR_DHSP_00000081

of residence in the United States; service in the U.S. military; family or community ties in the United States; circumstances of arrival in the United States and the manner of their entry; prior immigration history; current immigration status (where lawful permanent resident (LPR) status generally warrants greater consideration, but not to the exclusion of other noncitizens depending on the totality of the circumstances); work history in the United States; pursuit or completion of education in the United States; status as a victim, witness, or plaintiff in civil or criminal proceedings; whether the individual has potential immigration relief available; contributions to the community; and any compelling humanitarian factors, including poor health, age, pregnancy, status as a child, or status as a primary caregiver of a seriously ill relative in the United States. Relevant aggravating factors may include criminal history, participation in persecution or other human rights violations, extensiveness and seriousness of prior immigration violations (e.g., noncompliance with conditions of release, prior illegal entries, removals by ICE), and fraud or material misrepresentation. Where a criminal history exists, OPLA should consider the extensiveness, seriousness, and recency of the criminal activity, as well as any indicia of rehabilitation; extenuating circumstances involving the offense or conviction; the time and length of sentence imposed and served, if any; the age of the noncitizen at the time the crime was committed; the length of time since the offense or conviction occurred; and whether subsequent criminal activity supports a determination that the noncitizen poses a threat to public safety. These factors are not intended to be dispositive or exhaustive. Discretion should be exercised on a case-by-case basis considering the totality of the circumstances.

Requests for prosecutorial discretion may be made in accordance with the instructions provided in Section IX of this guidance. Where a request for prosecutorial discretion is made, the OPLA attorney handling the case must document that request in PLAnet, identifying the requester and the substance of the request and uploading any supporting documentation consistent with standard operating procedures (SOPs).[10] Based on my experience working with you over the past few months, I believe strongly in the professionalism, legal skill, and judgment of OPLA's attorneys, working through their supervisors to advise our clients and manage an enormous workload with limited resources. I trust and expect that all OPLA field attorneys, under the leadership of our Chief Counsel, will work strenuously to ensure the timely and appropriate exercise of discretion in meritorious removal cases. That being said, given the tremendous importance of achieving just and correct outcomes on these issues, it is entirely permissible for any OPLA attorney to raise prosecutorial discretion decisions through their chain of command to OPLA headquarters (HQ) for additional review or discussion.

Appropriate exercises of prosecutorial discretion are in the mutual interest of both the person benefitting from the exercise of discretion and the government itself. This mutual interest is no less significant because a noncitizen does not affirmatively request prosecutorial discretion. In the absence of an affirmative request for prosecutorial discretion by a noncitizen or a noncitizen's representative, OPLA attorneys should nonetheless examine the cases to which they are assigned to determine independently whether a favorable exercise of discretion may be

---

[10] If the case involves classified information, the OPLA attorney must transmit such information only in accordance with the DHS Office of the Chief Security Officer Publication, *Safeguarding Classified & Sensitive But Unclassified Information Reference Pamphlet* (Feb. 2012, or as updated), and all other applicable policies governing the handling of classified information.

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 7 of 13

appropriate. This affirmative duty to evaluate assigned cases is central to an OPLA attorney's job. Chief Counsel should include in their local SOPs ways to address these cases including how OPLA attorneys should document their affirmative consideration of prosecutorial discretion in PLAnet.

### III.   Notices to Appear

When a legally sufficient, appropriately documented NTA has been issued by a DHS component consistent with the component's issuing and enforcement guidelines,[11] it will generally be filed with the immigration court and proceedings litigated to completion unless the Chief Counsel exercises prosecutorial discretion based on their assessment of the case.[12] As prosecutorial discretion is expected to be exercised at all stages of the enforcement process and at the earliest moment practicable, it may be appropriate for the Chief Counsel to conclude that a legally sufficient, appropriately documented administrative immigration case warrants non-filing of an NTA. (b)(5)

(b)(5)

(b)(5)            Where an NTA is issued but not filed with the immigration court pursuant to this section, OPLA should document the reasoning for this position in PLAnet and the OPLA Field Location should work with its local Enforcement and Removal Operations (ERO) Field Office to cancel the NTA and inform the noncitizen of the cancellation.[13]

### IV.   Administrative Closure and Continuance of Proceedings

In the past, OPLA had broad authority to exercise prosecutorial discretion by agreeing to administrative closure of cases by EOIR. However, due to conflicting court of appeals decisions

---

[11] This includes NTAs submitted to OPLA by ICE operational components as well as U.S. Citizenship and Immigration Services (USCIS) and U.S. Customs and Border Protection (CBP) for review. "Appropriately documented" in this context means that, in OPLA's litigation judgment, sufficient information has been provided by the NTA-issuing component to carry any DHS burden of proof. *See* INA § 240(c), 8 C.F.R. § 1240.8.

[12] Separate and apart from the enforcement priority framework outlined in the Interim Memorandum and Johnson Memorandum, certain noncitizens have an established right to be placed into removal proceedings. *See, e.g.*, 8 C.F.R. §§ 208.14(c)(1) (requiring referral for removal proceedings of a removable noncitizen whose affirmative asylum application is not granted by USCIS); 216.4(d)(2) (requiring NTA issuance to noncitizen whose joint petition to remove conditional basis of LPR status is denied by USCIS); 216.5(f) (same; USCIS denial of application for waiver of the joint petition requirement). In other cases, USCIS may issue an NTA on a discretionary basis to a noncitizen who wishes to pursue immigration benefits before the immigration court. Although such cases do not fall within the priority framework, absent an affirmative request by the noncitizen *prior to the merits hearing* for the favorable exercise of prosecutorial discretion to dismiss removal proceedings, OPLA attorneys should generally litigate them to completion. If such noncitizens are ordered removed, requests for prosecutorial discretion would then most properly be made to ERO for evaluation in accordance with the Department's and ICE's stated priorities.

[13] The NTA cancellation regulation vests immigration officers who have the authority to *issue* NTAs with the authority to also cancel them. 8 C.F.R. § 239.2(a). The regulation expresses a preference for certain NTAs to be cancelled by the same officer who issued them "unless it is impracticable" to do so. *Id.* § 239.2(b). Given the enormous size of the EOIR docket, current OPLA staffing levels, and complexities associated with routing any significant number of NTAs back to specific issuing officers stationed around the country, it would be impracticable to require OPLA attorneys to do so. By contrast, the local ERO Field Offices with which OPLA Field Locations routinely interact are well suited to assist with this function promptly and efficiently.

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 8 of 13

on the validity of *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018) (limiting administrative closure by EOIR adjudicators to circumstances where a previous regulation or judicially approved settlement expressly authorizes such an action), the availability of administrative closure as a form of prosecutorial discretion for ICE and a tool of docket management for EOIR is limited in certain jurisdictions for certain types of cases.[14] Nevertheless, OPLA retains authority to handle pending cases on EOIR's docket by deciding whether to agree to a continuance for "good cause shown" under 8 C.F.R. § 1003.29, *see also Matter of L-A-B-R-*, I&N Dec. 405 (A.G. 2018) (interpreting this regulation), and whether to seek, oppose, or join in a motion for dismissal of proceedings pursuant to 8 C.F.R. § 1239.2(c).

The presumed priorities outlined above will be a significant factor informing the position that OPLA attorneys take in response to continuance motions made by noncitizens in removal proceedings. Indeed, given the comprehensive review of immigration enforcement and removal policies and practices directed by Section A of the Interim Memorandum, OPLA attorneys are authorized to take the general position that "good cause" exists in cases in which noncitizens who fall outside the presumed priorities seek to have their cases continued to await the outcome of that comprehensive review.[15] Continuing cases in these circumstances may conserve OPLA resources in cases where the ultimate arrest, detention, and removal of a noncitizen are unlikely. Accordingly, while immigration judges (IJs) will make case-by-case assessments whether continuance motions are supported by "good cause shown" under 8 C.F.R. § 1003.29, and OPLA attorneys should assess each continuance motion on its own terms, in the absence of serious aggravating factors, the fact that a noncitizen is not a presumed priority should weigh heavily in favor of not opposing the noncitizen's motion. Before opposing a continuance in such cases, OPLA attorneys should confer with their supervisors. The reason for opposing the motion should also be documented in PLAnet.

## V.     Dismissal of Proceedings

With approximately 1.3 million cases on the immigration courts' dockets nationwide, and the varied procedural postures of such cases, including many set for future merits hearings on relief or protection from removal, OPLA will cover, at a later date and in a comprehensive fashion, how to address the potential dismissal of proceedings consistent with its limited resources and DHS and ICE guidance. The size of the court backlog and extraordinary delays in completing cases impede the interests of justice for both the government and respondents alike and undermine public confidence in this important pillar of the administration of the nation's

---

[14] *Compare Hernandez-Serrano v. Barr*, 981 F.3d 459 (6th Cir. 2020) (agreeing with *Castro-Tum*), *with Arcos Sanchez*, 2021 WL 1774965, --- F.3d --- (3d Cir. 2021) (rejecting *Castro-Tum* and finding that EOIR regulations giving broad case management authority to its adjudicators includes administrative closure authority), *Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020) (Coney Barrett, J.) (same), *and Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019) (same). Notwithstanding this variation in circuit law, administrative closure remains available under *Castro-Tum* for T and V nonimmigrant visa applicants. *See* 8 C.F.R. §§ 1214.2(a) (expressly allowing for administrative closure for noncitizens seeking to apply for T nonimmigrant status), 1214.3 (same; V nonimmigrant status).

[15] This does not imply that "good cause" cannot exist in cases of noncitizens who fall into the presumed priority categories or are otherwise a civil immigration enforcement or removal priority. OPLA attorneys retain discretion to, as appropriate, agree to continuances in such cases.

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 9 of 13

immigration laws. In advance of future guidance, cases that generally will merit dismissal in the absence of serious aggravating factors include:

### 1. *Military Service Members or Immediate Relatives Thereof*[16]

A favorable exercise of prosecutorial discretion (i.e., concurrence with or non-opposition to a motion for dismissal of proceedings without prejudice) generally will be appropriate if a noncitizen or immediate relative is a current or former member (honorably discharged) of the Armed Forces, including the U.S. Army, Air Force, Navy, Marine Corps, Coast Guard, and Space Force, or a member of a reserve component of the Armed Forces or National Guard, particularly if the individual may qualify for U.S. citizenship under sections 328 or 329 of the INA. [17]

### 2. *Individuals Likely to be Granted Temporary or Permanent Relief*

When a noncitizen has a viable avenue available to regularize their immigration status outside of removal proceedings, whether through temporary or permanent relief, it generally will be appropriate to move to dismiss such proceedings without prejudice so that the noncitizen can pursue that relief before the appropriate adjudicatory body. [18] This may be appropriate where, for instance, the noncitizen is the beneficiary of an approved Form I-130, Petition for Alien Relative, and appears prima facie eligible for either adjustment of status under INA section 245 or an immigrant visa through consular processing abroad, including in conjunction with a provisional waiver of unlawful presence under 8 C.F.R. § 212.7(e), immediately or in the near future; appears prima facie eligible to register for Temporary Protected Status (TPS); [19] or is a child who appears prima facie eligible to pursue special immigrant juvenile status under INA section 101(a)(27) and 8 C.F.R. § 204.11. In such a circumstance, the exercise of prosecutorial discretion itself can help to promote the integrity of our immigration system by enhancing the ability of certain noncitizens to come into compliance with our immigration laws.

### 3. *Compelling Humanitarian Factors*

The favorable exercise of prosecutorial discretion—including agreeing to dismissal of proceedings without prejudice—generally will be appropriate when compelling humanitarian factors become apparent during NTA review or litigation of the case. While some factors will weigh more heavily than others, this can include cases where, for instance, the noncitizen has a serious health condition, is elderly, pregnant, or a minor; is the primary caregiver to, or has an

---

[16] *See* Email from Kenneth Padilla, DPLA, Field Legal Operations, to all OPLA attorneys, *Refresher Guidance Regarding United States Veterans and Military Service Members in Removal* (Nov. 18, 2019).

[17] Relatedly, OPLA attorneys must continue to follow ICE guidance related to the evaluation of claims to U.S. citizenship. *See* ICE Directive 16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015).

[18] DHS regulations expressly contemplate joint motions to terminate removal proceedings in appropriate cases in which the noncitizen is seeking to apply for U nonimmigrant status. *See* 8 C.F.R. § 214.14(c)(1)(i).

[19] Stipulation to TPS in such cases may also be an option, in the exercise of discretion. *Cf. Matter of D-A-C-*, 27 I&N. Dec. 575 (BIA 2019) (discussing discretionary authority of IJs to grant TPS); Section VII, *infra*.

FOR OFFICIAL USE ONLY

AR_DHSP_00000085

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 10 of 13

immediate family or household member who is, known to be suffering from serious physical or mental illness; is a victim of domestic violence, human trafficking, or other serious crime;[20] came to the United States as a young child and has since lived in the United States continuously; or is party to significant collateral civil litigation (e.g., family court proceedings, non-frivolous civil rights or labor claims).

### 4. Significant Law Enforcement or Other Governmental Interest

Where a noncitizen is a cooperating witness or confidential informant or is otherwise significantly assisting state or federal law enforcement, it may be appropriate in certain cases to agree to the dismissal of proceedings without prejudice. "Law enforcement" in this context includes not only conventional criminal law enforcement, but also enforcement of labor and civil rights laws. In exercising discretion related to law enforcement equities, OPLA attorneys should be guided by the perspectives of the relevant investigating agency components (e.g., the Office of Inspector General, Office for Civil Rights and Civil Liberties, Department of Justice Immigrant and Employee Rights Section, Department of Labor, National Labor Relations Board, Equal Employment Opportunity Commission, other federal agencies, ERO, Homeland Security Investigations, and any relevant state counterparts). Additionally, such law enforcement entities may have tools at their disposal that OPLA does not, including stays of removal, deferred action, T and U nonimmigrant status law enforcement certification, and requests for S nonimmigrant classification. In any event, national security, border security, and public safety are paramount in deciding whether to continue litigating removal proceedings.

### 5. Long-Term Lawful Permanent Residents

A favorable exercise of prosecutorial discretion should also be considered for LPRs who have resided in the United States for many years, particularly when they acquired their LPR status at a young age and have demonstrated close family and community ties. Dismissal of such cases that do not present serious aggravating factors will allow the noncitizen to maintain a lawful immigration status and conserve finite government resources.

When OPLA agrees to dismissal of removal proceedings as an exercise of prosecutorial discretion in the categories above, the reasoning for this position should be recorded in PLAnet.

## VI. Pursuing Appeal

In our immigration system, DHS initiates removal proceedings while IJs and the Board of Immigration Appeals (BIA) exercise the Attorney General's delegated authority to adjudicate issues of removability and relief and protection from removal. OPLA attorneys continue to possess the discretion to take legally viable appeals of IJ decisions and make appropriate legal arguments in response to noncitizen appeals and motions.[21] Appellate advocacy should generally

---

[20] See generally ICE Directive No. 10076.1, Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (June 17, 2011).

[21] OPLA headquarters divisions should continue to coordinate with impacted DHS Office of the General Counsel (OGC) headquarters and component counsel offices when preparing briefs and motions in significant litigation.

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 11 of 13

focus on priority cases—national security, border security, and public safety. Of course, other considerations, such as significant aggravating and mitigating factors and the need to seek clarity on an important legal issue, are appropriate for OPLA attorneys to take into account, consistent with direction from their respective Chief Counsel.

Consistent with any local guidance issued by their respective Chief Counsel,[22] OPLA attorneys may waive appeal in a case that is not a priority. OPLA attorneys may also decline to appeal where there is little likelihood of success before the BIA. While OPLA attorneys may reserve appeal to ensure the articulation of a fully reasoned decision by an IJ to help inform whether the appeal should ultimately be perfected, OPLA attorneys may also waive appeal, where appropriate, in the interest of judicial efficiency and in recognition of limited resources.

OPLA Field Locations generally coordinate appellate advocacy before the BIA with the Immigration Law and Practice Division (ILPD).[23] OPLA Field Locations and ILPD should continue to work together, along with any other relevant OPLA HQ divisions, to craft strong and nationally consistent appellate work product. Again, in committing OPLA resources to perfecting appeal and drafting appellate pleadings, Field Locations and ILPD should focus their efforts on presumed priority cases. Furthermore, to ensure efficiency in litigation, OPLA attorneys should generally limit briefing schedule extension requests before the BIA and should not request briefing extensions in detained matters without prior approval from a supervisor. However, it is permissible to agree to briefing extension requests filed by non-detained noncitizens whose cases are not presumed priorities.

### VII.   Joining in Motions for Relief and Motions to Reopen and Entering Stipulations

In order to conserve resources and expedite resolution of a case—as well as where doing so would fulfill the duty to do justice and achieve the best outcome—OPLA attorneys have the discretion to join motions for relief (oral or written), consistent with any local guidance issued by their respective Chief Counsel. An OPLA attorney should be satisfied that the noncitizen qualifies for the relief sought under law and merits relief as a matter of discretion or qualifies

---

[22] Chief Counsel should review existing local practice guidance to ensure that it conforms to current interim enforcement priorities and amend such guidance where necessary. Similarly, any new local practice guidance should conform to this memorandum and the presumed priorities.

[23] *See* Gwendolyn Keyes Fleming, *Promoting Excellence in OPLA's Advocacy Before the Board of Immigration Appeals* (Feb. 22, 2016); Email Message from Kenneth Padilla and Adam Loiacono, *Final Rule – Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure* (Jan. 22, 2021).(b)(5)
(b)(5)

(b)(5)                                                                                                       Further,
special procedures apply in the context of national security and human rights violator cases. *See* Email Message from Riah Ramlogan, *OPLA Supplemental Guidance on the Proper Handling of National Security and Human Rights Violator Cases* (May 28, 2015), *as supplemented and modified by* OPLA Memorandum, *Proper Handling of OPLA National Security (NS) Cases* (May 21, 2015) and OPLA Memorandum, *Proper Handling of OPLA Human Rights Violator (HRV) Cases* (May 21, 2015).

### FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 12 of 13

under law for protection from removal when agreeing to such motions.[24] Such decisions to join in motions should be made in a manner that facilitates the efficient operation of OPLA Field Locations in immigration court. The same applies with respect to narrowing disputed issues through stipulation in order to promote fair and efficient proceedings.

OPLA intends to address in future guidance when to join in motions to reopen cases with final removal orders. In the meantime, OPLA should continue addressing requests for joint motions to reopen on a case-by-case basis, giving favorable consideration to cases that are not priorities and where dismissal would be considered under Section V, *supra*.

## VIII.   Bond Proceedings

OPLA attorneys appearing before EOIR in bond proceedings must follow binding federal and administrative case law regarding the standards for custody redeterminations.[25] OPLA attorneys should also make appropriate legal and factual arguments to ensure that DHS's interests, enforcement priorities, and custody authority are defended. In particular, in bond proceedings OPLA attorneys should give due regard to custody determinations made by an authorized immigration officer pursuant to 8 C.F.R. § 236.1(c)(8), while not relinquishing the OPLA attorney's own responsibility to consider and appropriately apply the factors and considerations set forth in the Interim Memorandum, the Johnson Memorandum, the Maher Memorandum, and this guidance. Where a noncitizen produces new information that credibly mitigates flight risk or danger concerns, OPLA attorneys have discretion to agree or stipulate to a bond amount or other conditions of release with a noncitizen or their representative, and to waive appeal of an IJ's order redetermining the conditions of release in such cases.[26]

---

[24] *See, e.g.*, INA §§ 208 (asylum), 240A(a) (cancellation of removal for certain permanent residents), 240A(b) (cancellation of removal and adjustment of status for certain nonpermanent residents), 240B (voluntary departure), 245 (adjustment of status), 249 (registry). Additionally, OPLA attorneys represent DHS in cases where noncitizens apply for withholding of removal under INA section 241(b)(3) and protection under the regulations implementing U.S. obligations under Article 3 of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). *See, e.g.*, 8 C.F.R. §§ 1208.16-.18. Withholding and CAT protection both impose significant burdens of proof (i.e., qualifying mistreatment must be "more likely than not" to occur). When a noncitizen moves to reopen their proceedings to pursue such non-discretionary protection, and the motion is supported by evidence that strongly suggests the noncitizen will be able to meet their burden, OPLA attorneys should ordinarily not oppose reopening and can also consider joining in such motions, as resources permit.

[25] *See, e.g., Matter of R-A-V-P-*, 27 I&N Dec. 803, 804-05 (BIA 2020) (assessing whether respondent had met burden to demonstrate that he did not pose a risk of flight in INA section 236(a) discretionary detention case); *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018) (addressing interplay between flight risk and dangerousness considerations in INA section 236(a) discretionary detention case involving recidivist drunk driver); *Matter of Kotliar*, 24 I&N Dec. 124 (BIA 2007) (discussing general parameters of INA section 236(c) mandatory detention).

[26] DHS and EOIR regulations recognize that, as a prerequisite for even being considered for discretionary release by an ICE officer under INA section 236(a), a noncitizen "must demonstrate *to the satisfaction of the officer* that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (emphasis added). Additionally, prior to agreeing to non-monetary conditions of release, OPLA attorneys should consult with their local ERO Field Offices to ensure that such conditions are practicable (e.g., GPS monitoring, travel restrictions).

FOR OFFICIAL USE ONLY

OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 13 of 13

IJ custody redetermination decisions that are factually or legally erroneous are subject to appeal to the BIA. Decisions on whether to appeal or to continue to prosecute an appeal should be guided by the presumed priorities and the sound use of finite resources. *See* Section VI, *supra*. It may also be appropriate for an OPLA Field Location to seek a discretionary or automatic stay under 8 C.F.R. § 1003.19(i) in conjunction with a DHS bond appeal, particularly where issues of public safety are implicated. OPLA Field Locations should work closely with ILPD and other relevant OPLA HQ divisions to identify instances where use of this authority may be warranted.[27]

### IX.  Responding to Inquiries

Each OPLA Field Location should maintain email inboxes dedicated to receiving inquiries related to this memorandum, including requests for OPLA to favorably exercise its discretion, and socialize the existence and use of these mailboxes with their respective local immigration bars including non-governmental organizations assisting or representing noncitizens before EOIR. OPLA Field Locations and sub-offices should strive to be as responsive to such inquiries as resources permit.

### X.  Oversight and Monitoring

This memorandum serves as interim guidance, and OPLA's experience operating under this guidance will inform the development of subsequent guidance aligning with the outcome of the comprehensive review directed by the Interim Memorandum. It is therefore critical that prosecutorial discretion decision-making information be promptly and accurately documented in PLAnet and that SOPs be implemented to ensure consistent PLAnet recordkeeping. Field Legal Operations (FLO) should issue such SOPs within two weeks of this memorandum. FLO's regular review of PLAnet and the SOPs will form the basis of recommendations on process improvements, if and as necessary.

**Official Use Disclaimer**

This memorandum, which may contain legally privileged information, is intended *For Official Use Only*. It is intended solely to provide internal direction to OPLA attorneys and staff regarding the implementation of Executive Orders and DHS guidance. It is not intended to, does not, and may not be relied upon to create or confer any right or benefit, substantive or procedural, enforceable at law or equity by any individual or other party, including in removal proceedings or other litigation involving DHS, ICE, or the United States, or in any other form or manner whatsoever. Likewise, this guidance does not and is not intended to place any limitations on DHS's otherwise lawful enforcement of the immigration laws or DHS's litigation prerogatives.

---

[27] Existing OPLA guidance on automatic and discretionary stays remains in effect. *See, e.g.*, Barry O'Melinn, *Revised Procedures for Automatic Stay of Custody Decisions by Immigration Judges* (Oct. 26, 2006).

FOR OFFICIAL USE ONLY