## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS; STATE OF LOUISIANA, <br><br>     *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br>     *Defendants*. | Civ. Action No. 6:21-cv-16 |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE AND MOTION TO EXCLUDE TESTIMONY

Each witness and piece of evidence the States offer is relevant and admissible. The Court should deny the Defendants' motions seeking rulings to the contrary.

**A. Plaintiffs' proffered evidence is relevant.**

Each of the States' exhibits tends to affect the likelihood that a fact of consequence is true. *See* Fed. R. Evid. 401. Each of them should be admitted.

***Extra-record evidence.*** Extra-record evidence is admissible when the agency did not adequately explain its action or consider relevant factors, when the case is sufficiently complex that the Court requires additional information, when evidences arises after the agency action demonstrating the action was incorrect, and when relief is at issue. *See Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *Davis Mtn. Trans-Pecos Heritage Assn. v. FAA*, 116 Fed. Appx. 3, 16 (5th Cir. 2004) (district court citing these instances "correctly stated the law"). This case involves each of those exceptions. Most prominently, the States' evidence is relevant to show the harm that

Defendants' policy is causing them and to inform the scope of the relief necessary to remedy it.

*Exhibits T, V, and W* are reports and documents supporting Texas's argument that alien recidivists remain a concern and providing general background and support for Sheriff Bill Weybourn's specific example of Tarrant County, where, in January 2022, 90% of inmates with immigration detainers were recidivists. *See* Exh. E at ¶ 8.

*Exhibits DD and EE* relate to DHS's termination of MPP and its reasons for doing so. They are relevant to demonstrate the propriety of enjoining the Defendants' policy. As the States have pointed out, *see* ECF 128 at 13–14, comparing the documents terminating MPP (which was enjoined, *see Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021)) with the documents implementing the Defendants' prioritization policy shows that the logic that animates the enjoining of one animates the enjoining of the other.

*Exhibit C* and the related evidence, as Defendants recognize, shows that, under the Defendants' now-superseded prioritization policy, aliens who should have been detained were being released. It is relevant to show the harm arising from errors in the previous policy, which will continue due to the similarity of those errors to the errors in the current policy.

*Exhibit FF and Robert Moore's testimony* are emails to Moore, a TDCJ liaison to ICE, in which ICE personnel state that detainers of aliens are being dropped because of Defendants' prioritization policy. They are relevant: they show that Defendants' policy is in fact leading to the release of aliens whom the law requires be detained and expelled. And they are not cumulative: There is no similar evidence. Indeed, the Defendants also seek to exclude the evidence that they claim is being accumulated upon on the basis that it is mere hearsay, an objection they cannot raise regarding Exhibit FF and Moore. *See* ECF 169 at II.

**B. Plaintiffs' proffered evidence is not inadmissible hearsay.**

*Jason Clark's Declaration* discusses communications from ICE agents to TDCJ personnel in which the agents confirm that detainers are being dropped because of Defendants' prioritization policy. That testimony is not hearsay and would be excepted from the hearsay rule even if it were. First, Clark is testifying as to statements made by individuals who represent one or more of the Defendants, who believed those statements to be true and were authorized to make them in the course of their employment by the Defendants. They are therefore not hearsay. *See* Fed. R. Evid. 801(d)(2), Second, Clark's testimony is about records of regularly conducted activities—information that was regularly collected and recorded at or near the time by a person with knowledge in the course of regular activities at TDCJ, was conveyed to Clark in the course of his regularly conducted activity with TDCJ, and on which Clark regularly relied in conducting that activity. They are therefore exempt from the hearsay rule. *See* Fed. R. Evid. 803(6).

**C. Tom Hohman's testimony is admissible.**

**1. The States properly designated Hohman.**

The Defendants' first complaint about Tom Hohman is that he was not properly designated as an expert. ECF 171 at ¶ II(A)(1). That is wrong: The States included Hohman on their timely filed witness list, *see* ECF 157, 175, and they included Hohman's declaration on their timely filed exhibit list and gave a copy of it to the Defendants. *See* ECF 158, 174. That report includes a complete statement of Hohman's testimony, including his opinions, and the bases and reasons for them; the facts he considered; exhibits that support his testimony, *see* Exh. D2–D6; his qualifications, including a CV, *see* Exh. D, ¶¶ 1–9; and a citation to his only publication from the last 10 years, the book *Defend the Border and Save Lives: Solving Our Most Important Humanitarian and Security Crisis* (2020), *id.*, ¶ 10. In

short, that is, the States timely disclosed to the Defendants every piece of information that they are required to disclose to enable the Defendants to prepare for expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(A)–(B), (D)(i). [1]

The Defendants' objection thus boils down to an assertion that they were denied the opportunity to prepare for Hohman's testimony because he (and his declaration) weren't properly titled on the witness and exhibit lists. Tosh. They got everything they were entitled to, got it on time, and even admit that they had already seen what it said. *See* ECF 171 at 1 fn.1. Their assertion of prejudice is a generic statement that they would have prepared for trial differently had the disclosures been different; they give as examples taking Hohman's deposition or designating a counter-expert. *Id.* at 3. But when the Court reset the trial deadline and offered the Defendants a chance to take depositions or designate witnesses, they declined. Indeed, even if one were to agree that the States should have designated Hohman differently, the Defendants' declining that opportunity means that the "touchstone of the [Court's] inquiry"—prejudice—is supported by zero data. Any prejudice they suffer now is not undue; it is of their own making and entitled to no consideration. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("it is consideration of prejudice to the opposing party that carries the greatest weight")

## 2. Hohman's testimony is admissible.

The States have designated Hohman to testify on all of the matters addressed in his declaration in general and two topics in particular: "the effects of the guidance challenged in this case on the enforcement efforts of ICE officers, and the capability of Defendants to increase their detention capacity." His testimony on those topics is both reliable and relevant.

---

[1]   Hohman has not testified as an expert in other cases and is not being compensated for his testimony, so there is nothing to disclose under (B)(v)–(vi).

As the Court noted in its preliminary-injunction opinion, crediting Hohman's testimony, he is "a former Acting Director of ICE with more than 32 years of service in the agency[.]" *Texas v. United States*, No. 6:21-cv-16, 2021 WL 3683913, *55 (S.D. Tex. Aug. 19, 2021). Among those 32 years of service are 4 years of service as a Border Patrol agent, 11 years as an INS Special Agent and Supervisory Special Agent, and 5 years "direct[ing] the day-to-day operations of seven local [ICE] offices, with more than 200 special agents and support personnel[.]" Exh. D, ¶ 5–7. That is, of those 32 years of service, 20 of them were spent as one of the agents who would be charged with following the challenged policy, a direct supervisor of those agents, and directing the operations of the field offices where those agents work. Another 8 of them were spent as the executive responsible for the "enforcement initiatives and components through which [ICE] identified and arrests removable aliens"—that is, as the executive responsible for the types of operations and policies at issue in this suit. *Id.* ¶ 8.

Experience and training are a sufficient basis for a witness to testify to "specialized knowledge [that] will help the trial of fact. . . ." Fed. R. Evid. 702(a). The Defendants do not bother to challenge Hohman on this score, instead complaining that he did not review "sufficient facts or data" and that his testimony does not identify the "reliable principles and methods" he employed to reach his conclusions. *See* ECF 171 at 5–6; Fed. R. Evid. 702(b)–(d). It is unclear what additional data the Defendants believe Hohman should have reviewed and what "methodology" they would have him employ, other than applying his experience to the facts he reviewed.

The Defendants complain that all Hohman reviewed were "antiquated" data reports from Fiscal Years 2019 and 2020—a nonsense complaint, as ICE has yet to

release a report for Fiscal Year 2021[2]—and the challenged policies, and they complain that he identified no particular methodology for reaching his conclusions. But what more should he have reviewed, and what other processes should he have employed, to form an opinion on how a typical ICE agent and ICE office would actually apply the challenged policy where the rubber meets the road? A sociologist or political scientist might have conducted a series of surveys and analyses that compared various iterations of enforcement policy to results on the ground, controlling for certain variables he judged confounding and regressing the numerical data he thereby generated to develop a statistically testable probability of how field agents and offices would operate. Hohman chose to live through three decades of such changes. He experienced how a typical ICE agent and office would react, supervised it, observed it, and accounted for it when writing policies himself. That is more than sufficient to qualify him to testify.

And, contra the Defendants, Hohman's testimony is relevant. As the Court has already recognized, Hohman is able to offer testimony about the real-world effects of the Defendants' policy—testimony that corroborates that it is a substantive, rather than an interpretive rule; that leads to the conclusion that the policy is the direct cause of actions by the Defendants' agents, which then cause the harm to the States. That testimony also goes to the scope of the injunction necessary to remedy that harm. To the extent Hohman's testimony identifies the problems in the policy that cause ICE agents to act in a manner that harms the States, the Court can craft the injunction to address that harm rather than blunderbussing all semblance of executive discretion. And even Hohman's testimony regarding the law and the wisdom of the Defendants' policy is admissible. One of the States' claims is that the

---

[2]   *See* ICE Statistics, www.ice.gov/remove/statistics (last visited February 2, 2022) (showing Fiscal Year 2020 ICE Enforcement and Removal Operations Report as the most recent year-end report)

Defendants wrongfully promulgated the policy without notice and comment. Hohman testifies that he would have offered his opinions as a comment had such a notice been posted; his testimony is therefore an example of the factual, policy, and legal concerns that the Defendants would have had to address had they followed the proper notice-and-comment procedures—and the lack of that consideration demonstrates that the policy was improperly adopted.

## CONCLUSION

The States of Texas and Louisiana respectfully request that the Court deny the Defendants' motion in limine and motion to exclude and overrule their evidentiary objections.

Dated: February 2, 2022                    Respectfully submitted,

KEN PAXTON                                 PATRICK K. SWEETEN
Attorney General of Texas                  Deputy Attorney General for Special Litigation
                                           *Attorney-in-Charge*
                                           Texas Bar No. 00798537
BRENT WEBSTER                              Southern District of Texas Bar No. 1829509
First Assistant Attorney
General
                                           WILLIAM T. THOMPSON
                                           Deputy Chief, Special Litigation Unit
JUDD E. STONE II                           Texas Bar No. 24088531
Solicitor General                          Southern District of Texas Bar No. 3053077

                                           *DRAFT*
                                           RYAN D. WALTERS
                                           Special Counsel
                                           Texas Bar No. 24105085
                                           Southern District of Texas Bar No. 3369185
                                           ryan.walters@oag.texas.gov

                                           ERIC A. HUDSON
                                           Senior Special Counsel

Texas Bar No. 24059977
Southern District of Texas Bar No. 1000759

LEIF A. OLSON
Special Counsel
Texas Bar No. 24032801
Southern District of Texas Bar No. 33695

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545

**COUNSEL FOR PLAINTIFF STATE OF TEXAS**

JEFF LANDRY
LOUISIANA ATTORNEY GENERAL

*/s/ Elizabeth B. Murrill*
ELIZABETH B. MURRILL
Solicitor General
JOSEPH S. ST. JOHN
Deputy Solicitor General
BENJAMIN WALLACE
Assistant Solicitor General

LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I certify that on February 2, 2022, this document was filed through the Court's CM/ECF system, which automatically serves all counsel of record.

*DRAFT*
RYAN D. WALTERS