UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF LOUISIANA<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>Defendants. | No. 6:21-cv-00016 |

**MEMORANDUM IN OPPOSITION TO THE
CONSIDERATION OF EXTRA-RECORD EVIDENCE**

I. **Introduction.**

For decades, the Supreme Court has repeatedly held that a district court's review of agency action is presumptively limited to the administrative record, "not some new record made initially in the reviewing court" (the "record rule"). *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Thus, in the Fifth Circuit, as in every circuit, district courts are barred from assembling a new evidentiary record when reviewing an agency action, unless a plaintiff seeks to introduce evidence that fits within one or more narrow exceptions—none of which the States sincerely seek to invoke here. Instead, the States seek to introduce extra-record evidence for an impermissible purpose: to quibble with the wisdom of a policy adopted by an agency based on the agency's expertise and the comprehensive factual record before it. The Court should reject the States' attempt to circumvent the record rule.

II. **Argument.**

The States of Texas and Louisiana are challenging the enforcement priority framework found in the Department of Homeland Security's *Guidelines for the Enforcement of Civil*

1

*Immigration Law*. Secretary of Homeland Security (Sept. 30, 2021), ECF No. 122-1 (the "September Guidance"). The States ask the Court to vacate the September Guidance pursuant to the Administrative Procedure Act ("APA") on the grounds that it (i) allegedly conflicts with two statutory provisions, (ii) is arbitrary and capricious, and (iii) was impermissibly adopted without a notice-and-comment process. *See* First Am. Compl., ECF No. 109, ¶¶ 108-136 (Oct. 22, 2021). The States also assert a Constitutional Take Care Clause claim, and a breach of contract claim based on purported agreements that they entered into with DHS during the prior Administration. *See id.* ¶¶ 137-146.

After the States moved for a preliminary injunction on their APA claims and their Constitutional claim, *see* ECF No. 111, the Court ultimately determined that it would instead hold a bench trial and enter a final judgment on the merits, *see* Dec. 7, 2021 Minute Entry. The States subsequently filed a trial exhibit list containing a number of documents not found in the administrative record, *see* ECF No. 158, and plan to call a witness whose testimony the States will use to support the substantive merits of their APA and Constitutional claims, *see* Pls.' Opp. to Defs.' Mot. in Limine and Mot. to Exclude Testimony ("Pls. Opp. to Mot. to Exclude Evid.") (ECF No. 180) at 6 (the States plan to introduce witness testimony from Tom Homan, a former official from a previous administration, "regarding the law and the wisdom of [the September Guidance]"). Although the comprehensive administrative record for the September Guidance includes 120 exhibits, many of which contain several documents, spanning several thousand pages, the States nonetheless claim that they are entitled to flout longstanding precedent and ask the Court to consider their extra-record evidence when resolving the merits of the States' claims. The Court should reject the States' request.

The Supreme Court has repeatedly held that "in reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation *in light of the existing administrative record*." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (emphasis added); *see also Camp*, 411 U.S. at 142 (When assessing whether an agency action is "arbitrary, capricious, . . . or otherwise not in accordance with law," the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.").[1] "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking." *Fla. Power*, 470 U.S. at 744 (1985); *see also Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.").

The Court may consider extra-record evidence only when a plaintiff shows that "*unusual circumstances* justify[] a departure from the general presumption that review is limited to the record compiled by the agency." *Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (emphasis added). "Supplementation" of the administrative record "may be permitted when: (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant

---

[1] Internal quotation marks and internal citations are omitted throughout this brief, unless otherwise stated herein.

factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review."[2] *Id*.

The States cannot establish that any of these three exceptions applies here. First, the States have failed to show that DHS "deliberately or negligently excluded" from the administrative record "documents that may have been adverse to its decision." *Id*. An administrative record must contain "the [agency action] involved, any findings or reports on which that [action] is based," and, where relevant, "the pleadings, evidence, and other parts of the proceedings before the agency." *Id*. Critically, "[w]here an agency has presented a certified copy of the complete administrative record, the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Knight v. U.S. Army Corps of Engineers*, No. 4:18-CV-352, 2019 WL 3413423, at *1 (E.D. Tex. July 29, 2019); *see also Save Barton Creek Ass'n v. Texas Dep't of Transportation*, No. 1:19-CV-761-RP, 2021 WL 3849723, at *2 (W.D. Tex. Aug. 27, 2021) ("Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated."). This stems from the principle that "Government officials in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." *Yarls v. Bunton*, 905 F.3d 905, 910–11 (5th Cir. 2018); *see also 10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 725 (5th Cir. 2013) ("In the absence of clear and convincing evidence to

---

[2] In their previous motion for extra-record discovery, the States argued that the *Medina* factors are not exclusive, and cited *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers* in support. *See* Pls.' Mot. for Extra-Record Discov. ("Pls. Discovery Brief") (ECF No. 103), at 9 (*citing* No. 3:13-CV-126, 2015 WL 1883522, at *3 (S.D. Tex. Apr. 20, 2015)). But in *Gulf Coast*, the court noted that although other cases have recognized eight specific "extra-record evidence" exceptions, "it does not seem that there will often be a significant practical distinction between the eight exceptions . . . and the three listed in *Medina*" since "[m]ost, and perhaps all, of the eight . . . exceptions fit within the three broader categories in *Medina*." *Id.*

the contrary, [a] presumption of regularity attaches to the actions of Government agencies."). Here, DHS certified the administrative record on November 4, 2021. *See* ECF No. 117-1 (certification by "the custodian of the Secretary of Homeland Security's September 30, 2021, *Guidelines for the Enforcement of Civil Immigration Law*."); *see also* ECF No. 145-1 (corrected administrative record index). Thus, the Court must presume that the administrative record is complete—and therefore does not exclude "adverse" documents that should have been included—unless the States provide "clear and convincing" evidence to the contrary. The States have made no attempt to meet this high standard.

      The States have also failed to show that "the district court need[s] to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors." *Medina*, 602 F.3d at 706. Indeed, the States are not actually arguing that DHS failed to "consider[] all of the relevant factors." To the contrary, the States identify a number of factors that DHS *did* consider, and simply argue that DHS addressed those factors in a manner that did not satisfy the States. For example, the States assert that one important factor is the "risk[] of recidivism among criminal aliens who are not detained." Pls. Mot. to Postpone the Effective Date of Agency Action or, in the alternative, for Prelim. Inj. (ECF. No. 111) ("PI Mot.") at 33. But DHS explicitly addressed this very issue in an explanatory memorandum accompanying the September Guidance. *See Significant Considerations in Developing Updated Guidelines for the Enforcement of Civil Immigration Law* ("Considerations Memo") (ECF No. 146-1), AR_DHSP_00000001, at AR0012-AR0013. DHS acknowledged this Court's concern, expressed in its preliminary injunction opinion concerning the Interim Priorities,[3] that "*all* criminal illegal aliens . . . pose high

---

[3] *See* Acting Secretary of Homeland Security David Pekoske, "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities," AR_DHSP_00000065;

5

risks of recidivism." *Id.* at AR0012 (*quoting Texas v. United States*, No. 6:21-CV-00016, 2021 WL 3683913, at *47 (S.D. Tex. Aug. 19, 2021)). DHS noted, in response, that it addressed the district court's concern by crafting the September Guidance to ensure that officers would focus on those noncitizens who are likely to recidivate. *See id.* In particular, DHS referenced "evidence developed by the United States Sentencing Commission . . . demonstrat[ing]" that not all noncitizens with criminal records are equally likely to recidivate; "reconviction rates" actually "drop off significantly for individuals who are crime-free for 5 years post-release, those sentenced to 6 months or less of imprisonment, and those who were 40 or older when released." *Id.* DHS noted that the September Guidance therefore calls on officers to weigh "aggravating and mitigating factors" to determine "whether a noncitizen poses a current threat to public safety, including through a meaningful risk of recidivism." *Id.* DHS also emphasized that "[n]ot all offenses present the same risk to public safety," and so officers should especially focus on those noncitizens who are likely to recidivate and create a greater "risk to public safety," including those who have "committed . . . recent violent assault[s]." *Id.* at AR0013. Thus, although the States may object to how DHS addressed their recidivism concerns, they cannot sincerely argue that DHS "failed to consider" those concerns.

The same is true with respect to the other two issues that the States argue DHS had to consider: costs imposed on States and the risk that noncitizens who are not detained will abscond. *See* PI Mot. at 33-34. DHS likewise addressed those issues in depth. *See* Considerations Memo. at AR0016 (explaining that "while any set of priorities may result in some indirect fiscal effects on state and local governments (both positive and negative), such effects are extremely difficult to

---

Acting ICE Director Tae Johnson, "Interim Guidance: Civil Immigration Enforcement and Removal Priorities," AR_DHSP_00000070.

quantify fully, are highly localized, and would vary based on a range of factors, including policy choices made by such governments and outside our control," and that the benefits of the September Guidance are projected to outweigh those indirect effects on state and local governments); *see id.* at AR0017 (addressing the concern that noncitizens who are not detained may "ultimately abscond," noting that [t]his criticism is based on the misconception that if the Department did not prioritize its enforcement efforts" a "significantly greater number of people could be" processed "for removal," and that DHS's "overall safety and security mission is not best served by simply pursuing the greatest overall number of enforcement actions but" rather by "prioritiz[ing] enforcement against those noncitizens who most threaten the safety and security of the Nation"). Accordingly, the States cannot invoke the narrow exception that allows for extra-record evidence when a party seeks to show that an agency failed to "consider[] all of the relevant factors." *Medina*, 602 F.3d at 706.

Finally, the States cannot satisfy the remaining exception for when extra-record evidence may be considered: when "the agency failed to explain administrative action so as to frustrate judicial review." *Id*. Here, as noted above, not only does the September Guidance contain an explanation for its prioritization framework, but it was accompanied by a memorandum containing an additional *twenty-one pages* of explanation. DHS has indisputably provided an explanation sufficient to allow for judicial review.[4] *See Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S.

---

[4] The States, citing the D.C. Circuit's decision in *Esch v. Yeutter*, previously asserted that "[e]xtra-record evidence is admissible when the agency" generally "did not adequately explain its action." Pls. Opp. to Mot. to Exclude Evid. at 1 (*citing Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)). To the extent the States are suggesting that extra-record evidence may be permissible not only when an agency has failed to provide an explanation altogether, but also when an agency provides a clear explanation that a plaintiff believes is unpersuasive, the D.C. Circuit has already found that *Esch* cannot be read that broadly. *See Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("*Esch* has been given a limited interpretation since it was decided, and at

461, 497 (2004) (noting that even "skeletal orders" that "are not composed with ideal clarity" are sufficient, especially when "accompan[ied]" by "explanatory correspondence"). Accordingly, the States do not satisfy any of the three exceptions for when extra-record evidence may be considered in a challenge to agency action.

In their prior motion for extra-record discovery concerning the Interim Priorities, the States made a number of arguments that, in their view, may also apply here. First, the States pointed out that the Defendants also introduced extra-record evidence. *See* Pls.' Discovery Brief, at 2. But Defendants argue only that the Court may not consider extra-record evidence when assessing the substantive merits of the States' claims; *e.g.*, whether the September Guidance violates a statute or constitutional provision, is arbitrary and capricious, or unjustifiably failed to follow a notice-and-comment process. Defendants did not, and do not, dispute that extra-record evidence may be considered for certain ancillary issues, such as standing. *See* Defs.' Opp. to Pls. Mot. for Discov. Beyond the Admin. Record ("Defs.' Opp. to Extra-Record Discov") (ECF No. 104) at 12 ("Defendants agree that as a general matter Plaintiffs can submit extra-record to establish standing."). Indeed, Defendants do not object to the testimony of two employees from the Texas Department of Criminal Justice to the extent their testimony is limited to standing or other equitable factors, and to the extent their testimony is otherwise admissible. In any event, in this challenge to the September Guidance, the administrative record includes Defendants' previously submitted declarations. *See, e.g.*, Decl. of Peter B. Berg, AR_DHSP_6029 (ECF No. 153-21).

---

most it may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review."). Indeed, were it otherwise, then consideration of extra-record evidence would be the norm, not the exception; *every* party that raises an arbitrary-and-capricious claim is arguing that the agency's justification is unpersuasive.

The States have also argued that the record rule applies only to arbitrary and capricious claims, but not, say, to their statutory or constitutional claims. *See* Pls.' Discovery Brief, at 6-7. But the record rule is not so confined: "*in reviewing agency action*, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com.*, 139 S. Ct. at 2573 (emphasis added); *see also Fla. Power*, 470 U.S. at 743–44 (broadly noting that it is a "fundamental principle[] of *judicial review of agency action*" that the "reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry" (emphasis added)). The States cite no case where the Supreme Court has found that the record rule applies to certain challenges to agency actions, but not others.

Indeed, the Supreme Court has been explicit that the record rule applies to *all* APA claims. *See, e.g.*, *Fla. Power*, 470 U.S. at 743–44 ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); *Camp*, 411 U.S. at 142 (When assessing whether an agency action is "arbitrary, capricious, . . . *or otherwise not in accordance with law*," the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (emphasis added)); *see also Buttrey v. United States*, 690 F.2d 1170, 1184 (5th Cir. 1982) (when an agency decision is "accompanied by a contemporaneous explanation," a court may "look only to the administrative record in order to determine if the [agency's] decision was arbitrary, capricious, or not in accordance with law" (emphasis added)). The APA itself states that when "the reviewing court" is "decid[ing] . . . relevant questions of law, interpret[ing] constitutional and statutory provisions, and determin[ing] the meaning or applicability of the terms of an agency action," the "court shall review the whole

9

record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, the record rule applies to the statutory and notice-and-comment claims that the States bring under the APA.[5]

Additionally, the rule also applies to the States' Take Care Clause claim, regardless of whether they are bringing it under the APA. Plaintiffs may not plead their way around the fundamental principles governing review of agency action, including the record rule, by relying on constitutional arguments. *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993) (plaintiff's equal protection claim "cannot so transform the case that it ceases to be primarily a case involving judicial review of agency action"); *cf. Harkness v. United States*, 727 F.3d 465, 471 (6th Cir. 2013) ("[T]he review scheme does not carve out an exception for constitutional claims."). Judicial review under the APA, after all, expressly includes claims that agency action is "contrary to constitutional right [or] power." 5 U.S.C. § 706(2)(B). And the APA is explicit that when reviewing such claims, as with any APA claim, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. For decades, courts across the country have therefore recognized that Section 706, by its plain language, limits the review of constitutional claims challenging agency action to the administrative record. *See Chang*, 254 F. Supp. 3d at 161 (D.D.C. 2017); *see also, e.g., Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 n.9 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018) (mem.); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1232 (D. N.M. 2014); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, No. ELH-16-1015,

---

[5] The record rule also applies to any request for relief under 5 U.S.C. § 706(1). *See Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539 (D.D.C. 2021) ("the statutory text of the APA" provides that "'a reviewing court may . . . compel agency action unlawfully withheld' . . . and that 'in making the *foregoing determinations*, the court *shall review the* whole *record* or those parts of it cited by a party'" (quoting 5 U.S.C. § 706)); *Agarwal v. Renaud*, No. 3:21-CV-649-N, 2021 WL 3639805, at *2 (N.D. Tex. May 12, 2021) ("Judicial review is ordinarily limited to the administrative record, even in cases regarding agency inaction.").

10

2017 WL 3189446, at *21 (D. Md. July 27, 2017); *Moralez v. Perdue*, 2017 WL 2264855, at *3 (E.D. Cal. May 24, 2017); *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *1-2 (D. Wyo. Mar. 29, 2016); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 803 (E.D. Va. 2008); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D. R.I. 2004); *Alabama-Tombigbee Rivers Coal. v. Norton*, No. CIV.A.CV-01-S-0194-S, 2002 WL 227032, at *5-6 (N.D. Ala. Jan. 29, 2002).

Further, "allow[ing]" for the "submission of new evidence and legal arguments" whenever a party asserts a standalone constitutional claim "would incentivize every unsuccessful party to agency action to allege . . . constitutional violations in order to" shed "the APA's restricti[ons]."[6] *Chang*, 254 F. Supp. 3d at 162. Moreover, allowing the States to circumvent the record rule here by asserting a standalone Take Care Clause claim would be particularly unwarranted because that claim "fundamentally overlap[s] with the APA claims." *Almaklani v. Trump*, 444 F. Supp. 3d 425, 433 (E.D.N.Y. 2020) (quotation omitted), *reconsideration denied sub nom. Almaklani v. Nielsen*, No. 18CV398NGGCLP, 2020 WL 9210770 (E.D.N.Y. Nov. 24, 2020), *appeal denied sub nom. Almakalani v. McAleenan,* No. 18CV398NGGCLP, 2021 WL 980846 (E.D.N.Y. Mar. 16, 2021) (collecting cases). In this case, Plaintiffs' Take Care claim overlaps entirely with their statutory claims. If Defendants prevail against the statutory claims, there would be no basis to assert that Defendants are acting inconsistent with the Take Care Clause.[7]

---

[6] The same concern applies to statutory claims. A plaintiff could, for example, attempt to assert a standalone statutory claim—rather than an APA claim based on an alleged statutory violation—with the hope of avoiding the APA's record-review limitations.

[7] Plaintiffs likewise cannot rely on their purported breach-of-contract claims. As an initial matter, they do not seem to be introducing any extra-record evidence for that claim. But, regardless, this Court should not allow the States to sidestep the restrictions in the APA simply by asserting a

Accordingly, the record rule applies to all of the States' claims. The States cannot establish any exception to that rule, and so the Court should not consider any extra-record evidence the States have submitted when evaluating the merits of the States' claims.

Dated: February 15, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Adam D. Kirschner
ADAM D. KIRSCHNER
Attorney-in-charge
IL Bar. No. 6286601
Senior Trial Counsel
BRIAN C. ROSEN-SHAUD
ME Bar No. 006018
MICHAEL F. KNAPP
CA Bar No. 314104
KUNTAL CHOLERA
DC Bar No. 1031523
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 353-9265
Fax: (202) 616-8460
Email: Adam.Kirschner@usdoj.gov
          Brian.C.Rosen-Shaud@usdoj.gov
          Michael.F.Knapp@usdoj.gov
          Kuntal.Cholera@usdoj.gov

<u>Mailing Address</u>:
Post Office Box 883
Washington, D.C. 20044

<u>Courier Address</u>

---

stand-alone, equitable contract claim in district court. *See* Defs.' Opp. to Extra-Record Discov. at 7-8.

        1100 L Street NW, Room 11020
        Washington, D.C. 20005

        EREZ REUVENI
        CA Bar No. 264124
        Assistant Director
        U.S. Department of Justice
        Civil Division, Office of Immigration Litigation
        P.O. Box 868, Ben Franklin Station
        Washington, D.C. 20044
        202-307-4293 (telephone)
        Email: Erez.R.Reuveni@usdoj.gov

        *Counsel for Defendants*


        DANIEL DAVID HU
        Assistant United States Attorney
        Chief, Civil Division
        State Bar No. 10131415
        S.D. I.D. 7959
        Southern District of Texas
        1000 Louisiana, Suite 2300 Houston, TX 77002
        Tel: (713) 567-9000
        Fax: (713) 718-3300
        Daniel.Hu@usdoj.gov

        *Local Counsel*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 15, 2022.


        */s/ Adam D. Kirschner*
        ADAM D. KIRSCHNER