UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS;<br>STATE OF LOUISIANA,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>*Defendants*. | Case No. 6:21-cv-16 |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Texas and Louisiana submit this response to Defendants' notice, ECF No. 237, of the decision by a motions panel of the U.S. Court of Appeals for the Sixth Circuit staying a preliminary injunction against enforcement of the same agency action at issue in this case. *Arizona v. Biden*, --- F.4th ---, No. 22-3272, 2022 WL 1090176 (6th Cir. Apr. 12, 2022).

The Court should not adopt the reasoning of *Arizona*. First, *Arizona* found a lack of evidence that the factual record in this case addresses. Second, although the Sixth Circuit is not bound by Fifth Circuit precedent, this Court *is*. And *Arizona* discusses no Fifth Circuit precedents on any of the issues it addresses, save one: the vacated motions panel opinion in this very case, *Texas v. United States*, 14 F.4th 332 (5th Cir. 2021) (the "*Texas* Stay Opinion"), *vacated*, 24 F.4th 407 (5th Cir. 2021). In their Post-Trial Brief in Response, Plaintiffs have previously explained why this Court is precluded by Fifth Circuit precedent from adopting the reasoning of the *Texas* Stay Opinion, ECF No. 231 at 7–8, and nothing in *Arizona* changes that.

On every issue addressed in *Arizona*, this Court should apply the relevant Fifth Circuit precedents explained in the briefing in this case. Some of the relevant points in *Arizona* that differ from the record and applicable precedents in this case include:

## I.  Standing

*Arizona* finds it speculative whether the challenged guidance will lead to decreased enforcement, as "the States do not dispute that the officers retain control over the volume of removals and detentions they effect," 2022 WL 1090176, at *2–3, doubts whether "the Guidance is the culprit" in any decreased enforcement, *id.* at *3, and notes DHS's "unrebutted statements that the Guidance reflects longstanding application of" the detention statutes. *Id.*

But the only evidence in that regard in this case is that ICE officers' determinations on detention are bound by the guidance, and that they previously performed actions to take custody of—and issue detainers for—criminal aliens that they are not doing under the challenged guidance. *See* ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law, at Findings 36–39, 40–43, 45–46. This differs from the situation in *Arizona*, where the court noted that the plaintiffs failed to meet their "burden to show 'those choices have been or will be made" by ICE staff due to the challenged guidance, 2022 WL 1090176, at *3. Whereas here, the unrebutted evidence is that detainers have been rescinded (and not placed in the first place) due to the challenged guidance.

*Arizona* also found it speculative that the States would be injured, asking "is it not possible that the Guidance's focus on public safety, border security, and terrorism will decrease burdens on the States?" 2022 WL 1090176, at *2; *see also id.* at *4 ("How can we assume at this stage of the case that prioritizing apprehension of immigrants who pose a threat to 'public safety' will drive up the States' criminal populations?"). But such "an accounting exercise" is forbidden by Fifth Circuit precedent. *Texas v. United States (DAPA)*, 809 F.3d 134, 155–56 (5th Cir. 2015); *see also Texas v. Biden (MPP)*, 20 F.4th 928, 973–74 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 1098 (2022) (rejecting argument that "an injunction would provide no redress because immigration officers under MPP would have discretion not to return any given immigrant to Mexico" because history of DHS personnel doing so demonstrated likelihood they would do so if allowed again); *see also id.* at 972–73 (rejecting speculation argument because of evidence of increased presence of illegal aliens in State, "at least some [of which] MPP-termination-caused immigrants will certainly seek healthcare services from the State," noting that "[t]he causal chain is easy to see").

2

*Arizona* also finds the claimed injuries speculative because "[a] theory of rising crime rates seems like it would 'hinge' on third parties committing more crimes." 2022 WL 1090176, at *4. But *Texas MPP* instructs courts to find standing based on "simple causal inference[s] based on a simple change in incentives," which is not "speculating but instead describing the predictable effect of Government action on the decisions of third parties." 20 F.4th at 973 (citation omitted). And third parties' predictable reactions, even "unlawful" ones, are sufficient for standing. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). The unrebutted evidence in this case demonstrates that recidivism of criminal aliens is just such a predictable effect. *See* ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law at Findings 72–78.

*Arizona* also rejected the States' entitlement to "special solicitude" on the ground that their immigration-related injuries—and more specifically, fiscal injuries—were not eligible for evaluation under that doctrine. 2022 WL 1090176, at *4. But the Fifth Circuit applied the special solicitude doctrine to States challenging the failure to enforce immigration laws because that failure led to (1) increased presence of aliens that (2) placed pressure on States to change their laws regarding benefits for aliens, which (3) affected a quasi-sovereign interest. *Texas MPP*, 20 F.4th at 969–70; *see also Texas DAPA*, 809 F.3d at 152–54.

The Fifth Circuit has repeatedly found fiscal injuries relating to an increased presence of illegal aliens as a basis for standing. *See Texas MPP*, 20 F.4th at 968–75; *Texas DAPA*, 809 F.3d at 151–61; *see also* ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law at Conclusions 88–116. This Court has found the same. *See Texas v. United States (100-Day Pause)*, 524 F. Supp. 3d 598, 630 (S.D. Tex. 2021) (Tipton, J.).

*Arizona* also does not address the States' notice-and-comment claim as a basis for standing. Fifth Circuit precedent requires the Court to "assume, for purposes of standing analysis, that Texas is correct on the merits of its claim that the Guidance was promulgated in violation of the APA['s notice-and-comment requirements]," *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019), and such a claim is a basis for standing "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Texas DAPA*, 809 F.3d at 150–51

3

(quoting *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)); *see also id.* at 161 (finding redressability satisfied because "[e]njoining DAPA based on the procedural APA claim could prompt DHS to reconsider the program, which is all a plaintiff must show when asserting a procedural right.").

## II. Final Agency Action

*Arizona* finds that the challenged guidance does not constitute final agency action because it does not determine rights or obligations nor do legal consequences flow from it. 2022 WL 1090176, at *5–6. Plaintiffs has extensively briefed why Fifth Circuit precedent leads to the conclusion that the guidance is final agency action. *See* ECF No. 224, Plaintiffs' Post-Trial Brief at 1–6; ECF No. 231, Plaintiffs' Post-Trial Brief in Response at 8–11.

First, *Arizona* contrasts policy statements with final agency actions, treating these as mutually exclusive categories. 2022 WL 1090176, at *6. But the Fifth Circuit holds otherwise. *See Texas MPP*, 20 F.4th at 949 (policy statements can be final agency action when they bind the agency's staff).

Second, *Arizona* states that the guidance binding the agency's staff is not enough to make it final agency action. *See* 2022 WL 1090176, at *6 ("Nor does the 'legal effect' inquiry turn on whether it controls employees of the Department."); *id.* at *5 ("Whatever costs the Guidance creates for the States downstream arise only from officials who exercise their discretion under the Guidance, confirming that those costs are not the Guidance's direct or appreciable legal consequences.") (cleaned up). But the Fifth Circuit disagrees. *See EEOC*, 933 F.3d at 442 ("[L]egal consequences flow from" an agency action that "binds its staff."); *Texas MPP*, 20 F.4th at 948–49 ("our decision in *EEOC* … explicitly centered its finality analysis on whether 'the agency's action binds *its staff*.' Thus, our court based its holding ('that the Guidance binds EEOC') largely on the fact that the 'Guidance' in question, despite its name, bound EEOC staff.") (cleaned up).

Third, *Arizona* asserts that "requir[ing]" staff to make determinations based on the "totality of the circumstances," 2022 WL 1090176, at *5, based on "a number of aggravating and mitigating factors," *id.* at *1, is a "telltale sign[]" of a non-binding policy statement, not of reviewable agency action." *Id.* at *5. But—again—the Fifth Circuit disagrees. *See EEOC*, 933 F.3d at 443 ("a guidance document requiring agency staff to use a multi-factor analysis in" making determinations is "final agency

4

action."); *cf. Texas v. United States (DACA)*, 549 F. Supp. 3d 572, 602 (S.D. Tex. 2021) ("even assuming the DACA Memorandum genuinely leaves the agency and its decisionmakers free to exercise discretion as to whether the applicant meets the Secretary's criteria, it cannot be considered a general statement of policy under the APA because of the fixed criteria") (discussing notice-and-comment claim; cleaned up)

Fourth, *Arizona* disclaimed that "creat[ing] some still-to-be-determined costs for the three States" was not sufficient for the guidance to be final agency action. 2022 WL 1090176, at *5. But the Fifth Circuit disagrees: "[P]lac[ing] a cost on the states" by "remov[ing] a categorical bar to illegal aliens who are receiving state and federal benefits" is enough to make an action a substantive rule, *Texas DAPA*, 809 F.3d at 173, and all substantive rules are "by definition, final agency action." *EEOC*, 933 F.3d at 441.

Fifth, Arizona relies on a disclaimer that the challenged guidance is not intended to create any rights or benefits as another "telltale sign[]" that it is not final agency action. 2022 WL 1090176, at *5. But such boilerplate disclaimers are not able to save an otherwise mandatory agency action from review. In *Appalachian Power Co. v. EPA*, the court analyzed an EPA document and found it constituted final agency action because "the entire Guidance, from beginning to end—except the last paragraph—reads like a ukase. It commands, it requires, it orders, it dictates." 208 F.3d 1015, 1022–23 (D.C. Cir. 2000). In *Appalachian Power*, even a disclaimer stating that "'[t]he policies set forth in this paper are intended solely as guidance, do not represent final [a]gency action, and cannot be relied upon to create any rights enforceable by any party,'" *id*. at 1023, did nothing to render the guidance non-final under the APA because legal consequences nonetheless flowed from it. *See also EEOC*, 933 F.3d at 443 (citing *Appalachian Power* as an authority for final agency action determination).

Finally, this Court previously concluded that the rights of aliens are affected by the challenged guidance because those criminal aliens who are not prioritized by the implementation of the guidance will be required to be released from detention because of a lack of significant likelihood of removal in the foreseeable future. ECF No. 79 at 60–61 (citing *Hussein S.M. v. Garland*, No. 21-348, 2021 WL 1986125 (D. Minn. May 18, 2021)). *Arizona* disagrees, reasoning that the determination in *Hussein* was

5

instead based on a conclusion that removal was unlikely because of an armed conflict in the alien's home country. 2022 WL 1090176, at *6.

But these two bases were alternative holdings, *see Hussein*, 2021 WL 1986125, at *3 (after discussing the armed conflict issue, stating "[f]urther" there was no significant likelihood of removal based on the guidance priorities). In the Fifth Circuit, alternative holdings are not dicta but as much the holding of the case as the other. *See United States v. Potts*, 644 F.3d 233, 237 (5th Cir. 2011) (Smith, J.); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991) (per curiam) ("This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum.").

### III. Reviewability

*Arizona* is apparently the first judicial ruling to apply to a federal agency's rule—as opposed to an order—*Heckler* unreviewability due to enforcement discretion. 2022 WL 1090176, at *5 (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). But that approach is precluded by Fifth Circuit precedent. *See Texas MPP*, 20 F.4th at 982–85; *see also* ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law at Conclusions 134–137; ECF No. 224, Plaintiffs' Post-Trial Brief at 6–7. The next issue—of the merits of the claims that the statutory-detention requirements remove discretion from the agency—is intertwined with this analysis. This Court may not build on the Sixth Circuit's novel approach and must instead follow the Fifth Circuit.

### IV. Merits on Statutory-Detention Requirements

*Arizona* relies on *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) to find a lack of a statutory mandate despite the use of the word "shall." 2022 WL 1090176, at *8. Plaintiffs have previously briefed why Fifth Circuit precedent precludes reliance on *Castle Rock* to find a lack of a statutory mandate here. *See* ECF No. 224, Plaintiffs' Post-Trial Brief at 6–13; ECF No. 231, Plaintiffs' Post-Trial Brief in Response at 4–6.

The Fifth Circuit has recently found a related alien-detention statute using the term "shall" to be mandatory. *See Texas MPP*, 20 F.4th at 994–96*; see also Texas 100-Day Pause*, 524 F.Supp.3d at 647–48 (citing Fifth Circuit—and other—caselaw on mandatory nature of "shall" in immigration statutes). Similarly, the use of "shall" here indicates mandatory duties to detain.

6

Notably, *Arizona* does not address the many statements in Supreme Court precedents indicating that the detention requirements at issue in this case are mandatory. *See* ECF No. 224, Plaintiffs' Post-Trial Brief at 8–9; ECF No. 231, Plaintiffs' Post-Trial Brief in Response at 4–6. As this Court has recognized, even dicta from Supreme Court opinions are binding within the Fifth Circuit. ECF No. 79 at 69–70.

Finally, on this issue, *Arizona* posits that the Executive can always make an end-run around the statutory-detention mandates by declining removal proceedings against any given criminal alien. 2022 WL 1090176, at *7. In this case, however, Defendants have conceded that they are statutorily bound to not release covered aliens from detention once they have been taken into custody, Tr. at 2-10—2-15 (closing argument by Mr. Knapp), and the Supreme Court has noted that "it would be very strange for Congress to forbid the release of aliens who need not be arrested in the first place." *Nielsen v. Preap*, 139 S. Ct. 954, 970 (2019). *Arizona* may attribute to Congress such a "strange" decision to make an easily evaded mandate, but in the Fifth Circuit, "[w]hen we read Congress's statutes, 'it is our role to make sense rather than nonsense out of the *corpus juris*.'" *Ali v. Barr*, 951 F.3d 275, 280 (5th Cir. 2020) (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991)).

### V.    Merits on Arbitrary-and-Capricious Claim

Arizona also finds that the challenged guidance satisfied the requirement of reasoned decisionmaking. 2022 WL 1090176, at *8–9. As an initial matter, *Arizona* never addresses the point that Fifth Circuit precedent does not permit an inference that reasons contained in the administrative record (here, in the "Considerations Memo") but not within the agency action itself were a basis for the agency action. *See* ECF No. 224, Plaintiffs' Post-Trial Brief at 18–19; ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law at Conclusions 161–162, 166–168.

Even considering the rationales articulated in the Considerations Memo, the Court should rely on the analyses from the preliminary injunction order that *Arizona* stayed, *Arizona v. Biden*, --- F.Supp.3d ---, No. 3:21-cv-314, 2022 WL 839672, *26–32 (S.D. Ohio Mar. 22, 2022), and in the briefing in this case, *see* ECF No. 224, Plaintiffs' Post-Trial Brief at 18–22, to find the challenged guidance arbitrary and capricious.

### VI. Merits on Notice-and-Comment Claim

*Arizona* also rejects the claim that the challenged guidance was required to undergo notice-and-comment rulemaking, finding that it does not bind ICE staff or affect rights or obligations. 2022 WL 1090176, at *9. This is inconsistent with Fifth Circuit precedent on what constitutes a substantive rule and thus required to be issued after notice and comment. *See* ECF No. 224, Plaintiffs' Post-Trial Brief at 1–6; ECF No. 231, Plaintiffs' Post-Trial Brief in Response at 8–11; ECF No. 225, Plaintiffs' Post-Trial Proposed Findings of Fact and Conclusions of Law at Conclusions 178–198. This Court has previously examined this issue in depth when it preliminarily enjoined enforcement of the prior version of the guidance. ECF No. 79 at 127–144.

### VII. Remedy

Finally, Chief Judge Sutton has an additional concurring opinion in *Arizona* that criticized the issuance of a nationwide injunction. *Arizona*, 2022 WL 1090176, at *10–12. As this Court has previously addressed when it preliminarily enjoined the previous iteration of the guidance challenged here, Fifth Circuit precedent recognizes that full relief cannot be addressed in the immigration context without nationwide applicability. ECF No. 79 at 151–155.

Dated: April 21, 2022                    Respectfully submitted,

KEN PAXTON                               WILLIAM T. THOMPSON
Attorney General of Texas                Deputy Chief, Special Litigation Unit
                                         Texas Bar No. 24088531
BRENT WEBSTER                            Southern District of Texas Bar No. 3053077
First Assistant Attorney General

                                         */s/ Ryan D. Walters*
PATRICK K. SWEETEN                       RYAN D. WALTERS
Deputy Attorney General                  Special Counsel
for Special Litigation                   *Attorney-in-Charge*
                                         Texas Bar No. 24105085
                                         Southern District of Texas Bar No. 3369185
                                         ryan.walters@oag.texas.gov

                                         ERIC A. HUDSON
                                         Senior Special Counsel
                                         Texas Bar No. 24059977
                                         Southern District of Texas Bar No. 1000759

                                         LEIF A. OLSON
                                         Special Counsel
                                         Texas Bar No. 24032801
                                         Southern District of Texas Bar No. 33695

                                         OFFICE OF THE ATTORNEY GENERAL
                                         SPECIAL LITIGATION UNIT
                                         P.O. Box 12548 (MC-009)
                                         Austin, Texas 78711-2548
                                         Tel.: (512) 936-1414
                                         Fax: (512) 936-0545

                                         **COUNSEL FOR PLAINTIFF STATE OF TEXAS**

> JEFF LANDRY
> LOUISIANA ATTORNEY GENERAL
>
> */s/ Elizabeth B. Murrill*
> ELIZABETH B. MURRILL
> Solicitor General
> JOSEPH S. ST. JOHN
> Deputy Solicitor General
>
> LOUISIANA DEPARTMENT OF JUSTICE
> 1885 N. Third St.
> Baton Rouge, LA 70804
> (225) 326-6766
> murrille@ag.louisiana.gov
> stjohnj@ag.louisiana.gov

**COUNSEL FOR PLAINTIFF STATE OF LOUISIANA**

**CERTIFICATE OF COMPLIANCE**

I certify that the total number of words in this response, exclusive of the matters designated for omission, is 2,838, as counted by Microsoft Word.

> */s/ Ryan D. Walters*
> RYAN D. WALTERS

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2022, this document was filed through the Court's CM/ECF system, which automatically serves all counsel of record.

> */s/ Ryan D. Walters*
> RYAN D. WALTERS